UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT



U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 AUG 14  PM 3: 50

_____
DEPUTY CLERK

JANET JENKINS, for herself and as
next friend of ISABELLA MILLER-
JENKINS, a/k/a ISABELLA MILLER,
Plaintiffs

v.

$2:12.cv.184$

KENNETH L. MILLER,
LISA ANN MILLER f/k/a LISA MILLER-JENKINS,
TIMOTHY D. MILLER, ANDREW YODER, individually and as an agent for
CHRISTIAN AID MINISTRIES, INC., CHRISTIAN AID
MINISTRIES, INC., RESPONSE UNLIMITED, INC., PHILIP ZODHIATES,
individually and as an agent for RESPONSE UNLIMITED, INC.,
VICTORIA HYDEN, f/k/a VICTORIA ZODHIATES
individually and as an agent for both
RESPONSE UNLIMITED, INC., and LIBERTY UNIVERSITY
SCHOOL OF LAW and its related ministry
THOMAS ROAD BAPTIST CHURCH, INC., LIBERTY
UNIVERSITY SCHOOL OF LAW, and its related ministry
THOMAS ROAD BAPTIST CHURCH, INC.,
LINDA M. WALL, individually and as agent for
THOMAS ROAD BAPTIST CHURCH, INC., and DOUGLAS WRIGHT
Defendants

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

NOW COME Plaintiffs herein, by and through their attorneys, Sarah R. Star, Esq., of
Sarah R. Star, Esq., Attorney and Counselor at Law, P.C., and Frank H. Langrock, Esq. of
the law firm of Langrock Sperry & Wool, LLP, and complain against Defendants for
intentionally kidnapping and conspiring to kidnap Isabella Miller-Jenkins on or about
September 21, 2009, and intentionally causing her continued detention outside the State of
Vermont to the present day. The Plaintiffs also complain against Defendants for violating
the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (c) and (d) for
participating and conspiring to participate in the affairs of the Beachy Amish-Mennonite
Christian Brotherhood through a pattern of past and continuing acts and threats involving
kidnapping, money laundering and mail fraud.  Plaintiffs further complain against the above
named Defendants for conspiring to violate their civil rights in violation of 42 U.S.C. §1985
(3) and 42 U.S.C. §1986.

This case is brought because the Defendants, through their actions, sought to thwart
entirely the orders of the trial and appellate courts of the State of Vermont and the
Commonwealth of Virginia after all of their apparent legal options had been exhausted in
both states.  When it was clear, after six years of state court litigation, that there was no legal
justification for the continuing and repeated contemptuous conduct of Lisa Miller and the

LANGROCK SPERRY
& WOOL LLP

1

continued obstruction of the parent child relationship between Isabella Miller-Jenkins and Janet Jenkins, the parties conspired to kidnap Isabella Miller-Jenkins and ensure her detention outside of the United States, beyond the reach of either the Vermont or the Virginia Courts.

## JURISDICTION AND VENUE

1. Civil RICO This Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1964(a) and 28 U.S.C. § 1331.   Venue is proper in this forum pursuant to 18 U.S.C. § 1965(a) & (b), and 28 U.S.C. § 1391(a) & (b).  Venue and personal jurisdiction is proper under section 1965(a) because Defendants reside, are found, have an agent, or transact their affairs in this District.  Venue and personal jurisdiction is also proper under § 1965(b) in this forum because the ends of justice require that any defendant residing in another District be brought before this Court.  Venue is proper under § 1391(a) & (b) in that a substantial part of the events or omissions giving rise to the claim occurred in this District. Venue is also proper under principles of pendent venue because all claims arise out of the same nucleus of operative facts.

2. Personal jurisdiction.   Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a), as a substantial part of the events giving rise to the claims occurred in this district, and Defendants are subject to personal jurisdiction in this district, having had more than minimum contacts with Vermont, as their conduct and connection with Vermont are such that they should reasonably anticipate being haled into Court here.

3. Diversity Jurisdiction: With respect to the intentional tort of kidnapping/parental abduction this is an action brought pursuant to 28 U.S.C. §1332 between citizens of different states. The amount in controversy exceeds $75,000. Venue is proper in this district as jurisdiction is founded on diversity of citizenship, and a substantial part of the events giving rise to the claim occurred within the State of Vermont.

4. Violation of Civil Rights:  This Court has original jurisdiction over actions arising under 42 U.S.C. §§1985 and 1986 pursuant to 28 U.S.C. §1343, and a substantial part of the events underlying the claim, including the equal protection afforded to the Plaintiffs under Vermont's Civil Union Statute, arose in Vermont.

## PARTIES

5. Janet Jenkins:  Plaintiff Janet Jenkins is an individual and resident of the Town of Fair Haven, County of Rutland, State of Vermont.

6. Isabella Miller-Jenkins: Plaintiff Isabella Miller-Jenkins, a/k/a/ Isabella Miller, is a minor child and daughter of Plaintiff Janet Jenkins and Defendant Lisa Miller. By order of the Vermont Family Court, she is currently supposed to reside in Fair Haven, County of Rutland, State of Vermont, but is currently outside the United States as the victim of kidnapping.

7. Lisa Ann Miller f/k/a Lisa Miller-Jenkins: Defendant Lisa Miller is living "in hiding" amongst the Nicaragua Beachy Amish-Mennonite Christian Brethren, while she

LANGROCK SPERRY
& WOOL LLP

2

continues to abduct Plaintiff Isabella Miller-Jenkins in knowing violation of the orders of the Vermont Family Court, but she has sufficient ties to the State of Vermont, including obtaining a civil union and the dissolution of same in Vermont and longstanding participation in litigation in the State of Vermont regarding parental rights of Plaintiff Isabella Miller-Jenkins, to subject her to the personal jurisdiction of this Court.

8. Kenneth L. Miller: Defendant Kenneth Miller is a resident of the State of Virginia, City of Stuart's Draft. Kenneth Miller has sufficient contacts with the State of Vermont to subject him to the personal jurisdiction of this Court, including his personal appearance for criminal charges in Vermont arising from his participation in the kidnapping of Isabella Miller-Jenkins.

9. Timothy Miller: Defendant Timothy Miller is a resident of Managua, Nicaragua and Crossville, Tennessee. He has sufficient ties to Vermont, including personal appearance in Vermont for criminal charges related to the kidnapping of Isabella Miller-Jenkins to subject him to the jurisdiction of this Court.

10. Andrew Yoder: Defendant Andrew Yoder is a resident of the State of Ohio and is and employee/agent of Christian Aid Ministries, Inc., in relation to the claims set forth herein, with sufficient ties to the State of Vermont, including personal appearance for testimony in criminal proceedings, to subject him to the jurisdiction of this Court.

11. Christian Aid Ministries, Inc.: Defendant Christian Aid Ministries, Inc. ("CAM") is an Ohio corporation that employs pastors and relief workers around the world, including in the United States (including Vermont) and Nicaragua and whose activities include evangelizing, as well as providing material aid to people who are victims of natural disasters and other circumstances. CAM, through its agents and employees, including Andrew Yoder, has sufficient contacts with the State of Vermont to subject it to the jurisdiction of this Court.

12. Philip Zodhiates: Defendant Philip Zodhiates is a resident of the Commonwealth of Virginia, City of Waynesboro and the President and sole owner of Response Unlimited, Inc., a Delaware corporation with sufficient contacts with the State of Vermont to subject it to personal jurisdiction in this Court, including providing direct mail and marketing services nationally and internationally, including in Vermont.

13. Victoria Hyden f/k/a Victoria Zodhiates: Defendant Victoria Hyden is a resident of the Commonwealth of Virginia, City of Lynchburg, and is or has been an employee and agent of both Liberty University School of Law, and its related ministry Thomas Road Baptist Church, Inc., and Response Unlimited, Inc. in relation to the claims set forth herein, giving her sufficient contacts with the State of Vermont to subject her to the jurisdiction of this Court.

14. Response Unlimited, Inc.: Defendant Response Unlimited, Inc., is a Delaware corporation with sufficient contacts with the State of Vermont to subject it to jurisdiction in this Court, including providing Christian direct mail and marketing services nationally and internationally, including in Vermont.

LANGROCK SPERRY
& WOOL LLP

3

15. <u>Liberty University School of Law</u>: Defendant Liberty University School of Law is a purported educational institution organized and existing pursuant to the laws of the Commonwealth of Virginia and with a principal place of business in Lynchburg, Virginia, whose conduct has an impact on interstate commerce and whose contacts with Vermont include provision of advice, support and counsel to Defendant Lisa Miller in litigation in the Courts of Vermont, and solicitation of money and student applications within Vermont via the internet and other media, sufficient to submit itself to the jurisdiction of this Court. Liberty University holds itself out as the world's largest Evangelical Christian University, and was founded by the late Jerry Falwell. Liberty's current President is Jerry Falwell, Jr.

16. <u>Thomas Road Baptist Church Inc.</u>: Defendant Thomas Road Baptist Church, Inc. ("TRBC") is a corporation organized and existing pursuant to the laws of the Commonwealth of Virginia and with a principal place of business in Lynchburg, Virginia, with sufficient contacts with the State of Vermont to subject it to jurisdiction in this Court, including solicitation of donations from residents of Vermont, and organization of prayer meetings at the Vermont Family Courts. Liberty University is held out as a "related ministry" of Thomas Road Baptist Church. TRBC was founded by the late Jerry Falwell and its current head pastor his younger son, Jonathan Falwell.

17. <u>Linda Marie Wall</u>: Defendant Linda Wall is a resident of the City of Concord, Commonwealth of Virginia, and an agent of TRBC in relation to the claims set forth herein, giving her sufficient contacts with the State of Vermont to subject her to the jurisdiction of this court.

18. <u>Douglas Wright</u>: Douglas Wright is a resident of Winchester, Virginia, and an employee of Keystone Baptist Church, Inc. He has sufficient ties to the State of Vermont to subject him to the jurisdiction of this Court, including personal appearance in Vermont to give testimony in the criminal trial of Defendant Kenneth Miller.

## COMMON ALLEGATIONS OF FACT

19. Isabella Miller-Jenkins is the daughter of Lisa Miller and Janet Jenkins. She was born in 2002 while the two mothers were united in a Vermont civil union. When Isabella was seventeen months old, Lisa Miller moved with Isabella to Virginia and petitioned the Rutland Vermont Family Court to dissolve the union. The Family, Appellate and Supreme Courts of both Vermont and Virginia have since ruled that the Rutland Family Court has continuing and exclusive jurisdiction over custody determinations regarding Isabella Miller-Jenkins, that she has a right to a relationship with both of her parents, and that it is in her best interests to have contact with both of her parents on a schedule ordered by the Court.

20. At or about the time she petitioned for dissolution of the civil union in 2004, Defendant Lisa Miller was purportedly or actually "born again", that is, converted to fundamental Christianity and asserted the belief that homosexuality was sinful and that Isabella should be shielded from exposure to the "lifestyle." At or about this time, Lisa Miller joined the Keystone Baptist Church in Winchester, Virginia. There, she formed a friendship with Pastor Douglas Wright. While she was a member of Keystone Baptist, Lisa Miller began to deny the Court ordered parent child contact between

Isabella and Janet Jenkins. Lisa Miller was found in contempt of the Vermont Court orders starting in 2004. Lisa Miller discussed her custody case with Defendant Wright on an ongoing basis between 2004 and 2009.

21. Since 2004, there have been numerous instances when Janet Jenkins was entitled to lawful custody of Isabella in the State of Vermont, including during vacations, holidays and weekends and continuously since January 1, 2010 when full physical and legal responsibilities for Isabella were transferred to Jenkins from Defendant Miller. However, since 2008, Jenkins and Isabella have only seen each other on two occasions. Both the Rutland, Vermont Family Court, and the juvenile courts in Virginia which registered and enforced the Vermont orders, have found Lisa Miller in contempt and imposed sanctions for her conduct. Despite these sanctions, Lisa Miller continued to ignore the Court's orders with the assistance and encouragement of the Co-Defendants. Since January 2010 Isabella has been listed as missing by the National Center for Missing and Exploited Children, the victim of a family abduction.

2004-2008

22. Defendant Linda Wall, a Virginia anti-gay activist and Thomas Road Baptist Church member, stated that in 2004 she was contacted by attorney Rena Lindevaldsen, of Liberty University School of Law and was asked to meet with Lisa Miller to screen her for representation by lawyers working at Liberty University School of Law and its related law firm, Liberty Counsel, LLC. After this screening, Lisa Miller was accepted for representation by Liberty University attorneys, and also formed a friendship with Defendant Wall. Lisa Miller's lead attorneys were Dean of the Law School Mathew Staver, and Rena Lindevaldsen, a law professor there.

23. At the time of the final contested hearing to dissolve the civil union, which due to numerous appeals did not occur until April 2007, Lisa Miller testified that in the future she would comply with court orders regarding such contact despite her failure to do so in the past and on June 15, 2007 the Rutland Family Court issued a Final Order awarding legal and physical parental rights and responsibilities to Lisa Miller subject to the time that Janet Jenkins was entitled to lawful custody during holidays, vacations and some weekends.

24. Between June 2007 and Christmas 2007 Lisa Miller did in fact comply with the orders of the Rutland Family Court on a number of occasions. Isabella spent a week in Vermont with Plaintiff Jenkins, and had several overnight visits in Virginia at the home of Jenkins' parents, Isabella's grandparents Ruth and Claude Jenkins. The relationship between Isabella and Janet Jenkins was in the process of being repaired. However, this compliance was short lived.

25. In the spring of 2008, Lisa Miller, with the encouragement and support of the Defendants named herein, moved with Isabella from her home in Winchester, Virginia to the Lynchburg area, where she was provided with housing, a job and a vehicle by TRBC. Lisa Miller began to associate more openly with the Co-Defendants and was counseled by church members and pastors not to allow contact between Isabella and Janet Jenkins. In Lynchburg, Lisa Miller joined Thomas Road Baptist Church and was hired as a teacher at TRBC's elementary school, Liberty Christian Academy, where Isabella also became enrolled. Upon information and belief, at Liberty Christian

LANGROCK SPERRY
& WOOL LLP

5

Academy, Lisa Miller would also give assemblies to students to discuss her legal battle.

26. Also in the spring of 2008, Lisa Miller and Defendant Wall met to discuss what Lisa Miller should do "knowing that Virginia" law was not going to prevent Isabella from having contact with Plaintiff Jenkins. At this time, Appellate Courts in Vermont and Virginia had affirmed Janet Jenkins' parental rights. Upon information and belief, Wall and Miller decided and agreed as early as June of 2008 that Lisa Miller should flee with Isabella.

27. The Protect Isabella Coalition was organized in the spring of 2008 in Lynchburg by Wall and Miller and other church agents, including Deborah Thurman, who ran a woman's group at TRBC. The purpose of the Protect Isabella Coalition ("PIC") was to prevent court ordered contact between Isabella Miller-Jenkins and Janet Jenkins.. Upon information and belief, the President of Liberty University, Jerry Falwell, Jr. donated substantial sums to the PIC to enable it to produce television and radio commercials condemning the parent-child contact between Janet Jenkins and Isabella Miller-Jenkins as an act of tyranny. Lisa Miller's attorneys had established a Facebook site and other social media to solicit donations to their organization on behalf of Lisa Miller, and the Facebook site was also used to promote the activities of Lisa Miller and the PIC.

2009

28. During her employment at TRBC and participation in the PIC, Lisa Miller continued to be in contempt during court ordered visitation time, and threatened future acts of custodial interference.  Lisa Miller appeared on  a radio program called "Janet Parshall's America" and threatened that she would not comply with a court's order to transfer legal and physical rights and responsibilities to Janet Jenkins.

29. On May 27, 2009, Janet Jenkins filed a Motion to Modify Parental Rights and Responsibilities in the Vermont Family Court.  This Motion requested a transfer of custody to Plaintiff Jenkins due to Lisa Miller's continued interference with court ordered visitation. On May 29, 2009 Lisa Miller made contact with Philip Zodhiates, a resident of Waynesboro, Virginia and the President of Response Unlimited, Inc. a Christian direct mail marketing company.

30. On August 21, 2009, the Rutland Family Court held a full day hearing on Janet Jenkins' request to transfer custody of Isabella to her in light of Lisa Miller's ongoing violation of court orders and her disregard of Isabella's best interests. Lisa Miller did not appear for the hearing.

31. On August 25, 2009, the Family and Juvenile Court of Fredrick County, Virginia held a hearing on Janet Jenkins' request to hold Lisa Miller in contempt of the Vermont Family Court Orders, and her request to enforce the orders in the Commonwealth of Virginia. The Virginia Court held Lisa Miller in contempt and fined her $100 per day for any future days of missed contact between Janet Jenkins and Isabella Miller-Jenkins. Lisa Miller did appear at this hearing and held a press conference, flanked by her attorneys Mathew Staver and Rena Lindevaldsen from Liberty University School of Law. Members of the PIC were also present.

LANGROCK SPERRY
& WOOL LLP

32. On September 4, 2009 the Rutland Family Court held a hearing at which it issued an Interim Order while Janet Jenkins' Motion to transfer custody (which had been heard on August 21, 2009) was under consideration. The Rutland Family Court ordered contact between Janet Jenkins and Isabella from September 25, 2009 until September 27, 2009. Lisa Miller did not appear at that hearing, and her attorneys participated via telephone.

33. On or about September 5, 2009, Lisa Miller emailed Debbie Thurman and stated that she knew of the September order. Debbie Thurman posted this email on Facebook. Lisa Miller also granted an interview to an online publication called Lifesitenews.com, discussing the order, and what she thought would happen if she did not follow it – that she would lose custody.

34. By the late summer of 2009, Lisa Miller and her co-conspirators had devised a plan to kidnap Isabella and avoid detection by infiltrating the Beachy Amish-Mennonite Christian Brotherhood to enable her abduction of Isabella. Lisa Miller's involvement with the Brotherhood was not known to Janet Jenkins until April of 2011, when Timothy Miller, a Beachy Amish-Mennonite pastor in the Nicaragua Brotherhood was arrested for Aiding and Abetting Isabella's abduction.

35. On September 19, 2009, two days before her departure for Nicaragua, Lisa Miller and Isabella travelled back to Winchester, VA. During this trip, Lisa arranged to meet Defendant Wright in a parking lot so that she and Isabella could say "good-bye" to him. Defendant Wright testified under oath that by good-bye, he understood that Lisa and Isabella were leaving and he would not be seeing them again. At this meeting, Lisa Miller also asked Defendant Wright to help her dispose of some personal items. Pastor Wright understood that Lisa Miller would be taking Isabella away, and he did nothing to notify law enforcement of the situation

36. Unbeknownst to Plaintiff Janet Jenkins, on September 21, 2009, Lisa Miller and Isabella were transported, in disguise as Amish-Mennonites, to the Canadian border by Philip Zodhiates and at least one other Response Unlimited, Inc. employee. Lisa Miller and Isabella crossed the border at the Rainbow Bridge in a taxi in the early morning hours of September 22, 2009, just days prior to the contact ordered by the Rutland Family Court in its September 2009 Interim Order.

37. In the days prior to September 22, 2009, Lisa Miller and Philip Zodhiates conspired with Kenneth Miller, a member of the Virginia Beachy Amish-Mennonite Brotherhood with whom both Victoria and Philip Zodhiates were acquainted, to arrange the purchase of plane tickets from Canada to Nicaragua for Lisa Miller and Isabella Miller-Jenkins. Kenneth Miller also arranged for a Canadian member of the Brotherhood to transport Lisa Miller from an Ontario Hotel to the Toronto airport. Lisa Miller and Isabella Miller-Jenkins flew to Mexico, then El Salvador, and then met Timothy Miller in Nicaragua. Timothy Miller was instructed by Kenneth Miller to purchase plane tickets for Lisa Miller and Isabella, and used his mother-in-law's credit card to do so. Several days later, Kenneth Miller used cash to send a money order to reimburse Timothy Miller's mother-in-law. This was done anonymously, and in such a

way as to avoid detection in a clear effort to avoid the September visit, and the anticipated transfer of custody.

38. Kenneth Miller was a pastor at the Pilgrim Christian Fellowship in Stuart's Draft, VA and a leader within the Beachy Amish-Mennonite Community. He was also employed at his family's garden center, Millmont Greenhouses, Inc., in Stuart's Draft, VA.

39. Starting in September 2009, Lisa Miller and Isabella lived near or among the Beachy Amish-Mennonite Community in Nicaragua, hereinafter the ("Nicaragua Brethren"). This was all done in secret and in such a way as to avoid detection by United States authorities and Janet Jenkins. Lisa Miller would eventually go into "hiding" with Isabella among the Nicaragua Brethren, but would continue to communicate with members of Thomas Road Baptist Church with the assistance of Mr. Zodhiates, Kenneth Miller and members of the Nicaragua Brethren. Lisa Miller went by the name "Sarah" and Isabella was called "Lydia" while in Nicaragua.

40. Lisa Miller did not return Isabella for the September 2009 visit, and Janet Jenkins has not seen or heard from Lisa Miller or Isabella since that time. Janet Jenkins arranged for a welfare check at Lisa Miller's last known address in Forest, Virginia in December of 2009, but no one was home. Janet Jenkins did not learn of Lisa Miller and Isabella Miller-Jenkins' whereabouts until June of 2010.

41. Unbeknownst to Plaintiff Janet Jenkins, in 2009 Victoria Zodhiates (now Hyden) was an employee of Response Unlimited, Inc., and also a "student worker" at Liberty University School of Law. On information and belief, Victoria Zodhiates sent an email during this time period to her co-workers at the law school requesting donations for supplies to send to Lisa Miller to enable her to remain outside the country. Lisa Miller's attorney, Matthew Staver was the Dean of the Law School and Ms. Zodhiates's boss. Matthew Staver and Philip Zodhiates were also personal acquaintances at this time. On September 20, 2009, both Philip Zodhiates and Victoria Hyden called Lisa Miller's father, Terry Miller in Tennessee to assist in arranging her and Isabella's transportation from a Walmart parking lot in Lynchburg, Virginia, to Waynesboro, Virginia, from whence they would depart for Canada and Nicaragua the next day.

42. In early November, 2009, elders of the Thomas Road Baptist Church packed up the personal belongings of Lisa Miller in two bags. These bags were picked up from Lynchburg, Virginia by Philip Zodhiates who arranged to have the bags transported to Nicaragua by sending them with his son's school teacher who was taking some children on a mission trip to Managua. Philip Zodhiates arranged for the teacher, John Collmus, to deliver the bags at the airport to Timothy Miller. The bags also contained some supplies for Lisa Miller, such as peanut butter.

43. On November 20, 2009, after numerous contempt findings against Miller, the Rutland Family Court issued its Order that legal and physical parental rights and responsibilities for Isabella to be transferred to Plaintiff Janet Jenkins, effective January 1, 2010 at 1:00 p.m. Deborah Thurman, a member of Thomas Road Baptist Church and the PIC posted a note from Lisa Miller on Facebook on December 5, 2009, acknowledging the ruling. By this time, Thurman had also joined Rena Lindevaldsen

LANGROCK SPERRY
& WOOL LLP

8

as the administrator of the Facebook site called "Only One Mommy" founded by Lindevaldsen to solicit donations and support for the case.

44. On November 20, 2009, the day that the Order was issued transferring custody, Kenneth Miller made a phone call to Timothy Miller in Nicaragua. Kenneth Miller also contacted Defendant Douglas Wright of Keystone Baptist Church. He asked Defendant Wright to assist in disposing of Lisa Miller's belongings from her apartment in Virginia. Defendant Wright assisted Kenneth Miller, and did not notify the police that Lisa had departed several months previously.

45. On December 30, 2009 after the news of Lisa and Isabella's disappearance broke, Deborah Thurman made a statement on her internet blog, which she linked the to the Only One Mommy site. She stated, inter alia:

> *So, the blogosphere and the mainstream media are now abuzz with the news that - gasp! - Lisa and Isabella Miller are nowhere to be found, just days before the court-mandated transfer of custody of 7-year-old Isabella to Janet Jenkins. Ya reckon?*

And in conclusion, wrote:

> *The majority of Americans overwhelmingly support traditional marriage. If the tyrannical minority wants to push against that, it can and will be met with civil disobedience. There is no other way.*

46. This threat was removed from the internet after Plaintiff Jenkins printed it out and brought it to the police.

47. Lisa Miller's attorneys Mathew Staver and Rena Lindevaldsen also routinely instructed their Law School students that the correct course of action for a person in Lisa Miller's situation would be to engage in "civil disobedience" and defy court orders.

48. Also in 2009, TRBC Head Pastor Jonathan Falwell was among several religious leaders who made a call for "Christian civil disobedience" and published a public declaration, known as The Manhattan Declaration stating that they:

> *"will not comply with any edict that purports to compel our institutions to participate in abortions, embryo-destructive research, assisted suicide and euthanasia, or any other anti-life act; nor will we bend to any rule purporting to force us to bless immoral sexual partnerships, treat them as marriages or the equivalent, or refrain from proclaiming the truth, as we know it, about morality and immorality and marriage and the family."[1]*

LANGROCK SPERRY
& WOOL LLP

49. Hence, Defendants TRBC and its related ministry Liberty University School of Law encouraged its agents to disregard state laws governing parental rights, particularly

---

[1] Available at http://manhattandeclaration.org/home.aspx

Vermont's law giving rights to members of same-sex families. The TRBC and Liberty University School of Law through its public declaration promoted, condoned and explicitly ratified its agent's tortious, racketeering activity. These agents and employees have followed this direction, making TRBC and Liberty University School of Law liable in *respondeat superior* for the consequences.

2010

50. Lisa Miller did not return Isabella for the January 1, 2010 transfer of custody but held her outside the United States, despite learning of the ruling.

51. In January 2010, Linda Wall appeared on television with several members of the PIC and TRBC, including TRBC's Pastor for Outreach and Assimilation Tipton Killingsworth, to endorse the kidnapping. In discussing her role, Wall compared herself to Harriet Tubman, and suggested she would take similar actions with regard to more children from same-sex families. Pastor Killingsworth also publically supported Lisa Miller's actions and threatened ongoing kidnapping activity. He wrote in an internet chat on February 22, 2010:

> "No one has been "kidnapped." It may come to that as when the Pharoah tried to do the same thing to the Israelites in Egypt. Just as it was necessary for Moses to be in the basket, that might be necessary for Izzy but time will tell. As you've said, Lisa is certainly Izzy's refuge from the VT law."

52. Defendant Wall also wrote on Facebook that if anyone knew of Lisa and Isabella's whereabouts, they should not tell anyone. She also made several phone calls to law enforcement to instruct them that they should not look for Lisa and Isabella.

53. In May of 2010, Philip Zodhiates contacted Kenneth Miller purportedly to arrange the purchase of hydrangea plants from Millmont Greenhouses, Inc., for his daughter Victoria's wedding. As stated above, Kenneth Miller was an employee of Millmont at that time. Upon information and belief, this transaction with Mr. Zodhiates was never recorded in the normal course of business, but instead, was fraudulently transferred through a payroll account into a check to Andrew Yoder, for $500. Andrew Yoder was never an employee of Millmont Greenhouses, Inc. On August 10, 2012, Andrew Yoder testified under oath that he received a check to cash from Kenneth Miller to enable him to bring cash to Nicaragua to transfer to Timothy Miller. Yoder testified that he believed this cash was related to Lisa Miller. Yoder also testified that he had met Lisa Miller and Isabella through Timothy Miller in 2009, that she was receiving aid from CAM in Nicaragua, and that he knew of her custody case. He testified that he notified his employer, CAM of this in November 2009. CAM did nothing to report this situation to the authorities, and expressed sympathy with Lisa Miller's decision to kidnap Isabella.

54. With the assistance of Thomas Road Baptist Church members, as well as Kenneth Miller, Timothy Miller, CAM, Philip Zodhiates, Victoria Zodhiates, in their individual capacities and as agents of Response Unlimited and Liberty University School of Law, Lisa Miller was able to leave the United States in advance of September 25, 2009 and remain there past January 1, 2010. Linda Wall sought donations for Lisa Miller after

January 2010, and other TRBC members maintained a post office box for donations to "Friends of Lisa Miller." Since the fall of 2009, Lisa Miller has received aid from the Beachy Amish-Mennonite Brethren, including through Christian Aid Ministries, Inc. to continue her abduction of Isabella. Lisa Miller worked in the Managua home of Pastor Timothy Miller. Timothy Miller was arrested for aiding and abetting the kidnapping of Isabella Miller-Jenkins in April of 2011. In November, 2011, charges were dismissed when he agreed to provide truthful testimony for the United States Government.

55. At the time of Timothy Miller's arrest Isabella was living with Lisa in Jinotega, Nicaragua, where Lisa was teaching in a school. After the arrest, when her location was discovered, Isabella was uprooted again to an unknown location. It is not known if Isabella is still with Lisa Miller since this time, or with others who are keeping her in hiding.

2011

56. In November 2011, following the dismissal of the charges against Timothy Miller, Kenneth Miller was indicted for aiding and abetting the international parental kidnapping of Isabella Miller-Jenkins. Kenneth Miller, who was living in Ireland at the time of his arrest, had been a pastor and member of the Pilgrim Christian Fellowship in Stuart's Draft, VA, where Victoria Hyden had previously attended grade school. Through his employment at the church, he was acquainted with Defendants Victoria and Philip Zodhiates.

57. At the trial of Kenneth Miller in August 2012, a number of Lisa Miller's friends and supporters testified, including Defendant Wright, and several members of the PIC. When asked if any of them had met or heard of Philip Zodhiates, the answer was no. At the trial, the government introduced phone records that showed phone calls made from Philip Zodhiates's cell phone between 1:28pm and 1:30pm on September 22, 2009, to a cell phone with an Orlando area code that is registered to Liberty Counsel, a landline registered to Liberty Counsel, and a landline registered to Liberty University School of Law. Mathew Staver, Dean of the Liberty University School of Law, splits his time between Lynchburg, Virginia and Orlando, Florida. At the time that the calls were made, Philip Zodhiates was still en route back to Virginia after depositing Lisa Miller and Isabella near the Canadian border.

58. Lisa Miller's attorneys, Matthew Staver and Rena Lindevaldsen have at all times maintained that they did not know their client's location to various courts in Vermont (including in sworn testimony of Rena Lindevaldsen) and Virginia, and to the press that she simply stopped communicating with them and disappeared.

59. Meanwhile, Matthew Staver's acquaintance, Philip Zodhiates, and his daughter Victoria, an assistant in the Law School knew of Lisa Miller's whereabouts and solicited donations from other Law School employees for her aid. Upon information and belief, other law school employees who spoke to Victoria about Lisa Miller's whereabouts were too intimidated to come forward to law enforcement for fear of angering Dean Staver and losing their jobs. During the time that Lisa and Isabella were missing, Dean Staver fired several members of the admissions and financial aid

LANGROCK SPERRY
& WOOL LLP

11

department who were under his supervision. To this day, Victoria Hyden is still an employee of the law school, even though her tortious conduct involving Isabella Miller-Jenkins has been in public court records for over a year. Also, while Lisa Miller and Isabella were missing, Lisa Miller's attorneys continued to press appeals on Lisa Miller's behalf until the last appeals were exhausted in November 2010 (more than a year after she was missing), stating that they had advance instructions from Lisa Miller as to her wishes for the ongoing litigation.

60. Rena Lindevaldsen published a book with New Revolution Press about Lisa Miller in 2011, citing portions of Lisa Miller's personal diaries which Lindevaldsen has stated were entrusted to her before Lisa Miller disappeared. Lindevaldsen and Staver have appeared on radio and television to promote the book, entitled *Only One Mommy: A Woman's Battle for Her Life, Her Daughter, and Her Freedom: The Lisa Miller Story.* Lindevaldsen has also publically criticized law enforcement for its efforts to find Lisa Miller and Isabella in an interview with Lifesitenews.com, stating:

> *I think certainly the current administration has obviously made a commitment that this is a high priority for them, that they are going to track down a biological mother and attempt to take this child away from her biological mother and I certainly think that there is some political pressure that could be taken.*

> *I think the word needs to get out. Christians need to know that these things are happening, the idea that a woman apparently had to flee the country to protect her child, shouldn't be happening in America, and I don't think enough Christians know about that and don't realize that the people they vote for in an election year, who they vote for has direct consequences on things like this.*

2012
61. On February 2, 2012 The Nicaragua Brethren released an official statement detailing how Lisa Miller had, from their perspective, infiltrated the Brethren, and was now in hiding among them, stating in part:

> *Lisa Miller left the US free with full custody of her child and lived in Nicaragua as a free person. She had her own money and took care of herself. After a time of instruction, and of searching the Scriptures, she asked to become part of the church and was received into the brotherhood.*

> *To our knowledge neither Lisa nor any of the Nicaraguan brethren had heard that an arrest warrant had been issued for her until Timo Miller was arrested a year later. Then we discovered that the law was accusing the brethren of aiding in a kidnapping even though Lisa still had total and legal custody when she left the US. After Timo Miller's arrest the law started to pursue Lisa, so she decided to go into hiding.*

> *Several years have passed. At the time we did not know what all was going on. We only knew that the poor mother and the precious child needed help, so some of our*

*people kindly extended them a helping hand. But now this case has grown and quite a few congregations have been affected.[2]*

62. Based on the foregoing, all of the Defendants named herein, in both their individual capacities and as agents of TRBC, Liberty University Law School, Response Unlimited, Inc., and CAM are liable for conspiring with Lisa Miller and with each other to kidnap Isabella Miller-Jenkins, assure her continued detention outside the State of Vermont, and for conspiring with Kenneth Miller to participate in the affairs of the Beachy Amish-Mennonite Brotherhood through a pattern of racketeering activity.. Defendants are also liable for conspiring to violate Janet Jenkins' and Isabella Miller-Jenkins' rights to a parent-child relationship on account of Isabella having two mothers instead of a mother and a father, and Defendant Wright is liable under 42 U.S.C. 1986 for failing to prevent the violation of Plaintiffs' civil rights.

## COUNT ONE – INTENTIONAL TORT OF KIDNAPPING

**Plaintiffs incorporate by reference paragraphs 1 through 62 as though fully set forth herein.**

63. Plaintiffs Janet Jenkins and Isabella Miller-Jenkins allege that on or about September 21, 2009 Lisa Miller did commit the intentional tort of kidnapping Isabella Miller-Jenkins and transporting her, under cover of night, while both disguised as Amish-Mennonites, outside of the United States in order to interfere with Janet Jenkins' lawful custody of Isabella between the dates of September 25, 2009 and September 27, 2009. Plaintiffs also allege that Lisa Miller intentionally held Isabella Miller-Jenkins outside of the United States, specifically, in Nicaragua, to interfere with Janet Jenkins' lawful custody of Isabella between the dates of January 1, 2010 and the present, and to thwart the equal protection afforded to Janet Jenkins and Isabella Miller-Jenkins under Vermont law. Such acts constitute the act or threat of kidnapping chargeable as a criminal offense under Vermont law and punishable by imprisonment for more than one year.

64. Plaintiffs Janet Jenkins and Isabella Miller-Jenkins further allege that Lisa Miller did conspire with, and was aided and abetted by Response Unlimited, Inc., Philip Zodhiates, individually and as an agent/officer of Response Unlimited, Inc., Victoria Hyden, f/k/a Victoria Zodhiates, individually and as an agent of Response Unlimited, Inc,. and Liberty University School of Law, Kenneth Miller, Timothy Miller, Andrew Yoder, individually and as an agent of Christian Aid Ministries, Inc., Christian Aid Ministries, Inc., Linda Wall, individually and as an agent of Thomas Road Baptist Church, Thomas Road Baptist Church and its related ministry Liberty University School of Law.

LANGROCK SPERRY
& WOOL LLP

---

[2] Available at http://www.lifesitenews.com/news/i-promised-god-that-if-he-would-save-my-baby-i-would-leave-the-homosexual-l/

**COUNT TWO – VIOLATION OF THE RACKETEER INFLUENCE AND
CORRUPT ORGANIZATIONS ACT
Violation of 18 U.S.C. § 1962(c)**

**Plaintiffs incorporate by reference paragraphs 1 through 64 as though fully set forth
herein.**

65. Defendant Kenneth Miller is a person within the meaning of 18 U.S.C. § 1961(3).

66. Defendant committed acts of racketeering within the meaning of 18 U.S.C. § 1961, as
    follows:

> a. Acts or threats involving kidnapping which are chargeable as such under
>    Vermont law (13 V.S.A. 2451, 13 V.S.A. 2405(a)(2)) and many other
>    state laws throughout the United States, including aiding and abetting
>    kidnapping for the aforementioned purpose of violating the September
>    2009 custody order and the November 20, 2010 custody order.
>
> b. Violations of 18 U.S.C. § 1956, involving laundering of monetary
>    instruments, including laundering money received from Philip Zodhiates
>    under the guise of a hydrangea purchase, by converting it into a
>    fraudulent payroll check from Millmont Greenhouses, Inc. to Andrew
>    Yoder for transmission to Nicaragua to support Isabella Miller-Jenkins's
>    kidnapping.
>
> c. Violations of 18 U.S.C § 1341 involving mail fraud, including, for
>    placing the fraudulently obtained payroll check to Andrew Yoder in the
>    mail to further this unlawful scheme.

67. The racketeering acts committed by the Defendant Kenneth Miller constitute a pattern
    of racketeering activity within the meaning of 18 U.S.C. § 1961(5) in that they are
    related to one another and are continuous.  These racketeering acts are continuous in
    that they have occurred over a period exceeding two years, will continue into the
    future, and pose the threat of continuing for years.  The racketeering activities also
    pose of risk of continuation because Defendant Kenneth Miller and his co-conspirators
    have repeatedly used the Miller-Jenkins custody case and kidnapping as an example
    that other Christians should follow vis à vis the custody rights of same-sex parents.

68. The Beachy Amish-Mennonite Brotherhood is religious sect, whose activities include
    evangelizing, as well as providing material aid people who are victims of natural
    disasters and other circumstances.  The Beachy Amish-Mennonite Brotherhood is a
    RICO enterprise within the meaning of 18 U.S.C. §1961(4), the activities of which
    affect interstate or foreign commerce, and is continuous and has an ongoing structure
    and organization sufficient to permit its associates to commit a pattern of racketeering
    activity.

69. The Defendant Kenneth Miller is employed by, or associated with the Brotherhood and
    he has conducted or participated in the affairs of the Brotherhood through the

LANGROCK SPERRY
& WOOL LLP

14

aforementioned pattern of racketeering activity, including serving as a leader and pastor within two of the Brotherhood's churches, and within the Brotherhood in general.

70. As a direct and proximate result of Defendant's violation of 18 U.S.C. § 1962(c), Plaintiffs have suffered injury to their business or property, including legal fees, investigative fees, court costs, and unpaid child support obligations, and deprivation of personal property

## COUNT THREE– VIOLATION OF THE RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ACT
### Violation of 18 U.S.C. § 1962(d)

**Plaintiffs incorporate by reference paragraphs 1 through 70 as though fully set forth herein.**

71. Defendant Kenneth Miller is a person within the meaning of 18 U.S.C. § 1961(3).

72. Defendant has conspired with others, including Lisa Miller, Response Unlimited, Inc., Philip Zodhiates, individually and as an agent/officer of Response Unlimited, Inc., Victoria Hyden, f/k/a Victoria Zodhiates, individually and as an agent of Response Unlimited, Inc. and Liberty University School of Law, and its related ministry TRBC, Liberty University School of Law, and its related ministry TRBC, Timothy Miller, Andrew Yoder, individually and as an agent of Christian Aid Ministries, and Christian Aid Ministries, Inc., for the commission of a violation of 18 U.S.C. § 1962(c) through the aforementioned pattern of racketeering.

73. As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(d), Plaintiffs have suffered injury to their business or property, including legal fees, investigative fees, court costs, and unpaid child support obligations and deprivation of personal property.

## COUNT FOUR: CONSPIRACY TO VIOLATE CIVIL RIGHTS

**Plaintiffs incorporate by reference paragraphs 1 through 72 as though fully set forth herein.**

74. 42 U.S.C. § 1985 (3) provides a civil cause of action for any person who is injured in his person or property by reason of "two or more persons in any State or Territory conspir[ing] or go[ing] in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."

75. Plaintiffs Janet Jenkins and Isabella Miller-Jenkins allege that Lisa Miller conspired with Response Unlimited, Inc., Philip Zodhiates, individually and as an agent/officer

LANGROCK SPERRY
& WOOL LLP

15

of Response Unlimited, Inc., Victoria Hyden, f/k/a Victoria Zodhiates, individually and as an agent of Response Unlimited, Inc. and Liberty University School of Law, Kenneth Miller, Timothy Miller, Andrew Yoder, individually and as an agent of Christian Aid Ministries, Inc. Christian Aid Ministries, Inc., Linda Wall, individually and as an agent of TRBC, TRBC and its related ministry Liberty University School of Law to violate the civil rights of Janet Jenkins and Isabella Miller-Jenkins, on account of gender, and to prevent the Courts of Vermont from securing Janet Jenkins and Isabella Miller-Jenkins equal protection of their rights to a parent-child relationship under the law.

## COUNT FIVE: ACTION FOR NEGLECT TO PREVENT

### Plaintiffs incorporate by reference paragraphs 1 through 75 as though fully set forth herein

76. 42 U.S.C. § 1986 provides that "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented."

77. Plaintiffs allege that Defendant Douglas Wright knew that Lisa Miller was planning to abduct Isabella in order to violate the Plaintiffs' right to equal protection, and did nothing to prevent the abduction or notify the authorities. Instead, he remained silent, and later assisted Defendant Kenneth Miller in disposing of Lisa and Isabella's personal property.

## DAMAGES

78. As a result of Isabella's kidnapping, Janet Jenkins has suffered extreme emotional distress and the loss of her daughter's companionship.

79. Janet Jenkins has incurred legal fees and lost business as a result of having to close her daycare center in order to attend contempt and other Court hearings, an meetings with law enforcement necessary to locate her daughter. These losses constitute a damage and injury to her business and property, entitling her to standing under the Civil RICO statute. Janet Jenkins has also been unable to collect court ordered fines, which constitute a property interest. These fines have been accruing in the amount of $100 per day from September 25- 27, 2009 and since January 1, 2010 and are expected to continue indefinitely while Isabella is abducted.

80. Plaintiff Isabella Miller-Jenkins has suffered emotional distress as a result of the abduction. According to Timothy Miller, at one point, Isabella was living in isolation and having a difficult time. In the most recent report about Isabella's whereabouts, it seems that her freedom of movement is severely restricted by the Nicaragua Brethren and Lisa Miller and that her standard of living is far below what even the poorest children in the United States experience.

LANGROCK SPERRY
& WOOL LLP

16

81. Plaintiff Isabella Miller-Jenkins has also suffered the loss of emotional and financial support from her mother, Janet Jenkins. Isabella has a property interest in child support from one or both parents based on her needs and best interests. The child support previously due to the custodial parent for Isabella's care was approximately $250 per month. This deprivation continues today and is expected to continue indefinitely into the future. In addition to the property right of child support, on information and belief, Isabella is currently being deprived of an education, medical and dental care and the support of her extended family, including grandparents Ruth and Claude Jenkins. All of these factors currently and will in the future result in an injury to Isabella's property and future business and employment.

82. Plaintiffs request that treble damages be awarded, as permitted under the RICO Statute and based on the outrageous conduct of the Defendants.

83. Plaintiffs request compensatory and punitive damages against Defendants for the intentional tort of kidnapping Isabella and for violations of the Plaintiff's civil rights.

### JURY DEMAND

Plaintiffs request a jury trial on factual issues and the required fee has or will be paid.

### PRAYER

For the above reasons, Plaintiffs request that the named Defendants be made to appear herein and be held liable as alleged herein and that judgment be entered in the Plaintiffs favor against the Defendants in the following particulars:

1. An order that the Defendants cease their unlawful activities immediately and return Isabella Miller-Jenkins to the United States.
2. Actual and punitive damages as requested herein.
3. Attorney's fees and expert witness fees.
4. Costs of court and any other relief to which the Plaintiffs are justly entitled.

DATED AT MIDDLEBURY, VERMONT this ___/ 3 __ day of August, 2012

Sarah Star, Esq.
Sarah R. Star, Esq., Attorney and Counselor at Law, P.C.
P.O. Box 106
Middlebury, VT 05753

Frank H. Langrock, Esq.
Langrock Sperry and Wool, LLP.
111 S. Pleasant Street, PO Drawer 351
Middlebury, VT 05753-0351

LANGROCK SPERRY
& WOOL LLP

579061

17