```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT


JANET JENKINS, for herself and as      :
next friend of ISABELLA MILLER-        :
JENKINS, a/k/a ISABELLA MILLER,        :
                                       :
     Plaintiffs,                       :
                                       :
          v.                           :   Case No. 2:12-cv-184
                                       :
KENNETH L. MILLER, LISA ANN MILLER     :
f/k/a LISA MILLER-JENKINS, TIMOTHY     :
D. MILLER, RESPONSE UNLIMITED,         :
INC., PHILIP ZODHIATES,                :
individually and as an                 :
agent for RESPONSE UNLIMITED, INC.,    :
VICTORIA HYDEN, f/k/a VICTORIA         :
ZODHIATES, individually and as an      :
agent for RESPONSE UNLIMITED,          :
INC., LINDA M. WALL,                   :
                                       :
     Defendants.                       :
```

**OPINION AND ORDER**

Plaintiff Janet Jenkins, for herself and as next friend of her daughter Isabella Miller-Jenkins, brings this action claiming that defendants have kidnapped and conspired to kidnap Isabella. Several defendants previously moved to dismiss for lack of personal jurisdiction, and some were dismissed from the case on that basis.[1]  Personal jurisdiction challenges brought by defendants Philip Zodhiates, Victoria Hyden, and Linda Wall were denied, and the Court granted leave for jurisdictional discovery with respect to defendant Response Unlimited, Inc. ("RUL").

---

[1] The dismissed defendants are no longer listed in the case caption.

Those four defendants have now renewed their motions to dismiss in light of the United States Supreme Court's ruling in *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115 (2014).  For the reasons set forth below, the renewed motions are DENIED.

## Factual Background

Lisa Miller and Janet Jenkins joined in a civil union under Vermont law in 2000.[2]  In 2002, Miller gave birth to Isabella.  When Isabella was seventeen months old, Miller and Jenkins separated and Miller moved with Isabella to Virginia.

At that time, Miller petitioned the Vermont Family Court to dissolve her civil union with Jenkins and determine parental rights and responsibilities with respect to Isabella.[3]  On June 17, 2004, the Family Court issued an order granting temporary legal and physical responsibility to Miller, and setting a visitation schedule for contact between Jenkins and Isabella.  That schedule included monthly visits and daily telephone contact.  Miller allegedly failed to comply with the visitation schedule, as aside from a visit on the first scheduled weekend,

---

[2] In Vermont, two members of the same sex may enter into a civil union and thereby receive the benefits and protections and be subject to the responsibilities of spouses.  Vt. Stat. Ann. tit. 15, §§ 1201, 1202, 1204.

[3] Under Vermont law, "'[p]arental rights and responsibilities' means the rights and responsibilities related to a child's physical living arrangements, parent child contact, education, medical and dental care, religion, travel and any other matter involving a child's welfare and upbringing." Vt. Stat. Ann. tit. 15, § 664(1).  The term embraces both "legal responsibility" and "physical responsibility."  *Id.*  The Family Division of the Vermont Superior Court has jurisdiction over proceedings relating to the dissolution of civil unions, including the determination of parental rights and responsibilities of a minor child.  *See id.* §§ 665, 1206.

2

she did not allow Jenkins to have contact with Isabella either in person or by telephone.

Miller subsequently filed a separate petition in the Circuit Court of Frederick County, Virginia, asking that court to declare her the sole parent of Isabella and to rule that Jenkins had no parental or visitation rights.  On appeal from an order granting Miller's requested relief, the Virginia Court of Appeals held that by filing her original petition in Vermont, Miller had invoked the jurisdiction of the courts of Vermont, and that Virginia courts were required to extend full faith and credit to the custody and visitation orders of the Vermont court.  *Miller-Jenkins v. Miller-Jenkins*, 637 S.E.2d 330, 338 (Va. App. 2006).

In June 2007, the Vermont Family Court granted sole physical and legal custody to Miller, and awarded Jenkins visitation rights.  The Court warned Miller, however, that continued interference with the relationship between Isabella and Jenkins could warrant a modification of the custody order.  *See Miller-Jenkins v. Miller-Jenkins*, 2010 VT 98, ¶ 5, 12 A.3d 768, 772 (entry order).  Although Miller did comply with the visitation schedule on several occasions in the last half of 2007, by the spring of 2008 she again defied the court's orders and was found in contempt multiple times.

In August 2009, Jenkins moved to modify the family court order concerning parental rights and responsibilities.  Miller

3

did not attend the hearing on the motion, but filed an objection to any transfer of custody.  In September 2009, before the Vermont Family Court ruled on Jenkins's motion, Miller left the country with Isabella.  On November 20, 2009, the Vermont Family Court concluded that Miller had willfully interfered with Jenkins's visitation rights, and transferred legal and physical rights and responsibilities for Isabella to Jenkins as of January 1, 2010.  Miller and Isabella are believed to still be outside the United States.

   A government investigation subsequently determined that in September 2009, Miller and Isabella traveled by car from Virginia to Buffalo, New York, where they took a taxi across the border to Ontario, Canada.  On September 22, 2009, they flew from Toronto to Mexico City, and ultimately to Managua, Nicaragua.  The tickets were purchased by Defendant Timothy Miller (no relation to Lisa Miller), an Amish Mennonite pastor and missionary living in Managua.  The government further determined that Defendant Kenneth Miller (no relation to Lisa or Timothy Miller), a Beachy Amish Mennonite pastor from Virginia, had contacted Timothy Miller to request his assistance.

   On April 27, 2010, an arrest warrant was issued for Lisa Miller.  Timothy Miller and Kenneth Miller were charged with aiding and abetting the international parental kidnapping of Isabella, in violation of 18 U.S.C. § 1204.  The charge against

4

Timothy Miller was dropped in exchange for his agreement to cooperate with the investigation and to provide testimony if needed.

The case against Kenneth Miller went to trial in August 2012.  On August 14, 2012, a jury returned a guilty verdict on the charge of aiding and abetting an international parental kidnapping.  Kenneth Miller was sentenced on March 4, 2013 to a term of imprisonment of twenty-seven months.  The sentence has been stayed pending appeal.

At trial, several witnesses provided details of a scheme to help Lisa Miller remove Isabella from the United States, and to further assist them once they were outside the country.  Ervin Horst, a Mennonite pastor from Ontario, testified that he received a telephone call from Kenneth Miller asking if he would help someone leave the country by traveling to Buffalo, New York and crossing the border with her.  When Horst understood that the reason for her leaving involved a custody dispute, he refused to enter the United States, but did agree to pick her up once she had crossed the border into Canada and to take her to the airport.

Horst also talked with a man identified as "Philip," whom he understood was bringing Lisa Miller and Isabella from Virginia to Buffalo.  Defendant Philip Zodhiates was the president of Defendant RUL, a direct mail marketing company specializing in

Christian and conservative causes.  Zodhiates's cell phone, as well as a cell phone assigned to RUL, traveled north from Virginia to Buffalo that day.

While still in the United States, Lisa Miller had discussed her situation with Defendant Linda Wall.  The Amended Complaint alleges that Wall and Miller "decided and agreed as early as June of 2008 that Lisa Miller should flee with Isabella."  ECF No. 59 at 6, ¶ 26.  Wall and Lisa Miller and others launched the Protect Isabella Coalition in the spring of 2008 to support Miller's efforts to avoid complying with court-ordered visitation.  Donations were solicited and a Facebook site established.  After Miller and Isabella left the country, Wall publicly compared herself to Harriet Tubman and suggested she would take similar actions with regard to other children from same-sex families.  *Id.* ¶ 41.  She also advised anyone with knowledge of Miller's whereabouts not to reveal it.

In 2009, Victoria Hyden, daughter of Philip Zodhiates, was an employee of RUL and a student at and employee of Liberty University School of Law.  She had attended grade school in Stuart's Draft, Virginia, where Kenneth Miller was a pastor, and she and her father were acquainted with Kenneth Miller.  On September 20, 2009, both Philip Zodhiates and Victoria Hyden allegedly called Lisa Miller's father for assistance in arranging a rendezvous at a parking lot where Lisa Miller abandoned her

car.

After their flight to Nicaragua, Lisa Miller and Isabella lived near or among the Amish Mennonite community in Nicaragua. The plaintiffs allege on information and belief that Zodhiates has arranged to have money and supplies sent to Lisa Miller in Nicaragua. The Amended Complaint also alleges that Victoria Hyden solicited donations for supplies.

## Procedural Background

The Court previously denied motions to dismiss for lack of personal jurisdiction filed by Defendants Zodhiates, Hyden, and Wall. The Court found that each of these Defendants aimed intentional tortious acts at Janice Jenkins, and "at all times knew that Jenkins was a resident of Vermont. Their actions were aimed at depriving her of lawful parental rights, and the brunt of the injury as a result of their actions was felt in Vermont." ECF No. 115 at 26 (citing *Calder v. Jones*, 465 F.3d 783, 389 (1984)). The Court further found that the exercise of personal jurisdiction in the District of Vermont is reasonable, given the plaintiffs' interest in obtaining relief in their home state, and Vermont's "strong interest in adjudicating claims involving repeated and flagrant violations of Vermont court orders and seeking redress for injuries sustained by a Vermont resident." *Id.* at 37. The Court also granted jurisdictional discovery with respect to Defendant RUL.

**Discussion**

Defendants Zodhiates, Hyden, Wall, and RUL ("movants") now renew their motions to dismiss, relying upon the Supreme Court's recent personal jurisdiction ruling in *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115 (2014).  In *Walden*, two travelers at the San Juan, Puerto Rico airport were found by Transportation Security Administration agents to be carrying $97,000 in their carry-on bags.  One of the travelers, Gina Fiore, explained to agents from the Drug Enforcement Agency ("DEA") that she and the other individual, Keith Gipson, had been gambling.  The two showed State of California identification, and told the agents that they had homes in California and Nevada.  The couple was allowed to board their flight to Atlanta, with a connection to Las Vegas, Nevada, but a DEA task force in Atlanta was notified.

Anthony Walden was a police officer working as a deputized DEA agent at the Atlanta airport.  When Fiore and Gipson arrived in Atlanta, he seized their cash and informed them that the money would be returned if they later proved its legitimate source.  Fiore and Gipson flew on to Nevada, and Walden placed the money in a secure location.  Walden subsequently drafted a probable cause affidavit, which Fiore and Gipson claimed was false and misleading.  No forfeiture complaint was ever filed, and the funds were ultimately returned.

Fiore and Gipson filed a *Bivens* action against Walden in the

United States District Court for the District of Nevada, alleging violations of their Fourth Amendment rights.  The district court granted Walden's motion to dismiss for lack of personal jurisdiction.  The Night Circuit reversed, and the case was heard by the Supreme Court.

The Supreme Court found that Officer Walden did not have the requisite minimum contacts for personal jurisdiction in the District of Nevada.  The Court first noted that minimum contacts are determined by evaluating "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122.  The Court further stated that a "plaintiff cannot be the only link between the defendant and the forum," and that if the only factual basis for jurisdiction was a "defendant's relationship with a plaintiff or third party," an exercise of jurisdiction would be inconsistent with due process.  *Id.* at 1122-23.

Applying these principles to the case at hand, the Court concluded that personal jurisdiction was lacking because Officer Walden had taken no action in Nevada, had no contact with Nevada, and that none of his "challenged conduct had anything to do with Nevada itself." *Id.* at 1124.  The Court noted that its holding was consistent with *Calder*, in which it

> made clear that mere injury to a forum resident is not
> a sufficient connection to the forum.  Regardless of
> where a plaintiff lives or works, an injury is
> jurisdictionally relevant only insofar as it shows that

>      the defendant has formed a contact with the forum
>      State.  The proper question is not where the plaintiff
>      experienced a particular injury or effect but whether
>      the defendant's conduct connects him to the forum in a
>      meaningful way.

*Id.* at 1125.

Here, the movants' relationships with Janet Jenkins, Isabella, and the State of Vermont were fundamentally different from Officer Walden's connection to Nevada.  Jenkins was granted certain rights by the Vermont state courts, and the movants allegedly conspired to frustrate those rights.  Isabella's interests, as determined by the Vermont courts, were at issue as well.  Jenkins's parental rights, which ultimately consisted of sole physical and legal custody, were to be exercised in Vermont.  The movants' alleged actions were thus directed not only at a forum resident, but at the forum itself.

*Walden* found that the police officer's conduct had nothing to do with Nevada, as he seized money from persons in Georgia who had displayed California identification and were flying on to Las Vegas.  In contrast, the movants in this case allegedly engaged in a concerted effort to provide transportation and funds for Lisa Miller and Isabella so that Miller could defy Vermont law and cause harm to a person residing in Vermont.  That conduct connected them "to the forum in a meaningful way."  *Id.*

The Supreme Court held in *Calder* that a defendant's intentional and tortious out-of-state activity can establish

specific personal jurisdiction.  465 U.S. at 789.  The Court's holding was based not merely upon the defendant's contact with the plaintiff, but also upon "the relationship among the defendant, the forum, and the litigation."  *Id.* at 788.  The Court ultimately concluded that although the allegedly-wrongful acts, the writing and editing of a scandalous news article, took place in Florida, California was a proper forum because it was "the focal point both of the [allegedly-libelous] story and of the harm suffered."  *Id.* at 789.

Here, the movants have allegedly interfered with Jenkins's parental rights, and specifically, her right to assert legal and physical responsibility for Isabella.  Those rights arose out of a Vermont civil union and subsequent Vermont Family Court rulings.  Accordingly, Vermont was "the focal point" not only because movants aimed to deprive Jenkins of her parental rights in Vermont, but because specific rulings by Vermont state courts granted those rights.  *Id.*  *Walden* presented a very different set of facts, left undisturbed established Supreme Court precedent, and does not dictate an alteration here.

## Conclusion

For the reasons set forth above, the movants' renewed motions to dismiss (ECF 142, 143) are DENIED.

Dated at Burlington, in the District of Vermont, this 15th day of July, 2014.

/s/ William K. Sessions III
William K. Sessions III
United States District Court Judge