```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT

JANET JENKINS, for herself and as    :
next friend of ISABELLA MILLER-      :
JENKINS, a/k/a ISABELLA MILLER,      :
                                     :
     Plaintiffs,                     :
                                     :
          v.                         :   Case No. 2:12-cv-184
                                     :
KENNETH L. MILLER, LISA ANN MILLER   :
f/k/a LISA MILLER-JENKINS, TIMOTHY   :
D. MILLER, RESPONSE UNLIMITED,       :
INC., PHILIP ZODHIATES,              :
individually and as an               :
agent for RESPONSE UNLIMITED, INC.,  :
VICTORIA HYDEN, f/k/a VICTORIA       :
ZODHIATES, individually and as an    :
agent for RESPONSE UNLIMITED,        :
INC., LINDA M. WALL, LIBERTY         :
UNIVERSITY, INC., RENA M.            :
LINDEVALDSEN, LIBERTY COUNSEL,       :
LLC,                                 :
                                     :
     Defendants.                     :
```

## OPINION AND ORDER

Plaintiff Janet Jenkins, for herself and as next friend of her daughter Isabella Miller-Jenkins, has brought suit against several individuals and organizations alleging that they kidnapped and conspired to kidnap Isabella. Pending before the Court is defendant Liberty University's motion to reconsider and amend the September 29, 2017 Order in which the Court denied the University's motion to dismiss. The University argues that the Court erred when it declined to dismiss the Plaintiffs' conspiracy claims, which are each based upon a theory of vicarious liability. The University moves in the alternative for

the Court to certify certain questions for appeal.  The University has also filed a motion to stay discovery while the motion for reconsideration is pending.

For the reasons set forth below, the motion for reconsideration is **granted** and the claims against Liberty University are **dismissed**.  The motion to stay discovery pending reconsideration is **denied** as moot.

## Background

The fundamental factual allegations in this case, which are well known to the parties and the Court at this point, are that several individuals conspired with Lisa Miller, the natural mother of Isabella Miller-Jenkins, to kidnap Isabella and take her out of the United States.  Those individuals allegedly included Victoria Hyden, Rena Lindevaldsen and Matthew Staver, each of whom were employed by Liberty University during the relevant time period.  The University is named as a defendant due to its role as an employer, and because it was allegedly affiliated with Liberty Counsel, LLC, which represented Lisa Miller in her family law litigation against plaintiff Jenkins. The Revised Second Amended Complaint brings two causes of action against the defendants: intentional tort of kidnapping and conspiracy to violate civil rights.

In its prior ruling, the Court held that Jenkins had stated a plausible claim of vicarious liability against the University.

The Court first found that some of Lindevaldsen's alleged misconduct was committed within the scope of her employment, reasoning that "although Lindevaldsen was not employed primarily to litigate family court cases for the University, the Court can reasonably infer from the facts alleged that her work in representing Lisa Miller was at least incidental to her job at Liberty University." ECF No. 277 at 68. As an example, the Court noted that Lindevaldsen wrote a book about her legal work with Miller, and used the book as a teaching tool at the University. Lindevaldsen also communicated with Miller overseas while at the University. Finally, the Court found that tortious conduct "was not unexpectable by the University because it was part and parcel of [Lindevaldsen's] representation of Lisa Miller." *Id.* at 69.

The Court also relied on Section 219(2) of the Restatement (Second) of Agency, which has been recognized by the Vermont Supreme Court as relevant to assessing vicarious liability. *See Doe v. Forrest*, 853 A.2d 48, 56 (Vt. 2004). Section 219(2) provides that an employer "is not subject to liability for the torts of [its] servants acting outside the scope of their employment, unless: . . . (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." The Court applied the

second provision — aiding by virtue of an agency relationship — here, explaining that some of Lindevaldsen's tortious conduct was allegedly committed with the help of Victoria Hyden, a part-time student employee, each using the authority and resources afforded them by the University.

With respect to Defendant Staver, a law professor and dean at Liberty University Law School, the Court found no vicarious liability. First, nothing in Staver's role in representing Lisa Miller was alleged to be "intertwined with his teaching and administrative roles at the University as it was in Lindevaldsen's case. . . . Nor is it clear that his representation of Lisa Miller furthered the University's educational goals as much as Lindevaldsen's, who wrote a book on the basis of that representation that served to educate Liberty University students." ECF No. 277 at 70-71. The pleadings also lacked any allegation that Staver had "abused his position at Liberty University to further the goals of the conspiracy by, for example, using Liberty University resources to communicate with Lisa Miller in an undetected manner." *Id.* at 71.

The University now asks the Court to reconsider its ruling on the motion to dismiss. The University contends in part that reconsideration is warranted because the Court overlooked the "control" element of vicarious liability. The University also criticizes the Court's reliance on the "aiding" provision in the

Restatement, contending that such a ruling runs the risk of expanding vicarious liability to any employer whose common workplace tools, such as email and telephone, are used by an employee in the commission of an intentional tort or civil rights violation.

## Discussion

The accepted standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners*, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). Reconsideration may also be granted if the movant demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992)). Liberty University has satisfied this demanding standard.

The Vermont Supreme Court has held that "[u]nder the settled doctrine of respondeat superior, an employer or master is held vicariously liable for the tortious acts of an employee or servant committed during, or incidental to, the scope of employment." *See Brueckner v. Norwich Univ.*, 730 A.2d 1086,

1090-91 (Vt. 1999) (citing *Anderson v. Toombs*, 117 A.2d 250, 253 (Vt. 1955); *Poplaski v. Lamphere*, 565 A.2d 1326, 1330 (Vt. 1989)). "To be within the scope of employment, conduct must be of the same general nature as, or incidental to, the authorized conduct. Conduct of the servant falls within the scope of employment if: (a) it is of the kind the servant is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) in a case in which the force is intentionally used by the servant against another, it is not unexpectable by the master. Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master." *Id.* at 123 (citing Restatement (Second) of Agency §§ 228(1), 228(2), 229(1) (1958)).

The University's objection to the Court's prior ruling focuses in part on the question of control, as "[t]he really essential element in the relationship of master and servant is the right of control." *Minogue v. Rutland Hosp., Inc.*, 125 A.2d 796, 798 (Vt. 1956); *see also Breslauer v. Fayston Sch. Dist.*, 659 A.2d 1129, 1134 (Vt. 1995); Restatement (Second) of Agency § 228 cmt. c ("there is no liability for the conduct of one who, although a servant in performing other service, is doing work as

to which there is no control or right to control by the master")). The University contends that, even accepting the Plaintiffs' allegations as true, there is no plausible claim that it had either actual or potential control over the conspiratorial and tortious acts allegedly committed by Lindevaldsen and Hyden. The University also submits that participation in a criminal conspiracy to commit kidnapping cannot be said to have furthered its interests.

Indeed, Jenkins has offered no allegations or evidence that the University controlled the alleged conspiratorial acts of Lindevaldsen and Hyden. Even if the Court goes beyond the kidnapping scheme and considers more generally the legal representation of Lisa Miller, there is no plausible claim that the University had control over that representation. In addition to a lack of factual support, any such control by a third party with regard to a lawyer's conduct in litigation would be problematic in light of the lawyer's exclusive fiduciary duty to her client. *See Strong v. Fitzpatrick*, 169 A.2d 783, 786 (Vt. 2017) (noting that "an attorney owes a duty of care only to his or her own client").

While Plaintiffs allege several links between the University, Lindevaldsen, Hyden, and Lisa Miller, those connections do not amount to a viable claim that Lindevaldsen and Hyden were acting within the scope of their University

employment.  Lindevaldsen taught at the University.  Her representation of Lisa Miller was conducted in her separate role as an attorney affiliated with Liberty Counsel.  Hyden was a part-time student employee at the University, but there is no allegation that her assigned tasks included involvement in an alleged plot to remove Isabella from the United States.

Upon reconsideration, the Court further finds that the allegedly-conspiratorial actions by Hyden and Lindevaldsen were neither incidental to their University employment nor expectable by the University.  The University may have made its views public with respect to same-sex relationships, and even supported Lisa Miller's position in litigation.  Nonetheless, conspiring to kidnap a child and remove her from the country was not incidental to or in the nature of the work that these defendants were hired to perform.

The Court's prior ruling relied heavily upon the "aided" prong in the last clause of Restatement Section 219(2)(d).  That Restatement provision, as interpreted by the United States Supreme Court and the Vermont Supreme Court, is predicated upon the employer placing the employee/defendant in a unique position of power that made possible the wrongful conduct at issue.  This case does not fit within the confines of that interpretation.

In *Doe v. Forrest*, a case involving police sexual misconduct, the Vermont Supreme Court analyzed Section 219 at

length. 853 A.2d at 55-67. *Forrest* focused upon the authority that is bestowed upon a police officer by his or her employer, and the responsibility borne by the police department for granting that authority. The *Forrest* court took particular guidance from the U.S. Supreme Court's discussion in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), which determined that in a case of supervisor sexual harassment the employer could be held vicariously liable because the supervisor's authority was "made possible or facilitated by the existence of the actual agency relationship." 853 A.2d at 59.

*Faragher* found "that the supervisor-employee relationship provides access, and the power of the supervisor is such that the employee who is faced with harassment by the supervisor is not in a position to defend, as is normally true with a coworker. [*Faragher* also] stated that recognition of liability for a supervisor's actions places the burden on the party that can guard against misconduct through screening, training and monitoring." *Id.* (citing *Faragher*, 524 U.S. at 803). That party is, of course, the employer. In sum, *Faragher* "emphasized three main considerations in applying § 219(2)(d) in the supervisor-employee relationship: the opportunity for contact created by the relationship; the powerlessness of the employee to resist the supervisor and prevent the unwanted contact; and the opportunity to prevent and guard against the conduct." *Id.* at 60

(citing *Faragher*, 524 U.S. at 803).

In *Forrest*, the Vermont Supreme Court similarly considered "the extraordinary power that a law enforcement officer has over a citizen," explaining that this factor made the case "virtually unique from a policy perspective." *Id*. at 61. "This power is especially pronounced when the tort is committed on a citizen the law enforcement officer is charged with protecting." *Id. Forrest* therefore held that "if plaintiff can show that an on-duty law enforcement officer was aided in accomplishing an intentional tort involving a sexual assault on the plaintiff by the existence of the employment relationship with the law enforcement agency, vicarious liability will apply." *Id.* at 67. In doing so, the Vermont Supreme Court stated that "we have narrowly tailored our holding so that we are confident that few future cases will be controlled by it." *Id.*; *see also Doe v. Newbury Bible Church*, 933 A.2d 196, 198-200 (Vt. 2007) (acknowledging the narrow holding in *Forrest* and, on a question certified from the Second Circuit Court of Appeals, holding that a church is not vicariously liable for the acts of its pastor).

The facts of the instant case are significantly different from those presented in *Forrest* and *Faragher*. Unlike police officers or employment supervisors, Lindevaldsen and Hyden were not placed by their employer in a uniquely powerful position that enabled them to engage in wrongful conduct. Instead, the

allegations are that Lindevaldsen referenced her legal representation of Lisa Miller in the course of her teaching duties, and that Hyden and Lindevaldsen used University telephones, email, and other resources to further the alleged conspiracy. These actions reflect an employment relationship with the University, but not the sort of "aiding" that is governed by Section 219(2)(d). *See, e.g., Burlington Industries v. Ellerth*, 524 U.S. 742, 760 (1988) (stating that liability under Section 219(2)(d) "requires the existence of something more than the employment relation itself").

Plaintiffs contend that employment by the University "uniquely allowed Hyden to inconspicuously deliver Lisa Miller's communications from her hideout in Nicaragua to Lindevaldsen's desk at Liberty University." ECF No. 282 at 10. Such access to Lindevaldsen would have been true in any co-employment situation. Furthermore, incorporating personal experience as a teaching tool, as Lindevaldsen did with respect to her experience in representing Lisa Miller, is common in educational institutions and says little about the University's responsibility for Lindevaldsen's allegedly-conspiratorial acts.

Plaintiffs cite the University's close relationship with Liberty Counsel, including the fact that it allowed and encouraged its students to work on Liberty Counsel cases. Placing students in clinical settings is a common law school

11

practice.  While the University allegedly touted its relationship with Liberty Counsel, was housed in the same building, and had a dean that founded Liberty Counsel's law practice, none of those relationships indicate a grant of authority that placed Lindevaldsen and Hyden in a unique position to engage in the alleged conspiracy.  Accordingly, upon reconsideration, the Court finds that Plaintiffs have failed to allege plausible claims of vicarious liability against the University with respect to either the intentional tort cause of action or the civil rights claim.

## Conclusion

For the reasons set forth above, the University's motion for reconsideration (ECF No. 278) is **granted,** and its motion to dismiss for lack of vicarious liability (ECF No. 237) is also **granted.**  All claims against the University are **dismissed.**  The University's motion in the alternative for certification (ECF No. 278) and motion for a stay pending reconsideration (ECF No. 313) are **denied** as moot.

DATED at Burlington, in the District of Vermont, this 29th day of August, 2018.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
