UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JANET JENKINS                          :
                                       :
              v.                       :    Case No. 2:12-cv-184
                                       :
KENNETH L. MILLER ET. AL.,             :
                                       :
         Defendants.                   :

### OPINION AND ORDER: DEFENDANT'S MOTION TO COMPEL DISCOVERY
(Doc. 352)

Plaintiff Janet Jenkins, for herself and as next friend of her daughter Isabella Miller-Jenkins, has brought suit against several individuals and organizations, alleging that they kidnapped and conspired to kidnap Isabella. Plaintiffs assert claims of commission of, and conspiracy to, commit an intentional tort of kidnapping and conspiracy to violate civil rights under 42 U.S.C. § 1985(3).

On June 20, 2019, Defendants filed a motion to compel discovery and provide complete, responsive answers to interrogatories pursuant to Fed. R. Civ. P. 26 and 37(a). Specifically, Defendants request that Ms. Jenkins supplement Interrogatories 2, 4, 5, 6, 9, 10, 14, 19, and 25, as well as Document Requests 1-19. ECF 352 at 3.

For the reasons set forth below, Defendant's motion to compel discovery is **granted** in part and **denied** in part.

1

Defendants' request for costs and fees is **denied**. Additionally, the Court will **grant a protective order** surrounding Plaintiffs' medical, mental health, financial, and other personal records, as well as around information pertaining to minor Isabella Jenkins-Miller. Plaintiffs must submit a protective order to the Court within ten days.

## PROCEDURAL BACKGROUND

On February 25, 2019, Defendants served a first set of interrogatories and discovery requests on Plaintiff Janet Jenkins. ECF 352-1 at 1. Ms. Jenkins served her responses on May 3, 2019. *Id.* Defendants aver that these responses were incomplete and did not include any responsive documents. *Id.* at 2. On April 10, 2019, Plaintiffs' counsel delivered to all opposing counsel a proposed stipulated two-tier blanket protective order to keep certain documents, information, and other items produced or obtained in the course of discovery confidential. ECF 358 at 3. Defendants did not agree to this proposed protective order. *Id.* On May 23, 2019, counsel for both parties met and conferred, and Plaintiffs' counsel agreed to supplement seven interrogatories and clarify several objections. ECF 352-1 at 2. Defendants contend that they never received these responses. *Id.*

## LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery as including "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The Supreme Court has broadly construed the scope of discovery "to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on" the claims or defenses, and that is proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Discovery is neither limited to the issues raised by the pleadings, nor to the merits of a case. *Oppenheimer*, 431 U.S. at 351.

In determining whether a discovery request is proportional to the disputed issues, Fed. R. Civ. P. 26(b)(1) directs trial courts to consider "the importance of the issue at stake in the action, the amount in controversy, the parties' access to

relevant information, the parties' resources, the importance of
the discovery in resolving the issues, and whether the burden or
expense of the proposed discovery outweighs its likely
benefit." Fed. R. Civ. P. 26(b)(1). Rule 26 vests the trial
judge with broad discretion over making these determinations.
*Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). "A party
claiming that a request is important to resolve the issues
should be able to explain the ways in which the underlying
information bears on the issues as that party understands
them." *Id; see N. Shore-Long Island Jewish Health Sys., Inc. v.
MultiPlan, Inc.*, 325 F.R.D. 36, 47-48 (E.D.N.Y. 2018), *John
Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186
(S.D.N.Y 2014). Once a party requesting discovery has satisfied
this threshold burden, the party resisting discovery must show
specific facts demonstrating that the discovery is irrelevant or
disproportional under Fed. R. Civ. P. 26(b)(1). *See McKissick v.
Three Deer Ass'n Ltd. P'ship*, 265 F.R.D. 55, 56-57 (D. Conn.
2010).

Regarding interrogatories, Fed. R. Civ. P. 33 states that,
"[a]n interrogatory may relate to any matter that may be
inquired into under Rule 26(b). An interrogatory is not
objectionable merely because it asks for an opinion or
contention that relates to fact or the application of law to
fact, but the court may order that the interrogatory need not be

answered until designated discovery is complete, or until a
pretrial conference or some other time . . . The grounds for
objecting to an interrogatory must be stated with specificity."
*Id.*

**DISCUSSION**

### A.)     INTERROGATORIES

### I.    Interrogatory 2

Interrogatory 2 requests Ms. Jenkins "[i]identify each job,
including the annual gross income of that job [Ms. Jenkins has],
held from 2004 to the present." ECF 352-2 at 5. Plaintiff
objects to this inquiry as irrelevant, causing embarrassment and
annoyance, and that it is unduly intrusive. *Id.* In her response
to the interrogatory, Ms. Jenkins has answered that "since 2004,
Plaintiff has been self-employed and operated a child care and
preschool, or has been a stay-at-home parent." *Id.* Defendants
claim that this is an insufficiently thorough response to the
inquiry.

Defendants have met their burden of showing that the
information sought is relevant to an issue in this case, and
proportional to its needs. As they argue, Ms. Jenkins seeks
compensatory damages for lost business as a result of having to
close her daycare center in order to attend court hearings and
meetings with law enforcement surrounding her daughter's

disappearance. ECF 168 at 11. Ms. Jenkins' overall financial situation, and specifically her income before and after the events at issue in this case, is a relevant inquiry to determine how Defendants' alleged actions impacted her finances and led her to close the daycare center. Given the importance of such an assessment to this case, this discovery is proportional to its needs. Besides relevance, Plaintiffs' main objection to this request appears to lie in the confidential nature of the information sought. ECF 358 at 11. However, the entrance of a protective order that would limit the dissemination of this information (discussed below) should mitigate these concerns. Defendants' motion on this request is granted.

## II. Interrogatories 4 and 25

Interrogatories 4 and 25 request information regarding Ms. Jenkins' mental health and mental health treatment. ECF 352. Defendants argue that this information directly bears on Ms. Jenkins' claims of emotional distress, and is thus relevant and proportional to the case. *Id.* at 6-7. Plaintiff objects to the interrogatory as irrelevant, causing embarrassment and annoyance, and unduly intrusive. *Id.*

Defendants have properly shown that the information sought bears on key issues in the case. *Id.* In a matter concerning tortious infliction of emotional distress, the claimant's mental

health records directly bear on the key issue of damages. The information sought could contain helpful evidence as to the effects of Isabella's disappearance on Ms. Jenkins. Plaintiffs do not provide specific facts demonstrating that this information would be irrelevant or disproportionate to the inquiries in the case. ECF 358. While Ms. Jenkins does raise appreciable concerns regarding the sensitivity of this information, the enactment of a protective order should mitigate their seriousness.   Hence, Defendants' motion to compel Interrogatories 4 and 25 is granted.

### III. Interrogatory 6

Interrogatory 6 requests information regarding Jenkins' dating history upon separation from Lisa Miller. ECF 352 at 5. Defendants aver that this information is relevant to evaluate Plaintiffs' emotional distress claim.  *Id.* Plaintiffs object to this request as irrelevant to the case, and as causing embarrassment and annoyance. *Id.*

The relevant inquiry here is whether information as to Ms. Jenkins' romantic history is relevant to determining whether she incurred emotional distress as a result of Isabella's disappearance. "If the evidence sought is not relevant, and thus inadmissible, and it does not appear that the evidence sought will lead to evidence that is admissible, then the court can

properly limit discovery." *Mitchell v. Hutchings*, 116 F.R.D. 481 (D. Utah 1987). Pursuant to Fed. R. Evid. 401, "evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and [if] the fact is of consequence in determining the action."

Plaintiff Jenkins' romantic history is not relevant to her alleged incurrence of emotional distress due to loss of her child. It would be infeasible for a trier of fact to draw any conclusions about Plaintiffs' emotional state from the requested information, as an emotionally distressed person could make any number of romantic choices. Hence, this evidence is irrelevant and undiscoverable. Defendants' motion to compel on Interrogatory 6 is denied.

## IV. Interrogatories 9, 10, 13, 14, and 19

Interrogatories 9 and 10, Defendants ask Ms. Jenkins to set forth each and every occasion on which she contends that Zodhiates and / or Hyden met or communicated with Ms. Miller or any other Defendant in this action, along with the location, timing, and contents of each communication. ECF 352 at 6-9. Interrogatory 13 seeks Ms. Jenkins' contentions regarding "which co-conspirators 'devised a plan to kidnap Isabell . . .", as well Ms. Jenkins' contentions as to the roles played by Defendants Zodhiates, Hyden, and / or RUL. ECF 352-2 at 10-11.

Interrogatory 14 seeks Ms. Jenkins' contentions regarding the specific activities of Zodhiates and Hyden. *Id.* at 11-12. Finally, Interrogatory 19 requests the basis for her contentions as to Zodhiates, Hyden, and RUL's involvement in assisting Lisa in leaving the United States. *Id.* at 14.

Defendants aver that these contention interrogatories are appropriately discoverable to determine what facts and evidence Plaintiffs currently have to prove their allegations. They further argue that answers should not be delayed until after the completion of discovery, as Ms. Jenkins already has access to complete jurisdictional discovery in this case as well as to an extensive record from two related criminal cases. ECF 352 at 7-10. However, Plaintiffs object that these questions are premature at this stage of litigation, as discovery in this case is still ongoing, and Defendants already have the information that they seek. ECF 358 at 12-14.

Defendant's motion on these requests is denied. Pursuant to Fed. R. Civ. P. 33(a)(1), "an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Due to their nature, contention

interrogatories "are more appropriate after a substantial amount of discovery has been conducted." *McCarthy v. Paine Webber Group, Inc*., 168 F.R.D. 448 (D. Conn. 1996); *see also* 7 James Wm. Moore, et al., *Moore's Federal Practice* § 33.02(2)(b) (3d ed. 2007) ("The better view is that contention interrogatories are appropriate, but only after both sides have had an opportunity to conduct discovery.").

The proposed interrogatories sought here concern Plaintiffs' understanding of specific interactions between various Defendants, Lisa Miller, and Isabella. These issues will be addressed in a number of Plaintiffs' outstanding discovery requests. *See* ECF 361. While Plaintiffs may have had some opportunity to develop contentions based on the related criminal cases, it would be more appropriate to delay contention interrogatories until the completion of discovery, when their answers can reflect a fuller scope of discovered information. Such an approach facilitates contention interrogatories' core purpose of narrowing the issues for trial by allowing parties to take stock of contentions upon having full information, and at a moment when more detailed answers may be possible. *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126 (S.D.N.Y. 2007). For these reasons, Defendant's motion on Interrogatories 9, 10, 13, 14, and 19 is denied.

**B.)** **DISCOVERY REQUESTS**

## I.  Request 1

Defendants' first discovery request seeks "all documents disclosed or identified in [Plaintiffs'] initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii)." ECF 352-2 at 12. Plaintiff objects to producing this information in the absence of a confidentiality order. ECF 352-3 at 12.

Defendants are entitled to copies of all documents identified in initial disclosures under Fed. R. Civ. P. 26(a)(1)(A)(ii). Thus, Plaintiff must provide this information. Moreover, the entrance of a protective order should reduce concerns regarding confidentiality. Defendant's motion to compel on this request is granted.

## II.  Request 2

In this Request, Defendants seek "all of [Plaintiffs'] medical records from 2004 to the present." ECF 352-2 at 18. Plaintiff objects to the Request as irrelevant, unduly burdensome, harassing, and as calling for privileged information. *Id.*

The information sought here is relevant and proportional to the case. Indeed, Plaintiffs' medical records are directly relevant to her emotional distress claim. Evidence of certain medical conditions could strengthen or weaken this claim. Given that the issue of emotional distress is central to the case,

this information is important enough to outweigh the burdens of production. Hence, Request 2 is granted, subject to protective order.

### III. Request 3 and 4

These Requests seek Plaintiff Jenkins' state and federal tax returns from 2004 to the present, as well as the financial records surrounding any daycare center she owned from 2000 to the present. ECF 352-2 at 10. Plaintiff objects to these Requests as irrelevant, unduly burdensome, harassing, and calling for privileged information. ECF 352-3 at 19.

Ms. Jenkins seeks compensatory damages for loss of business suffered as a result of Defendants' actions. Thus, Ms. Jenkins' finances over the course of the events at issue are relevant to determine damages, which is a major issue in this case. Ms. Jenkins objects that her overall finances have no bearing on the question of whether she suffered lost business to her daycare center. ECF 358 at 1. While it is true that impact to Ms. Jenkins' business and impact to Ms. Jenkins' overall financial situation are separate factual questions, the latter provides important context to the former, and may make it more or less likely that the center's closure stemmed from the events at issue in this case. As such, this information is important enough to central inquiries in the case to render it relevant

and proportional. Requests 3 and 4 are granted, subject to protective order.

### IV. Request 5

Request 5 seeks "all documents [Plaintiff] relied on or identified in responding to the preceding interrogatories." ECF 352-2 at 10. Ms. Jenkins objects in the absence of a confidentiality order. ECF 352-3 at 19. In light of the protective order discussed in this Order, this objection should no longer present a live issue, and Request 5 is granted.

### V. Request 6

Request 6 seeks "all documents and communication between [Plaintiff] and Lisa Miller or Isabella from September 2003 and the present." ECF 352-2 at 10. Ms. Jenkins objects to the Request as unduly burdensome and harassing. ECF 352-3 at 19-20. She also objects to producing these documents without a confidentiality order. *Id.*

This Request is granted in part. Correspondence between Plaintiff and Lisa Miller and / or Isabella is very relevant to this litigation. This documentation could go to show the effects of Isabella's disappearance on Ms. Jenkins, which is a key inquiry into her claim of extreme emotional distress. Such correspondence could also reveal facts pertaining to other Defendants' involvement in the events at issue, which would be

highly relevant to the case. As such, all written correspondence between Plaintiff and Lisa Miller and / or Isabella meets the standard of relevance and proportionality. Therefore, it should be subject to discovery. However, in order to prevent overbreadth, this Request shall be limited to written correspondence between these parties. Additionally, the dates of discoverable correspondence should end as of the date on which Lisa Miller left the United States with Isabella. Defendant's motion on Request 6 is granted in part.

### VI.  Request 7

Request 7 seeks "all Documents regarding Lisa or Isabella from September 2003 to the present". ECF 352-2 at 10. Ms. Jenkins objects to the Request as unduly burdensome and harassing, as well as to producing documents without a confidentiality order. ECF 352-3 at 20.

Here, Defendants' have not shown that this discovery is important to resolve issues in the case. Indeed, Defendants do not provide any explanation of what they seek to garner from a complete archive of all of Ms. Jenkins' documents regarding Ms. Miller and Isabella after September 2003, nor of how this information will clarify an inquiry into elements of the claim. As discussed above regarding Request 6, Defendants' may receive all of Plaintiffs' correspondence with Lisa Miller and / or

Isabella, as these documents constitute a more narrowly tailored inquiry into materials that show Plaintiffs' engagement with the events at issue. Here, however, the sheer breadth of this Request without a clear evidentiary purpose suggests the likely creation of an undue burden. For these reasons, Request 7 is denied.

### VII. Request 8

Request 8 seeks "all written or recorded statements made by [Plaintiff] regarding any element or issue presented in the instant case. ECF 352-2 at 10. Plaintiff objects to this Request as unduly burdensome and harassing. ECF 352-3 at 20.

Here, Defendants' have met their burden of showing that this discovery is important to resolve issues in the case. Plaintiffs' written or recorded statements on present matters are highly probative of key issues in this litigation, such as Ms. Jenkins' response to Isabella's disappearance. Moreover, there is likely a limited number of such written or recorded statements, suggesting that this discovery would not place an undue production burden on Plaintiff. Based on these factors, Defendants' motion to compel on Request 8 is granted.

### VIII. Requests 9 – 12

Requests 9-12 seek information related to certain contentions in Plaintiffs' Revised Second Amended Complaint. ECF

352-2 at 10-11. Plaintiff has already agreed to "produce responsive, non-privileged documents that have not been previously filed or produced in this or other proceedings, and which are not publicly or equally available to the RUL Defendants." ECF 352-3 at 20-21. Defendants also do not raise any substantive concerns about Plaintiffs' response to these requests in their motion to compel discovery. As such, Requests 9-12 do not appear to pose any issue in controversy. Insofar as Plaintiffs may not have yet provided responses, Defendants' motion as to these Requests is granted.

### IX. Request 13

Here, Defendants seek "all documents related to closure of any daycare center [Ms. Jenkins] owned." ECF 352-2 at 11. Plaintiff objects to this Request as irrelevant, unduly burdensome, harassing, and as calling for privileged information. ECF 352-3 at 21. However, Plaintiff has also agreed to provide responsive, non-privileged documents concerning the daycare mentioned in her Second Amended Complaint with the entrance of a confidentiality order. *Id.*

Here, any documentation concerning the closed daycare center mentioned in the Revised Second Amended Complaint meets the standard of relevant and proportional evidence properly subject to discovery. Plaintiff is seeking compensatory damages

for lost business from the daycare center's closure, due to the allegedly tortious actions of the Defendants. As such, information surrounding the closure of this daycare center is directly relevant to a key issue in the case, and may be properly discoverable.

Plaintiff's main objections concern confidentiality, which should be properly mitigated by virtue of the blanket protective order discussed below. However, Defendant's Request as currently crafted does appear to be unnecessarily overbroad by including all daycare centers that Plaintiff has ever owned. *Id.* Defendants do not provide any reasons for this breadth, and the extra information has no relevance to the case. As such, Defendants' motion to compel regarding Request 13 is granted, but limited to the single daycare closure mentioned in Plaintiffs' Second Amended Complaint.

## X.    Request 14 - Request 15

Request 14 seek documents relating to Plaintiff's contention in her Second Amended Complaint that Lisa Miller and the Nicaragua Brethren currently restrict Isabella's freedom of movement and that she suffers from a low standard of living. ECF 352-2 at 11. Plaintiff objects to the Request as premature at this stage of the litigation and as seeking expert discovery prematurely. ECF 352-3 at 21-22. Request 15 seeks all documents

related to Plaintiffs' claims for damages, including claims for punitive damages. ECF 352-2 at 11. Plaintiff raises the same objections. ECF 352-3 at 21-22.

Requests 14 and 15 are contention discovery requests. Unlike other types of discovery, contention discovery is not designed to reveal new information to the opposing side in litigation, but rather to narrow and clarify disputed issues. *Kyoei Fire*, 248 F.R.D. 126, 157 (S.D.N.Y. 2007). As such, contention discovery is typically most appropriate after discovery has already been carried out.

Requests 14 and 15 appear to be relevant and proportional, but are premature. As to Request 14, the information sought bears directly on Plaintiff's central emotional distress claim. Defendants endeavor to understand Plaintiff's evidentiary basis for claims regarding Isabella's current living conditions and status to clarify their basis and assess their strength. Similarly, Defendants seek the evidentiary basis for Plaintiffs' damages claims to achieve a fuller understanding of what the relevant issues in dispute will be. However, both of these lines of documentation may develop and change in light of the discovery process, which is not yet fully underway. As such, these Requests should be tabled until after the completion of this process. Defendants' motion on these Requests is denied.

## XI.   Request 16

Request 16 seeks "all documents related to [Plaintiff Jenkins'] efforts to find or contact Isabella after September 20, 2009." ECF 352-2 at 11. Plaintiff objects to the Request as unduly burdensome and harassing, as well as calling for privileged information. ECF 352-3 at 22.

Here, Defendants have not met their burden of establishing the relevance and proportionality of this discovery. While documents related to Ms. Jenkins' efforts to locate Isabella may be relevant to show the impact of Isabella's disappearance on her, it is less clear whether this particular discovery is proportional to this evidentiary need. Indeed, this Request would involve the production of a hefty volume of documentation in a case in which there exists much other evidence bearing on Ms. Jenkins' response to the loss of her daughter. As such, Request 16 fails to meet the standard of proportionality, and Defendants' motion to compel on this Request is denied.

## XII. Request 17-18

Request 17 seeks "all documents relied on, referenced, or consulted" by Plaintiffs' expert witnesses. ECF 352-2 at 11. Request 18 seeks "all documents relied upon" by Ms. Jenkins' expert witnesses in the formation of any opinions they are expected to offer. *Id.* Once again, these Requests are premature.

Discovery regarding the testimony of expert witnesses is premature at this stage, and Defendants' motion on these Requests is denied.

### XIII.  Request 19

In Request 19, Defendants seek all documents that the Plaintiff has received in response to a subpoena from a third party. *Id.* Plaintiff agrees to produce this information upon entry of a confidentiality order. ECF 352-3 at 23. In light of the protective order discussed below, Plaintiffs should have no live objection as to providing this discovery. Defendant's motion on this Request is granted.

### C.)    <u>BLANKET PROTECTIVE ORDER</u>

Defendants' motion to compel discovery raises the question of whether a protective order would be appropriate in this case. Throughout their briefing, and earlier in the discovery process, Plaintiffs have raised concerns about the publication of sensitive information that they claim should be subject to a confidentiality order. ECF 358 at 5. Plaintiffs also claim that they were unable to file a former motion for protective order due to an inability confer with all the Defendants, as required by Fed. R. Civ. P. 26. *Id.*

In the face of the broad scope of permissible discovery, Fed. R. Civ. P. 26(c) provides the protective order

as a mechanism, available in appropriate cases, to limit the discovery or dissemination of certain information. Upon a showing of good cause and as justice may require, a court may, among other things, enter a protective order providing that discovery "not be had" or "be had only on specified terms and conditions . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1) and (2). Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 21 (1984). The court's jurisdiction to grant protective orders *sua sponte* lies under the inherent "equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices". *Id.* at 35 (quoting *Int'l Products Corp. v. Koons*, 325 F.2d 403 (1963)).

For a court to issue a protective order, a party must first make some threshold showing of good cause to believe that discovery will involve confidential or protected information. *Id.* at 37. Per Second Circuit precedent, a showing of good cause does not require specific or concrete factual showings of harm. Broader allegations typically suffice. *See Penthouse International, Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371, 391 (2d Cir.1981); *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 18-20 (2d Cir. 1992). Moreover, even though a blanket protective

order permits all documents to be designated as confidential, a party must agree to only invoke the designation in good faith. *Gillard v. Boulder Valley Sch. Dist. Re.-2*, 196 F.R.D. 382, 386 (D. Colo. 2000). After receiving discovery, the opposing party has the right to contest documents designated as confidential. *Id.* At this stage, the party seeking the protection shoulders the burden of proof in justifying retaining the confidentiality designation. *Id.*

Here, Plaintiffs make a reasonable showing of good cause for the entrance of a blanket protective order. This case concerns the kidnapping of a minor, and involves discovery of records pertaining to said minor. Given the importance of protecting a minor's privacy over the course of litigation, any discovery pertaining to Isabella is inherently sensitive. Additionally, many of Defendants' discovery requests seek medical records, mental health information, financial records, and other sensitive documents from Plaintiff Jenkins; public access to this information could have deleterious effects. Hence, this discovery is of the type that is routinely discoverable in civil litigation, but often subject to confidentiality orders due to the sensitivity of its contents. *See CEH, Inc. v. FV Seafarer*, 153 F.R.D. 491, 498 (D.R.I. 1994); *Shovah v. Mercure*, 44 F.Supp. 3d 504 (D. Vt. 2013).

Hence, the Court should allow discovery as designated above, but will also place all medical records, mental health information, financial records, initial disclosures, and information pertaining to Isabella under order of confidentiality. Under such an order, disclosure of information designated in good faith as confidential would be limited to the parties, counsel of record in this case and their staff, experts and consultants retained for this case and their staff, court reporters, denoted stenographers, videographers, and the Court and its staff. Plaintiffs must submit a protective order to the Court within ten days.

**D.)**     **EXPENSES**

Finally, Defendants seek costs and fees associated with filing this motion and reply, on grounds that "Ms. Jenkins' oppositions to many of these Interrogatories and Document Requests were frivolous." Fed. R. Civ. P. 11 allows courts to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation. See *Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980); *Hall v. Cole,* 412 U.S. 1, 5 (1973). There is no evidence here to suggest that Plaintiffs' opposition to this motion was conducted in bad faith or made in frivolity. Their arguments simply reflect the nature of the adversarial process, and have

been grounded in law. Defendants' request for costs and fees is denied.

**CONCLUSION**

Defendant's motion to compel discovery is **granted** in part and **denied** in part. Defendants' request for costs and fees is **denied**. Additionally, the Court will **grant a protective order** surrounding Plaintiffs' medical, mental health, financial, and other personal records, as well as around information pertaining to minor Isabella Jenkins-Miller. Plaintiffs must submit a protective order to the Court within ten days.

DATED at Burlington, in the District of Vermont, this 29th day of October, 2019.

/s/ William K. Sessions III<br>William K. Sessions III<br>District Court Judge