**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

JANET JENKINS                          :
                                       :
            v.                         :    Case No. 2:12-cv-184
                                       :
KENNETH L. MILLER ET. AL.,             :
                                       :
            Defendants.                :

## OPINION AND ORDER: DEFENDANT'S MOTION TO DISMISS
### (Doc. 337)

Plaintiff Janet Jenkins, for herself and as next friend of her daughter Isabella Miller-Jenkins, has brought suit against several individuals and organizations, alleging that they kidnapped and conspired to kidnap Isabella. Plaintiffs assert claims of commission of, and conspiracy to, commit an intentional tort of kidnapping and conspiracy to violate civil rights under 42 U.S.C. § 1985(3).

Defendant Timothy Miller ("Defendant") moves to dismiss the Complaint for lack of personal jurisdiction and insufficient services of process, under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).

For the reasons set forth below, Defendant's motion to dismiss is **denied**.

## Factual Background

Defendant Timothy Miller currently resides in Denver, Pennsylvania. In September 2009, he resided in Managua, Nicaragua.

Isabella Miller-Jenkins is the daughter of Defendant Lisa Miller and Plaintiff Janet Jenkins. She is the biological daughter of Lisa Miller, born in April 2002 while the two women were joined in a civil union, which they obtained in Vermont in 2000. At first the family lived in Virginia, but moved to Vermont in August 2002. When Isabella was seventeen months old, Miller and Jenkins separated and Miller moved with Isabella back to Virginia.

Lisa Miller petitioned the Vermont Family Court to dissolve the union and to determine parental rights and responsibilities with respect to Isabella. The family court issued a temporary order on June 17, 2004, granting temporary legal and physical responsibility to Lisa Miller and setting a visitation schedule for parent-child contact between Jenkins and Isabella, including monthly visits and daily telephone contact.

Other than a visit on the first weekend of the visitation schedule, Lisa Miller did not allow Jenkins to have parent-child contact either in person or by telephone. Instead, she filed a new petition in the Circuit Court of Frederick County, Virginia,

asking that court to declare her the sole parent of Isabella and to rule that Jenkins had no parental or visitation rights. On appeal from an order granting Lisa Miller's requested relief, the Virginia Court of Appeals held that by filing her petition in Vermont Lisa Miller had invoked the jurisdiction of the courts of Vermont, that Virginia courts lacked jurisdiction over her subsequent petition and were required to extend full faith and credit to the custody and visitation orders of the Vermont court. *Miller-Jenkins v. Miller-Jenkins*, 637 S.E.2d 330, 338 (Va. App. 2006).

In June 2007 the Vermont family court ordered sole physical and legal custody of Isabella to Lisa Miller, and awarded Jenkins visitation rights. The Court warned Lisa Miller, however, that continued interference with the relationship between Isabella and Jenkins could warrant a modification of the custody order. *See Miller-Jenkins v. Miller-Jenkins*, 2010 VT 98, ¶ 5, 12 A.3d 768, 772 (entry order). Although Lisa Miller did comply with the visitation schedule on several occasions in the last half of 2007, by the spring of 2008 Lisa Miller renewed her defiance of the visitation orders, and was found in contempt of court multiple times. In August 2009 Jenkins moved to modify the family court order concerning parental rights and responsibilities. Lisa Miller did not attend the hearing on the motion, but filed an objection to any transfer of custody.

Before the Vermont family court ruled on Jenkins' motion, Lisa Miller left the country with Isabella on September 22, 2009. On November 20, 2009, the Vermont family court concluded that Lisa Miller had willfully interfered with Jenkins' visitation rights, and it transferred legal and physical rights and responsibilities for Isabella to Jenkins as of January 1, 2010. As far as is known however neither Isabella nor Lisa Miller have returned to this country.

A criminal investigation and prosecution followed, which involved Defendant. In April 2011, Defendant was arrested for aiding and abetting the kidnapping of Isabella. He appeared twice in Vermont in response to those charges, which were dismissed in exchange for Defendant's agreement to testify against Kenneth Miller. Defendant did not testify and was later charged in the Western District of New York with conspiracy to commit international parent kidnapping in violation of 18 U.S.C. § 371. He pleaded guilty in December 2016.

Plaintiffs filed this action 2012, alleging, *inter alia*, that Defendant purchased plane tickets for Lisa Miller and Isabella from Canada to Nicaragua, met Lisa Miller and Isabella when they arrived in Nicaragua, helped them rent an apartment, allowed them to visit his home and teach his children, and arranged for their belongings to be brought from Virginia to

Nicaragua. Plaintiffs allege he did this while advising his family not to discuss Lisa Miller by email (to avoid her being traced to Nicaragua), and continued to help her after learning that a Vermont court had transferred custody of Isabella from Lisa Miller to Jenkins on November 20, 2009.

When Plaintiffs filed their initial Complaint in 2012, Defendant was still in Nicaragua and Plaintiffs were not successful in personally serving him there. Plaintiffs moved under Rule 4(f)(3) of the Federal Rules of Civil Procedure for permission to serve process on Defendant through Jeffrey A. Conrad, an attorney who had appeared on Defendant's behalf in both criminal cases pending against him. This Court granted Plaintiffs' motion for alternate service as unopposed.

On March 30, 2015, a process server hired by Plaintiffs hand-delivered a copy of the summons and complaint to Kathy Amaro, the secretary of Conrad's law office in Lancaster, Pennsylvania. Defendant did not file an answer or Rule 12 motion by the April 20, 2015 deadline, or at any time since.

Defendant now moves to dismiss the complaint against him for lack of personal jurisdiction.

**LEGAL STANDARD**

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff has the burden of making a prima facie case showing that personal jurisdiction over the defendant exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). In assessing personal jurisdiction on a Rule 12(b)(12) motion, the court is neither required to "draw argumentative inferences in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (internal quotation marks and citation omitted), nor must it "accept as true a legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (citation omitted).

**DISCUSSION**

Defendant makes two main arguments in his Motion to Dismiss. First, he argues that he had insufficient contacts with the state of Vermont to warrant the state's exercise of personal jurisdiction over him. Second, he argues that Plaintiffs' service of process upon him was procedurally improper.

**I. Defendant Established Sufficient Contacts with Vermont to Justify This Court's Exercise of Personal Jurisdiction Over Him**

"A court cannot exercise personal jurisdiction over a defendant unless doing so comports with constitutional due process principles." *Licci*, 673 F.3d at 60. Most relevant here is the question of "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). For purposes of this inquiry, a distinction is made between "specific" jurisdiction and "general" jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (internal quotation and citations omitted). "For a State to exercise jurisdiction consistent with due process, that relationship must arise out of contacts that the defendant himself creates with the forum, and must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there." *Id*. (internal quotations and citations omitted).

Defendant argues that he has created no contacts with Vermont: he has never lived in Vermont, owned or leased property in Vermont, paid taxes in Vermont, or voluntarily visited Vermont. ECF 337-1 at 5. Defendant contends that the only link

between him and the state of Vermont is that Plaintiff resides in Vermont and allegedly suffered injury in Vermont.

Defendant is correct that these two facts alone would be insufficient to establish minimum contacts with Vermont. *See Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum state. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). However, Defendant is connected to Vermont by more than Plaintiff's residency in the state: Defendant's alleged actions in this case were aimed at impeding Vermont's courts. His own conduct created a connection between him and Vermont.

Defendant has testified, in a sworn deposition in connection with his earlier criminal case, that his involvement with Lisa Miller and Isabella Jenkins-Miller began when he received a telephone call from Kenneth Miller telling him that Lisa Miller wanted to leave the United States and travel to Nicaragua because a court might transfer custody of her child to another woman. ECF 48-1 at 13-14. Defendant learned that it was important to get Lisa Miller to Nicaragua specifically because Nicaragua would not extradite Lisa Miller if the court did rule against her. *Id*. at 24.

All of Defendant's alleged actions in this case took place in Nicaragua, but its purpose was to prevent Vermont courts from giving effect to their order granting a Vermont resident custody of her child. By so impeding Vermont's courts, Defendant created the minimum contacts required to hale him into court in Vermont.

## II. Plaintiffs Properly Served Process on Defendant Through his Counsel

For a court to exercise personal jurisdiction over a defendant, a "plaintiff's service of process upon the defendant must have been procedurally proper." *Licci*, 673 F.3d at 59.

After attempting to personally serve Defendant in Nicaragua, this Court ordered that Plaintiffs could serve process on Defendant by serving his criminal attorney, Jeffrey A. Conrad. Plaintiffs hired a process server who hand-delivered a copy of the summons and complaint to Kathy Amaro, the secretary at Conrad's law office in Lancaster, Pennsylvania.

Since Defendant's attorney was in the United States, FRCP 4(e)(1) allowed for service by "following state law for serving summons in an action brought in courts of general jurisdiction in the state . . . where service is made." Fed. R. Civ. P. 4(e)(1). Attorney Conrad resided in Pennsylvania, so Pennsylvania's civil procedure rules guided Plaintiffs' service of process. Pennsylvania Rule of Civil Procedure 402(2)(iii)

permits service of process "by handing a copy . . . at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." Pa. R. C. P. 402(2)(iii).

Defendant argues that service of process was improper in this case because (1) Pennsylvania Rule of Civil Procedure 402(2)(iii) only authorizes service on a <u>defendant</u>'s "place of business," not a defendant's attorney's "place of business" and (2) even if the rule did so provide, Kathy Amaro, the secretary of Conrad's law firm, does not count as "the person for the time being in charge" of the office.

Defendant's first argument can be dealt with quickly: Plaintiffs properly read the Pennsylvania rule with respect to Conrad. This Court authorized Plaintiffs to serve Defendant through Conrad.

As to Defendant's second argument, the Third Circuit has shed light on whether or not a secretary can be considered someone "in charge" of an office. In *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, the Third Circuit found that "the secretary of a defendant may meet the statutory definition of a proper party to be served" and that the "propriety of service under Pennsylvania law commonly depends upon the relationship between the person receiving process and the

party." 988 F.2d 476, 485 (3d Cir. 1993). In that case, the receptionist at the defendants' office building was found not to be a "person in charge" because she did not work in the offices of the defendants and was not employed by them, but was instead a building employee who took messages for tenants while they were out of office. *Id*. The Court held that "'the person for the time being in charge' of any office or usual place of business of the defendants for purposes of Pennsylvania Rule of Civil Procedure 402 must either be an individual with some direct connection to the party served or one whom the process server determines to be authorized, on the basis of her representation of authority, as evidenced by the affidavit of service." *Id*. at 486.

It is uncontested that Ms. Amaro is Attorney Conrad's secretary. There is no argument that she does not work for Attorney Conrad. Defendant himself has referred to Ms. Amaro as "Attorney Conrad's secretary." ECF 337-1 at 9. Because Ms. Amaro had a "direct connection" to Attorney Conrad, under Pennsylvania law, she could be "in charge" of Attorney Conrad's office for purposes of service of process. *See Grand Entertainment Group, Ltd*., 988 F.2d at 485 (finding that the "propriety of service under Pennsylvania law commonly depends upon the relationship between the person receiving process and the party.").

Defendant argues that the return of service affidavit forecloses this argument: in the return of process, the process server had the option of checking "Agent or person in charge of Defendant's office or usual place of business" but instead checked "Other" and elaborated that they had served "Kathy Amaro, secretary." ECF 345 Ex. 1 at 3. But as addressed above, Ms. Amaro was employed by Attorney Conrad, not Defendant, so it would have been incorrect to label her as the person in charge of "Defendant's office of usual place of business" on the return of service.

Plaintiffs argue that "[i]t is the practice of the process servers at the firm hired by Plaintiffs' counsel to serve process on an individual by handing the summons and complaint to a third party only if that third party represents that she is authorized to accept service for the individual to be served." ECF 341, Ex 1. Defendant asserts that they also spoke with the firm and a representative told them that "when serving an individual's receptionist or secretary, the firm 'follow[s] the instructions of the client.'" ECF 345 at 4 (quoting Ex. 2).

In the end, Pennsylvania law recognizes that a secretary may be "the person for the time being in charge" if they have a direct connection to the person being served. That is the case here. Service of process on Ms. Amaro was not improper.

In sum, because Defendant has sufficient connections to the state of Vermont and was properly served, his motion to dismiss for lack of jurisdiction necessarily fails. Defendant's motion to dismiss is **denied**.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **denied**.

DATED at Burlington, in the District of Vermont, this 29th day of October, 2019.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge