# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

JANET JENKINS, et al.,

                      Plaintiffs,

      v.

KENNETH L. MILLER, et al.,

                    Defendants.

No. 2:12-cv-184-WKS

## MEMORANDUM IN SUPPORT OF PLAINTIFF JANET JENKINS'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT ONE AGAINST DEFENDANTS PHILIP ZODHIATES, KENNETH MILLER, AND TIMOTHY MILLER

Diego A. Soto
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama 36104
Phone: (334) 956-8200
Fax: (334) 956-8481
Email: diego.soto@splcenter.org

J. Tyler Clemons
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Phone: (504) 526-1530
Fax: (504) 486-8947
Email: tyler.clemons@splcenter.org

Frank H. Langrock
Langrock Sperry & Wool, LLP
111 S. Pleasant Street
P.O. Drawer 351
Middlebury, Vermont 05753-0351
Phone: (802) 388-6356
Fax: (802) 388-6149
Email: flangrock@langrock.com

Sarah Star
Sarah Star, PL
P.O. Box 106
Middlebury, Vermont 05753
Phone: (802) 385-1023
Email: srs@sarahstarlaw.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

STATEMENT OF THE CASE .................................................................................. 1

   I.   Kenneth Miller Was Convicted in 2012 of Aiding and Abetting International
       Parental Kidnapping ..................................................................................... 2

   II.  Timothy Miller Pleaded Guilty in 2017 to Conspiracy to Commit International
       Parental Kidnapping ..................................................................................... 4

   III. Zodhiates Was Convicted in 2017 of International Parental Kidnapping, Aiding
       and Abetting International Parental Kidnapping, and Conspiracy to Commit
       International Parental Kidnapping .................................................................. 6

   IV. Jenkins Claims Zodhiates, Kenneth Miller, and Timothy Miller Intentionally
       Interfered with Her Parental Rights ................................................................ 8

SUMMARY OF ARGUMENT ................................................................................. 9

ARGUMENT ......................................................................................................... 11

   I.   Zodhiates's and Timothy Miller's Convictions Establish Beyond a Reasonable
       Doubt All the Elements of Conspiracy to Intentionally Interfere with Jenkins's
       Parental Rights .......................................................................................... 14

      A.  Element 1: Zodhiates and Timothy Miller Each Agreed with Another to Effect
          the Vermont Tort of Intentional Interference with Parental Rights ..................... 14

         1.  Element 1(a): Zodhiates and Timothy Miller each agreed to abduct or
             otherwise compel or induce Isabella, a minor, to leave Jenkins, her parent ........ 15

         2.  Element 1(b): Jenkins was legally entitled to Isabella's custody ......................... 16

         3.  Element 1(c): Zodhiates and Timothy Miller each entered into the
             agreement with knowledge that Jenkins did not consent ..................................... 18

      B.  Element 2: The Vermont Tort of Intentional Interference with Parental Rights
          Was Done .............................................................................................. 19

         1.  Element 2(a): A person abducted or otherwise compelled or induced
             Isabella, a minor, to leave Jenkins, a parent ................................................ 19

          2.  Element 2(b): Jenkins was legally entitled to Isabella's custody ......................... 20

          3.  Element 2(c): The person acted with knowledge that Jenkins did not
             consent .............................................................................................. 20

C.  Element 3: The Vermont Tort of Intentional Interference with Parental Rights Was Done in Furtherance of the Agreement.............................................................. 21

D.  Element 4: The Vermont Tort of Intentional Interference with Parental Rights Damaged Jenkins ........................................................................................................ 22

II.  Kenneth Miller's Conviction Establishes Beyond a Reasonable Doubt the First Two Elements of Aiding and Abetting the Intentional Interference with Jenkins's Parental Rights ................................................................................................................... 23

A.  Element 1: Another Person Committed the Vermont Tort of Intentional Interference with Parental Rights.................................................................................. 24

B.  Element 2: Kenneth Miller Knew that the Intentional Interference with Parental Rights Constituted a Breach of Duty ........................................................... 25

CONCLUSION................................................................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*Akerley v. N. Country Stone, Inc.*,
620 F. Supp. 2d 591 (D. Vt. 2009) ................................................................. 14

*Concord Gen. Mut. Ins. Co. v. Gritman*,
146 A.3d 882 (Vt. 2016) ................................................................................ 23

*Gelb v. Royal Globe Ins. Co.*,
798 F.2d 38 (2d Cir. 1986) .............................................................. 11, 12, 19

*Houston Cas. Co. v. Rup*,
No. 1:16-cv-294, 2017 WL 3327579 (D. Vt. Aug. 3, 2017) (Murtha, J.) .............. 12

*In re Quigley Co., Inc.*,
676 F.3d 45 (2d Cir. 2012) ............................................................................ 23

*Irving Nat'l Bank v. Law*,
10 F.2d 721 (2d Cir. 1926) ............................................................................ 19

*Jenkins v. Miller*,
983 F. Supp. 2d 423 (D. Vt. 2013) ................................................ 15, 19, 23, 24

*Jenkins v. Miller*,
No. 2:12-cv-184, 2017 WL 4402431 (D. Vt. Sept. 29, 2017) ............................. 14

*McCarthy v. United States*,
394 U.S. 459 (1969) ...................................................................................... 12

*New York v. Julius Nasso Concrete Corp.*,
202 F.3d 82 (2d Cir. 2000) ............................................................................ 12

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979) ...................................................................................... 12

*Samirah v. Sabhnani*,
772 F. Supp. 2d 437 (E.D.N.Y. 2011) ......................................................... 12, 13

*SEC v. Monarch Funding Corp.*,
192 F.3d 295 (2d Cir. 1999) ........................................................................... 12

*Singer v. Fulton Cty. Sheriff*,
63 F.3d 110 (2d Cir. 1995) ............................................................................. 13

*State v. O'Dell*,
924 A.2d 87 (Vt. 2007) .................................................................................. 17

*State v. Petruccelli*,
743 A.2d 1062 (Vt. 1999) .............................................................................. 17

*State v. Wootten*,
756 A.2d 1222 (Vt. 2000) ......................................................................... 16, 17

*United States v. Hasan*,
586 F.3d 161 (2d Cir. 2009) ........................................................................... 18

*United States v. Kenneth L. Miller*,
   808 F.3d 607 (2d Cir. 2015)................................................................................. 4

*United States v. Podell*,
   572 F.2d 31 (2d Cir. 1978)................................................................................. 12

*United States v. Saliba*,
   No. 8-CR-792, 2010 WL 1189350 (E.D.N.Y. Mar. 26, 2010) ............................ 18

*United States v. Zodhiates*,
   901 F.3d 137 (2d Cir. 2018)................................................................................. 8

*Zodhiates v. United States*,
   139 S. Ct. 1273 (2019)......................................................................................... 8

**Statutes**

18 U.S.C. § 1204 ............................................................................................... 2, 5

18 U.S.C. § 1589(a) .............................................................................................. 12

18 U.S.C. § 2 ...................................................................................................... 2, 5

18 U.S.C. § 371 ..................................................................................................... 4

Vt. Stat. Ann. tit. 13, § 2451 ............................................................................... 17

Vt. Stat. Ann. tit. 15, § 664(1) .............................................................................. 1

Vt. Stat. Ann. tit. 15, § 664(2) .............................................................................. 1

Vt. Stat. Ann. tit. 15, § 665(e) ............................................................................. 17

**Other Authorities**

Restatement (Second) of Torts § 700.............................................. 15, 19, 22, 23, 24

Restatement (Second) of Torts § 876(b) ............................................................... 23

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................ 11, 23, 26

**Treatises**

Charles Alan Wright & Arthur R. Miller, 18 Federal Practice and Procedure § 4416
   (1981).................................................................................................................. 12

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Plaintiff Janet Jenkins, through undersigned counsel, moves for partial summary judgment on Count 1 of the Revised Second Amended Complaint, ECF 223, against Defendants Philip Zodhiates, Kenneth Miller, and Timothy Miller for the reasons set forth in this memorandum in support.

## STATEMENT OF THE CASE

This case arises from the international kidnapping of then-seven-year-old Isabella Miller-Jenkins in September 2009 by her mother Lisa Miller to keep her away from her other mother, Janet Jenkins. Isabella remains missing to this day.

The Rutland, Vermont Family Court ordered that Jenkins had the right to visitation with Isabella on numerous occasions starting in June 2004. *See, e.g.*, *Kenneth L. Miller* Gov't Ex. 5, Ex. 1; *Zodhiates* Gov't Ex. 13, Ex. 2. For example, on September 11, 2009, the court ordered unsupervised parent–child contact between Jenkins and Isabella from September 25, 2009, to September 27, 2009. *See Kenneth L. Miller* Gov't Ex. 12, Ex. 3; *Zodhiates* Gov't Ex. 20, Ex. 4; *see also* Vt. Stat. Ann. tit. 15, § 664(2) (defining "Parent child contact"). On November 20, 2009, based in part on the numerous violations of prior court orders by Lisa Miller, the court granted Jenkins "sole physical and legal custody" of Isabella and ordered that Isabella be transferred to Jenkins on January 1, 2010. *See Kenneth L. Miller* Gov't Ex. 14, Ex. 5; *Zodhiates* Gov't Ex. 21, Ex. 6; *see also* Vt. Stat. Ann. tit. 15, § 664(1) (defining "Legal responsibility" and "Physical responsibility"). Criminal cases against Defendants Philip Zodhiates, Kenneth Miller, and Timothy Miller uncovered that the trio were among those who helped Lisa Miller kidnap Isabella.

In summary, Zodhiates proposed "some personal options" to Lisa Miller when it seemed she had no legal options to prevent Jenkins's visitation with Isabella. Zodhiates recruited Kenneth Miller, who in turn recruited Timothy Miller in Nicaragua. Timothy Miller purchased

airline tickets for Lisa Miller and Isabella to travel to Nicaragua from Canada. Zodhiates drove

Lisa Miller and Isabella from Virginia to the United States–Canada border, where they entered

Canada. Kenneth Miller recruited a fellow Mennonite pastor to drive Lisa Miller and Isabella to

the airport in Toronto where they flew to Nicaragua. On his way back to Virginia, Zodhiates

updated Lisa Miller's attorneys at Defendant Liberty Counsel on Lisa Miller's and Isabella's

departure. Timothy Miller helped Lisa Miller and Isabella adjust to life in Nicaragua. Zodhiates,

Kenneth Miller, and Timothy Miller relayed messages from Lisa Miller in Nicaragua back to her

co-conspirators in the United States, including Defendant Victoria Hyden and Lisa Miller's

attorney Defendant Rena Lindevaldsen. In those messages, Lisa Miller asked that certain

belongings in her Virginia home be retrieved and transported to her in Nicaragua. Zodhiates,

Kenneth Miller, Timothy Miller, and others coordinated that transportation of Lisa Miller's

belongings to Nicaragua and the removal of what remained in her Virginia home. After Jenkins

was granted sole physical and legal custody of Isabella, they transferred $500 from Virginia to

Lisa Miller in Nicaragua.

## I.     Kenneth Miller Was Convicted in 2012 of Aiding and Abetting International Parental Kidnapping

On December 15, 2011, a grand jury impaneled in this Court returned a one-count

indictment charging Kenneth Miller with aiding and abetting Lisa Miller in the removal of

Isabella Miller-Jenkins from the United States with the intent to obstruct the lawful exercise of

parental rights, in violation of 18 U.S.C. §§ 2, 1204. *See Kenneth L. Miller* Indictment, Ex. 7.[1]

---

[1] 18 U.S.C. § 1204, the crime of international parental kidnapping, provides: "Whoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both."

18 U.S.C. § 2 provides: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b)

After a four-day jury trial, the Court charged the jury on the elements of the crime as follows:

> In order to prove Kenneth Miller guilty of aiding and abetting international parental kidnapping, the government must prove beyond a reasonable doubt:
>
> First, that the child was in the United States;
>
> Second, that Lisa Miller took the child from the United States to another country;
>
> Third, that Lisa Miller acted with the intent to obstruct the lawful exercise of parental rights of Janet Jenkins; and
>
> Fourth, that Kenneth Miller aided and abetted Lisa Miller in committing this crime.

*Kenneth L. Miller* Jury Charge at 13–14, Ex. 8; *see also id.* at 14–20 (elaborating on elements).

The Court instructed the jury that Jenkins had the right to visit Isabella. *Id.* at 15 ("[T]he Rutland Vermont family court's orders regarding custody and visitation defined the parental rights of Lisa Miller and Janet Jenkins. . . . To find that Lisa Miller acted with the intent to obstruct the lawful exercise of parental rights, you must find that she acted deliberately with the purpose of interfering with the parental rights of Janet Jenkins, specifically her visitation rights.").

The Court explained criminal aiding and abetting as follows:

> In order to aid or abet another to commit a crime, it is necessary that a defendant knowingly associate himself in some way with the crime, and that he participate in the crime by doing some act to help make the crime succeed. . . .
>
> To establish that Kenneth Miller knowingly associated himself with the crime of international parental kidnapping, the government must establish that he intended to obstruct the lawful exercise of parental rights. . . . The government must prove beyond

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

> a reasonable doubt that Kenneth Miller had knowledge of the facts that constitute the offense, i.e., that Janet Jenkins had parental rights—specifically visitation rights—and that Lisa Miller intended to obstruct the lawful exercise of those rights by removing the child from the country. . . .
>
> To establish that Kenneth Miller participated in the commission of the crime of international parental kidnapping, the government must prove that he engaged in some affirmative conduct or overt act for the specific purpose of bringing about the crime.

*Id.* at 16–17.

The jury found Kenneth Miller guilty on August 14, 2012. *Kenneth L. Miller* Verdict Form, Ex. 9. The Court imposed its judgment on March 4, 2013. *Kenneth L. Miller* Judgment, Ex. 10. The United States Court of Appeals for the Second Circuit affirmed the conviction on December 16, 2015, *see United States v. Kenneth L. Miller*, 808 F.3d 607 (2d Cir. 2015); *see also Kenneth L. Miller* 2d Cir. Op., Ex. 11, and issued the mandate on February 1, 2016, *see Kenneth L. Miller* 2d Cir. Mandate, Ex. 12. Kenneth Miller did not petition the Supreme Court of the United States for a writ of certiorari. *See Kenneth L. Miller* 2d Cir. Docket Report at 5, Ex. 13.

## II.   Timothy Miller Pleaded Guilty in 2017 to Conspiracy to Commit International Parental Kidnapping

On April 24, 2015, a grand jury impaneled in the United States District Court for the Western District of New York returned a two-count superseding indictment against Lisa Miller, Philip Zodhiates, and Timothy Miller. *See Timothy Miller* Superseding Indictment, Ex. 14; *Zodhiates* Indictment, Ex. 15. The first count ("the conspiracy count") charged each with conspiring to remove Isabella from the United States and to retain her outside the United States with intent to obstruct Jenkins's parental rights, in violation of 18 U.S.C. § 371.[2] The second

---

[2] 18 U.S.C. § 371, the crime of conspiracy, provides in relevant part: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States,

count ("the international parental kidnapping count") charged each with removing, and aiding and abetting the removal of, Isabella from the United States with intent to obstruct Jenkins's parental rights, in violation of 18 U.S.C. §§ 2, 1204.

On November 30, 2016, Timothy Miller pleaded guilty to the conspiracy count. *Timothy Miller* Plea Agreement, Ex. 16. The plea agreement set forth the following elements of the crime:

> a. That Isabella Miller Jenkins [sic] was previously in the United States;
>
> b. that the defendant agreed with others including Lisa Miller and Ken Miller to assist the taking of Isabella Miller Jenkins [sic] from the United States and retaining the child outside the United States; and
>
> c. the defendant acted with the intent to obstruct the lawful exercise of parental rights of Janet Jenkins.

*Id.* at 2; *see also Timothy Miller* Plea Colloquy at *10, Ex. 17.[3] Timothy Miller also agreed to the following facts:

> a. That Isabella Miller Jenkins [sic] is the daughter of Lisa Miller and Janet Jenkins. Prior to September 22, 2009, Isabelle Miller Jenkins [sic] lived in the United States and Janet Jenkins had the parental right to visit Isabella Miller.
>
> b. That on or about September 21, 2009, the defendant was a Mennonite minister in Managua, Nicaragua when he was contacted by Kenneth Miller. Kenneth Miller told the defendant that Lisa Miller was looking to leave the United States with her daughter Isabella Miller Jenkins [sic] as she could lose custody of Isabella to Janet Jenkins.
>
> c. Based on this information, the defendant agreed to assist in arranging Lisa's and Isabella's departure from the United States. The defendant did also purchase one-way airline tickets on

---

or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

[3] Pincite pages preceded by an asterisk refer to the page numbers generated by the Court's CM/ECF system.

> September 21, 2009, for Lisa and Isabella to travel from Canada to
> Managua, Nicaragua on September 22, 2009.
>
> d. Lisa and Isabella departed Canada on or about September 22,
> 2009, and arrived in Managua, Nicaragua. The defendant learned
> in November 2009 that Janet Jenkins was award [sic] custody of
> Isabella Miller Jenkins [sic]. The defendant continued to assist Lisa
> Miller with assistance up to and including May 2010 when he
> accepted and provided Lisa Miller with money.

*Timothy Miller* Plea Agreement at 3, Ex. 16; *see also Timothy Miller* Plea Colloquy at *11–12,

Ex. 17.

The court imposed its judgment on March 23, 2017. *See Timothy Miller* Judgment at 2,

Ex. 18. Timothy Miller did not appeal his judgment of conviction. *See Timothy Miller* Docket

Report at 7, Ex. 19.

### III.   Zodhiates Was Convicted in 2017 of International Parental Kidnapping, Aiding and Abetting International Parental Kidnapping, and Conspiracy to Commit International Parental Kidnapping

After a seven-day jury trial, the court charged the jury in Zodhiates's case. On the

conspiracy count of the superseding indictment, the court charged the jury as follows:

> Now, in order to satisfy the burden of proof with respect to
> Count 1, the government must establish each of the following four
> essential elements beyond a reasonable doubt.
>
> First, that two or more persons entered into an unlawful agreement
> to remove a child from the United States and to retain that child,
> who had been in the United States, outside the United States with
> an intent to obstruct the lawful exercise of parental rights.
>
> Second, that the defendant knowingly and willfully became a
> member of the conspiracy.
>
> Third, that one of the members of the conspiracy knowingly
> committed at least one of the overt acts charged in the indictment.
>
> And fourth, that the overt acts which you find have been
> committed were committed in furtherance of some object of the
> conspiracy.

*Zodhiates* Jury Charge at *51, Ex. 20; *see also id.* at *48–61 (elaborating on elements).

The Court instructed the jury that, "as of September 21st, 2009, Vermont law gave Janet Jenkins the right to visit Isabella Miller-Jenkins," *id.* at *52, and that, "on November 20th, 2009, a Vermont Family Court Judge transferred custody of Isabella Miller-Jenkins to Janet Jenkins, effective January 1st, 2010," *id.* at *53.

On the international parental kidnapping count of the superseding indictment, the court charged the jury as follows:

> In order to prove the defendant guilty of the International Parental Kidnapping Act by removing from the United States, the government must prove the following three elements beyond a reasonable doubt: First, that Isabella Miller-Jenkins was previously in the United States; second, that the defendant took Isabella Miller from the United States to another country and third, the defendant acted with intent to obstruct the lawful exercise of the parental rights of Janet Jenkins.

*Id.* at *62; *see also id.* at *61–64 (elaborating on elements). The court further charged the jury on the government's alternative theory of aiding and abetting as follows:

> Now, the indictment also alleges that the defendant aided and abetted in intentional (sic) parental kidnapping. This is still Count 2. This is an alternative way of proving this. And that's for you to decide whether the government has proven it.
>
> . . .
>
> [Y]ou may find the defendant guilty of intentional (sic) parental kidnapping if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense of international parental kidnapping and the defendant aided or abetted that person in the commission of the offense.
>
> . . .
>
> In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associated himself, in some way, with the crime and that he participated in the crime by doing some act to help make the crime succeed. To establish the defendant knowingly associated himself with the crime of international parental kidnapping, the government must establish that the

> defendant intended to obstruct Janet Jenkins' lawful exercise of
> parental rights.
>
> . . .
>
> To establish the defendant participated in the commission of
> international parental kidnapping, the government must prove that
> he engaged in some affirmative conduct or overt act with a specific
> purpose of bringing about the crime.

*Id.* at *64–66; *see also id.* at *65–67 (elaborating on elements).

The court again instructed the jury that "the term parental rights means Janet Jenkins'

right to visit Isabella Miller-Jenkins, as the right was defined by the law and courts of Vermont at

the time Isabella Miller-Jenkins was removed from the United States." *Id.* at *63, *65–66.

The jury convicted Zodhiates on both counts of the superseding indictment on September

29, 2016. *See Zodhiates* Jury Verdict, Ex. 21. The court imposed its judgment on March 22,

2017. *Zodhiates* Judgment at 1–2, Ex. 22. The Second Circuit affirmed the conviction on August

21, 2018, *see United States v. Zodhiates*, 901 F.3d 137 (2d Cir. 2018); *see also Zodhiates* 2d Cir.

Op., Ex. 23, and issued the mandate on October 26, 2018, *see Zodhiates* 2d Cir. Mandate, Ex. 24.

The Supreme Court denied Zodhiates's petition for a writ of certiorari on February 25, 2019. *See*

*Zodhiates v. United States*, 139 S. Ct. 1273 (2019); *see also* Feb. 25, 2019 Sup. Ct. Order List at

10, Ex. 25.

## IV.    Jenkins Claims Zodhiates, Kenneth Miller, and Timothy Miller Intentionally Interfered with Her Parental Rights

On May 4, 2017, Jenkins filed a Revised Second Amended Complaint, claiming in

Count 1 that Zodhiates, Kenneth Miller, and Timothy Miller, among other things, conspired

with, and aided and abetted, Lisa Miller in intentionally interfering with Jenkins's parental rights.

*See* Compl. ¶ 65, ECF 223; *see also* Op. & Order at 16–38, ECF 277 (Sept. 29, 2017) (denying

motion to dismiss Count 1); Op. & Order at 39–42, ECF 115 (Oct. 24, 2013) (denying motion to

dismiss Count 1); Op. & Order, ECF 396 (Oct. 29, 2019) (denying Timothy Miller's motion to dismiss).

## SUMMARY OF ARGUMENT

Jenkins alleges in Count 1 that Zodhiates, Kenneth Miller, and Timothy Miller are liable to her for the Vermont tort of intentional interference with her parental rights under two theories of liability: civil conspiracy and civil aiding and abetting. The criminal convictions of Zodhiates, Kenneth Miller, and Timothy Miller for their involvement in kidnapping Isabella to interfere with Jenkins's parental rights preclude them from relitigating all—or, in Kenneth Miller's case, all but one—of the elements of that tort claim. Jenkins is entitled to summary judgment on Count 1 against Zodhiates and Timothy Miller based on the civil-conspiracy theory. She is entitled to summary judgment on the first two elements of Count 1 against Kenneth Miller based on the civil aiding-and-abetting theory.

**I.** The Vermont tort of intentional interference with parental rights requires that (1) a person abduct or otherwise compel or induce a minor child to leave a parent (2) who is legally entitled to her custody, (3) with knowledge that the parent does not consent. Under Jenkins's civil-conspiracy theory, she must prove by a preponderance of the evidence that Zodhiates and Timothy Miller (1) each agreed with another to effect the Vermont tort of intentional interference with parental rights; (2) the tort was done; (3) the tort was done in furtherance of the agreement; and (4) the tort damaged Jenkins. Zodhiates's jury made findings, and Timothy Miller made admissions, sufficient to establish each of the elements beyond a reasonable doubt.

**A.** *First*, Zodhiates's jury found, and Timothy Miller admitted, that he and another agreed to remove Isabella from the United States with an intent to obstruct Jenkins's visitation rights. This is sufficient to show that each agreed to compel or induce Isabella to leave Jenkins, who was legally entitled to Isabella's custody, with knowledge that Jenkins did not consent.

**B.** *Second*, Zodhiates's jury found that Zodhiates or another removed Isabella from the United States with an intent to obstruct Jenkins's visitation rights. Timothy Miller admitted that Lisa Miller removed Isabella from the United States to avoid losing custody of Isabella to Jenkins, who had the parental right to visit Isabella. This is sufficient to show that someone compelled or induced Isabella to leave Jenkins, who was legally entitled to Isabella's custody, with knowledge that Jenkins did not consent.

**C.** *Third*, Zodhiates's jury found that, when removing Isabella from the United States, Zodhiates (or the other person) acted with intent to obstruct Jenkins's parental rights. Timothy Miller admitted that Lisa Miller—who was looking to leave the United States with Isabella because she could lose custody of Isabella to Jenkins, who had the parental right to visit Isabella—departed Canada and arrived in Nicaragua with Isabella. This is sufficient to show that the Vermont tort of intentional interference with parental rights was done in furtherance of the agreement to effect that tort.

**D.** *Fourth*, Zodhiates's jury found, and Timothy Miller admitted, that Isabella was taken from the United States to another country even though Jenkins had parental rights. This is sufficient to show that the Vermont tort of intentional interference with parental rights damaged Jenkins.

Therefore, there can be no genuine dispute as to any material fact regarding Zodhiates's and Timothy Miller's liability on Count 1, and Jenkins is entitled to judgment as a matter of law on Count 1 against them.

**II.** Under Jenkins's civil aiding-and-abetting theory, she must prove by a preponderance of the evidence that (1) another person committed the Vermont tort of intentional interference with parental rights; (2) Kenneth Miller knew that the intentional interference with parental

rights constituted a breach of duty; and (3) Kenneth Miller gave substantial assistance or encouragement to the person who committed the Vermont tort of intentional interference with parental rights.

Kenneth Miller's conviction for aiding and abetting international parental kidnapping establishes the first two elements beyond a reasonable doubt. His jury found beyond a reasonable doubt that Lisa Miller took Isabella from the United States to another country to obstruct Jenkins's parental rights and without Jenkins's consent. The jury also found beyond a reasonable doubt that he intended to obstruct Jenkins's parental rights.

Therefore, there can be no genuine dispute of material fact regarding the first two elements of Count 1 against Kenneth Miller, and Jenkins is entitled to judgment as a matter of law against him on those elements.

## ARGUMENT

Summary judgment should be granted on Jenkins's Vermont tort claim against Zodhiates, Kenneth Miller, and Timothy Miller for intentional interference with her parental rights because their prior convictions preclude them from relitigating issues presented by that claim. Rule 56(a) of the Federal Rules of Civil Procedure requires the Court to grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Collateral estoppel can satisfy both requirements. "[F]ederal law governs the collateral estoppel effect of a federal criminal conviction in a subsequent diversity action." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986). "Under the doctrine of offensive collateral estoppel (more recently called offensive issue preclusion), a plaintiff may foreclose a defendant from relitigating an issue the defendant has previously litigated but lost against another plaintiff."

*SEC v. Monarch Funding Corp.*, 192 F.3d 295, 303 (2d Cir. 1999) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). "A criminal conviction constitutes estoppel in a subsequent civil proceeding as to the matters determined by the judgment in the criminal case." *Houston Cas. Co. v. Rup*, No. 1:16-cv-294, 2017 WL 3327579, at *2 (D. Vt. Aug. 3, 2017) (Murtha, J.).

A criminal conviction by guilty plea can constitute estoppel in a subsequent civil proceeding. *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978); *see also Gelb*, 798 F.2d at 43 ("[A] party other than the Government may assert collateral estoppel based on a criminal conviction."). A guilty plea "is an admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

"For the bar to apply: (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Gelb*, 798 F.2d at 44 (citing Charles Alan Wright & Arthur R. Miller, 18 Federal Practice and Procedure § 4416 (1981)). To evaluate these factors, the court looks to the jury instructions, verdict, and findings of the jury in the prior criminal proceeding. *See, e.g.*, *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86–87 (2d Cir. 2000).

The court's analysis in *Samirah v. Sabhnani*, 772 F. Supp. 2d 437, 441 (E.D.N.Y. 2011), illustrates how this Court should assess this motion. In that case, a married couple forced two individuals to work as domestic servants in their home for little pay under very poor conditions and physically abused them. A jury convicted the couple of, among other things, forced labor in violation of 18 U.S.C. § 1589(a). 772 F. Supp. 2d at 441. The victims then sued the couple for

damages on various claims and moved for summary judgment on ten of those claims, including the state-law claim of false imprisonment, on the basis of the couple's convictions. *Id.*

The court granted summary judgment on the plaintiffs' claim for false imprisonment because, comparing the elements of the crime with the tort, "all of the elements of false imprisonment were necessarily found by the jury in convicting the defendants of forced labor." *Id.* at 451. New York's tort of false imprisonment requires that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Id.* (citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). Meanwhile, the couple's forced labor convictions required the jury to find beyond a reasonable doubt that they "(1) 'knowingly' (2) 'obtained the labor or services' of the plaintiffs (3) through 'threats of serious harm or physical restraint' and 'a scheme, plan or pattern intended to cause the plaintiffs to believe that non-compliance would result in serious harm.'" *Id.* (internal citations omitted).

The court reasoned that all three jury findings satisfied the first element of the tort: "By knowingly obtaining the plaintiffs' labor through use of threats of serious harm or physical restraint, the defendants necessarily confined the plaintiffs to the space in which they were forced to work." *Id.* The third finding satisfied the second and third elements of the tort: "[T]he only reasonable conclusion from the record and the jury's determination that the plaintiffs believed that non-compliance with the defendants' directions would result in serious harm, is that the plaintiffs were aware of the confinement and did not consent to it." *Id.* As for the fourth element of the tort, the court reasoned that it was met because there was "no evidence or suggestion that the plaintiffs' confinement was privileged." *Id.*

That same method of analysis applies here.

13

I.     **Zodhiates's and Timothy Miller's Convictions Establish Beyond a Reasonable Doubt All the Elements of Conspiracy to Intentionally Interfere with Jenkins's Parental Rights**

Jenkins is entitled to summary judgment against Zodhiates and Timothy Miller on Count 1. Zodhiates and Timothy Miller are collaterally estopped from challenging their liability under Vermont law for conspiring to intentionally interfere with Jenkins's parental rights because their convictions establish all elements of the tort beyond a reasonable doubt.

Under Vermont law, civil conspiracy requires that the plaintiff was damaged by something illegal done in furtherance of an agreement between two or more persons to effect an illegal purpose. *See Jenkins v. Miller*, No. 2:12-cv-184, 2017 WL 4402431, at *10 (D. Vt. Sept. 29, 2017) (ECF 277) (citing *Akerley v. N. Country Stone, Inc.*, 620 F. Supp. 2d 591, 600 (D. Vt. 2009)). Under Count 1, the illegal purpose and illegal act is the Vermont tort of intentional interference with parental rights. Therefore, under Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1, she must prove by a preponderance of the evidence that:

> Element 1: Zodhiates and Timothy Miller each agreed with another to effect the Vermont tort of intentional interference with parental rights.

> Element 2: The Vermont tort of intentional interference with parental rights was done.

> Element 3: The Vermont tort of intentional interference with parental rights was done in furtherance of the agreement.

> Element 4: The Vermont tort of intentional interference with parental rights damaged Jenkins.

A.     **Element 1: Zodhiates and Timothy Miller Each Agreed with Another to Effect the Vermont Tort of Intentional Interference with Parental Rights**

The first element of Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1 requires that she prove by a preponderance of the evidence that

14

Zodhiates and Timothy Miller each agreed with another to effect the Vermont tort of intentional interference with parental rights. That tort requires that (a) a person abduct or otherwise compel or induce a minor child to leave a parent (b) who is legally entitled to her custody, (c) with knowledge that the parent does not consent. *Jenkins v. Miller*, 983 F. Supp. 2d 423, 451–52 (D. Vt. 2013); *accord* Restatement (Second) of Torts § 700 ("One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent."). Therefore, Jenkins must prove by a preponderance of the evidence that:

> Element 1(a): Zodhiates and Timothy Miller each agreed to abduct or otherwise compel or induce Isabella, a minor, to leave Jenkins, her parent.

> Element 1(b): Jenkins was legally entitled to Isabella's custody.

> Element 1(c): Zodhiates and Timothy Miller each entered into the agreement with knowledge that Jenkins did not consent.

### 1.   Element 1(a): Zodhiates and Timothy Miller each agreed to abduct or otherwise compel or induce Isabella, a minor, to leave Jenkins, her parent

The first element of Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1 requires that she prove by a preponderance of the evidence that Zodhiates and Timothy Miller each agreed with another to abduct or otherwise compel or induce a minor child to leave a parent. The jury found that Zodhiates and another agreed to remove Isabella from the United States. *See Zodhiates* Jury Charge at *51, Ex. 20. Timothy Miller admitted that he and another agreed to remove Isabella from the United States. *See Timothy Miller* Plea Agreement at 2–3, Ex. 16. This finding and admission satisfy the tort's requirement that Zodhiates and Timothy Miller each agreed with another to abduct or otherwise compel or induce Isabella to leave Jenkins. By agreeing to remove Isabella from the United States,

Zodhiates and Timothy Miller necessarily agreed to separate Isabella from Jenkins, whether involuntarily by abduction or compulsion or voluntarily by inducement. *See Zodhiates* Jury Charge at *63, Ex. 20 (requiring only that Zodhiates "took" or "moved" Isabella from the United States to another country).

### 2.   Element 1(b): Jenkins was legally entitled to Isabella's custody

The first element of Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1 also requires that she prove by a preponderance of the evidence that she was legally entitled to Isabella's custody. Jenkins alleges she was legally entitled to Isabella's custody because she had visitation rights, *see, e.g.*, *Kenneth L. Miller* Gov't Ex. 5, Ex. 1; *Zodhiates* Gov't Ex. 13, Ex. 2; *Kenneth L. Miller* Gov't Ex. 12, Ex. 3; *Zodhiates* Gov't Ex. 20, Ex. 4, and then sole physical and legal custody, *see Kenneth L. Miller* Gov't Ex. 14, Ex. 5; *Zodhiates* Gov't Ex. 21, Ex. 6.

The jury found that Zodhiates and another entered into the agreement with an intent to obstruct Jenkins's visitation rights. *See Zodhiates* Jury Charge at *51, Ex. 20. Timothy Miller admitted that he and another entered into the agreement with an intent to obstruct Jenkins's visitation rights. *See Timothy Miller* Plea Agreement at 2–3, Ex. 16. This finding and admission satisfy the tort's requirement that Jenkins was legally entitled to Isabella's custody.

Zodhiates and Timothy Miller are collaterally estopped from relitigating whether Jenkins actually had visitation rights because the precise issue was necessarily decided in their criminal cases. Neither could have been convicted (either by jury verdict or guilty plea) if Jenkins did not have parental rights.

Jenkins's visitation rights satisfy this element's requirement that she was legally entitled to Isabella's custody because visitation is a form of temporary custody. *Cf. State v. Wooten*, 756 A.2d 1222, 1225 n.4 (Vt. 2000) (declining "to rely on an interpretation of" Vt. Stat. Ann. tit. 13,

§ 2451, which criminalizes knowingly taking, enticing, or keeping a child from the child's lawful custodian without a legal right to do so, and Vt. Stat. Ann. tit. 15, § 665(e), "which clarifies that 'the parent with physical responsibility shall be considered the custodial parent,'" "that permits the existence of only one custodian at any moment"); *State v. O'Dell*, 924 A.2d 87, 90 (Vt. 2007) ("The purpose of the custodial interference statute is to protect *any* custodian from deprivation of his or her rights, even if such deprivation results from the actions of a person who has a right to physical custody" and "to protect children, who are victims in these cases and suffer detrimental effects from wrongful taking or withholding."); *State v. Petruccelli*, 743 A.2d 1062, 1068 (Vt. 1999) ("Modern custodial interference statutes were intended to respond to the increasing occurrence of parental abduction of children as a means to settle a custody dispute or to permanently alter custody.").

In *Wooten*, for example, a father was awarded temporary physical custody of his two sons and their mother was awarded unsupervised visitation with them on two separate dates. 756 A.2d at 1223. The father removed the children from Vermont before the mother's second visitation day and was charged with custodial interference. *Id.* The Vermont Supreme Court rejected the father's argument "that he cannot be prosecuted for custodial interference because he was the children's lawful custodian at the moment of the taking." *Id.* at 1228 (citing *Petruccelli*, 743 A.2d at 1069). Like the mother in *Wooten*, Jenkins's visitation rights entitled her to custody of Isabella on certain dates, including from September 25, 2009, to September 27, 2009. *See Zodhiates* Gov't Ex. 20, Ex. 4. And like the father in *Wooten*, Lisa Miller cannot avoid liability for kidnapping Isabella simply because she had physical custody of Isabella on other dates.

### 3.   Element 1(c): Zodhiates and Timothy Miller each entered into the agreement with knowledge that Jenkins did not consent

The first element of Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1 further requires that she prove by a preponderance of the evidence that Zodhiates and Timothy Miller each entered into the agreement with knowledge that Jenkins did not consent. The jury found that Zodhiates and another entered into the agreement with an intent to obstruct Jenkins's visitation rights. *See Zodhiates* Jury Charge at *51, Ex. 20. Timothy Miller admitted that he and another entered into that agreement with an intent to obstruct Jenkins's visitation rights. *See Timothy Miller* Plea Agreement at 2–3, Ex. 16. This finding and admission also satisfy the tort's requirement that Zodhiates and Timothy Miller had knowledge that Jenkins did not consent. Zodhiates and Timothy Miller could not have intended to obstruct Jenkins's visitation rights if they believed she consented to Isabella's leaving her. *Cf. United States v. Hasan*, 586 F.3d 161, 165–66 (2d Cir. 2009) (holding government introduced sufficient evidence for jury to find child's mother did not give consent to defendant's parents' taking child to foreign country); *United States v. Saliba*, No. 8-CR-792, 2010 WL 1189350, at *1–2 (E.D.N.Y. Mar. 26, 2010) (allowing government to introduce evidence that defendant abused his then-wife to rebut defendant's anticipated defense that he did not intend to obstruct her lawful exercise of parental rights because she consented to his taking their child to a foreign country or led him to believe she would join them there).

*                *                *

Therefore, Zodhiates and Timothy Miller are collaterally estopped from relitigating this issue, there can be no genuine dispute as to any material fact regarding the first element of Count 1, and Jenkins is entitled to judgment as a matter of law on the first element of Count 1 against Zodhiates and Timothy Miller.

**B.      Element 2: The Vermont Tort of Intentional Interference with Parental Rights Was Done**

The second element of Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1 requires that she prove by a preponderance of the evidence that the Vermont tort of intentional interference with parental rights was done. Again, that tort requires that (a) a person abduct or otherwise compel or induce a minor child to leave a parent (b) who is legally entitled to her custody, (c) with knowledge that the parent does not consent. *Jenkins*, 983 F. Supp. 2d at 451–52; *accord* Restatement (Second) of Torts § 700. So, Jenkins must prove by a preponderance of the evidence that:

> Element 2(a): A person abducted or otherwise compelled or induced Isabella, a minor, to leave Jenkins, a parent.

> Element 2(b): Jenkins was legally entitled to Isabella's custody.

> Element 2(c): The person acted with knowledge that Jenkins did not consent.

**1.      Element 2(a): A person abducted or otherwise compelled or induced Isabella, a minor, to leave Jenkins, a parent**

The second element of Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1 requires that she prove by a preponderance of the evidence that a person abducted or otherwise compelled or induced Isabella, a minor, to leave Jenkins, a parent.

The jury found that Zodhiates or another removed Isabella from the United States.[4] *See Zodhiates* Jury Charge at *62, 64–65, Ex. 20. Timothy Miller admitted that, prior to September 22, 2009, Isabella lived in the United States, that Jenkins had the parental right to visit Isabella, that Lisa Miller was looking to leave the United States with Isabella because she could lose

---

[4] The jury found Zodhiates guilty on the second count of the superseding indictment for international parental kidnapping and aiding and abetting international parental kidnapping. "[E]ach is a good estoppel." *Gelb*, 798 F.2d at 45 (quoting *Irving Nat'l Bank v. Law*, 10 F.2d 721, 724 (2d Cir. 1926)).

custody of Isabella to Jenkins, that he purchased one-way airline tickets for Lisa Miller and Isabella to travel from Canada to Nicaragua, that Lisa Miller and Isabella departed Canada on or about September 22, 2009, and that he continued to assist Lisa Miller after Jenkins was awarded custody of Isabella in November 2009. *See Timothy Miller* Plea Agreement at 3, Ex. 16.

This finding and these admissions prove beyond a reasonable doubt that someone— Zodhiates, Lisa Miller, or another person—abducted or otherwise compelled or induced Isabella to leave Jenkins in the United States.

### 2.      Element 2(b): Jenkins was legally entitled to Isabella's custody

The second element of Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1 also requires that she prove by a preponderance of the evidence that she was legally entitled to Isabella's custody. Zodhiates's conviction and Timothy Miller's guilty plea prove this element beyond a reasonable doubt for the reasons set forth in *supra* Part I.A.2. Moreover, the jury found that the other person who kidnapped Isabella committed the offense of international parental kidnaping, which necessarily decides this issue. *See Zodhiates* Jury Charge at *64–65, Ex. 20.

### 3.      Element 2(c): The person acted with knowledge that Jenkins did not consent

The second element of Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1 further requires that she prove by a preponderance of the evidence that the person who abducted or otherwise compelled or induced Isabella to leave Jenkins acted with knowledge that Jenkins did not consent. Zodhiates's conviction and Timothy Miller's guilty plea prove this element beyond a reasonable doubt for the reasons set forth in *supra* Part I.A.3.

*          *          *

Therefore, Zodhiates and Timothy Miller are collaterally estopped from relitigating this issue, there can be no genuine dispute as to any material fact regarding the second element of Count 1, and Jenkins is entitled to judgment as a matter of law on the second element of Count 1 against Zodhiates and Timothy Miller.

C.    **Element 3: The Vermont Tort of Intentional Interference with Parental Rights Was Done in Furtherance of the Agreement**

The third element of Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1 requires that she prove by a preponderance of the evidence that the Vermont tort of intentional interference with parental rights (the illegal act) was done in furtherance of the agreement to effect the Vermont tort of intentional interference with parental rights (the illegal purpose).

The jury found beyond a reasonable doubt that, when removing Isabella from the United States, Zodhiates (or the other person) acted with intent to obstruct Jenkins's parental rights. *See Zodhiates* Jury Charge at *62, Ex. 20. Timothy Miller admitted that Lisa Miller was looking to leave the United States with Isabella because she could lose custody of Isabella to Jenkins, who had the parental right to visit Isabella, and that Lisa Miller and Isabella departed Canada and arrived in Nicaragua. *See Timothy Miller* Plea Agreement at 3, Ex. 16.

This finding and these admissions prove beyond a reasonable doubt that whoever kidnapped Isabella—Zodhiates, Lisa Miller, or another person—did so in furtherance of the agreement to interfere with Jenkins's parental rights.

Therefore, Zodhiates and Timothy Miller are collaterally estopped from relitigating this issue, there can be no genuine dispute as to any material fact regarding the third element of Count 1, and Jenkins is entitled to judgment as a matter of law on the third element of Count 1 against Zodhiates and Timothy Miller.

**D.      Element 4: The Vermont Tort of Intentional Interference with Parental Rights Damaged Jenkins**

The fourth and final element of Jenkins's civil conspiracy theory of Zodhiates's and Timothy Miller's liability under Count 1 requires that she prove by a preponderance of the evidence that the illegal act damaged Jenkins.

The jury found beyond a reasonable doubt that Isabella was taken from the United States to another country even though Jenkins had parental rights. *See Zodhiates* Jury Charge at *62–65, Ex. 20. Timothy Miller admitted that: (a) before September 22, 2009, Jenkins had the parental right to visit Isabella; (b) Lisa Miller and Isabella departed Canada on or about September 22, 2009, and arrived in Managua, Nicaragua; (c) in November 2009, he learned that Jenkins was awarded custody of Isabella; and (d) after learning that Jenkins was awarded custody of Isabella, he continued to assist Lisa Miller up to and including May 2010, when he accepted and provided her money. Isabella's removal and retention from the United States while Jenkins had parental rights constitutes damage to Jenkins. *See* Restatement (Second) of Torts § 700 cmt. d ("The deprivation to the parent of the society of the child is itself an injury that the law redresses.").

Therefore, Zodhiates and Timothy Miller are collaterally estopped from relitigating this issue, there can be no genuine dispute as to any material fact regarding the fourth element of Count 1, and Jenkins is entitled to judgment as a matter of law on the fourth element of Count 1 against Zodhiates and Timothy Miller.

*                    *                    *

For these reasons, Zodhiates and Timothy Miller are collaterally estopped from relitigating all issues presented by Count 1, there can be no genuine dispute as to any material fact regarding Count 1, and Jenkins is entitled to judgment as a matter of law on Count 1 against

Zodhiates and Timothy Miller. If the Court determines that Zodhiates or Timothy Miller is collaterally estopped on some but not all elements of Count 1, summary judgment should be granted on those elements that Zodhiates and Timothy Miller are precluded from relitigating. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—*or the part of each claim* or defense—on which summary judgment is sought." (emphasis added)).

## II.   Kenneth Miller's Conviction Establishes Beyond a Reasonable Doubt the First Two Elements of Aiding and Abetting the Intentional Interference with Jenkins's Parental Rights

Kenneth Miller is collaterally estopped from challenging the first two elements of aiding and abetting the intentional interference with Jenkins's parental rights because his conviction for aiding and abetting international parental kidnapping establishes those elements of the tort beyond a reasonable doubt.

Under Vermont law, "a person is subject to liability for harm to a third person from the tortious conduct of another if the person . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself or herself." *Concord Gen. Mut. Ins. Co. v. Gritman*, 146 A.3d 882, 887 (Vt. 2016) (quoting Restatement (Second) of Torts § 876(b)).[5] The Vermont tort of intentional interference with parental rights itself requires that a person abduct or otherwise compel or induce a minor child to leave a parent who is legally entitled to her custody, with knowledge that the parent does not consent. *Jenkins*, 983 F. Supp. 2d at 451–52; *accord* Restatement (Second) of Torts § 700.

---

[5] The Second Circuit, like other courts, has recognized that the Restatement (Second) of Torts § 876(b) sets forth the elements for a civil claim based on aiding and abetting. *See, e.g., In re Quigley Co., Inc.*, 676 F.3d 45, 60 (2d Cir. 2012).

Under Jenkins's civil aiding-and-abetting theory of Kenneth Miller's liability under Count 1, she must prove by a preponderance of the evidence that:

> Element 1: Another person committed the Vermont tort of intentional interference with parental rights, which requires that:
>
> > Element 1(a): The person abducted or otherwise compelled or induced Isabella to leave Jenkins.
> >
> > Element 1(b): Jenkins was legally entitled to Isabella's custody.
> >
> > Element 1(c): The other person knew that Jenkins did not consent.
>
> Element 2: Kenneth Miller knew that the intentional interference with parental rights constituted a breach of duty.
>
> Element 3: Kenneth Miller gave substantial assistance or encouragement to the person who committed the Vermont tort of intentional interference with parental rights.

### A.   Element 1: Another Person Committed the Vermont Tort of Intentional Interference with Parental Rights

The first element of Jenkins's civil aiding-and-abetting theory of Kenneth Miller's liability under Count 1 requires that she prove by a preponderance of the evidence that another person committed the Vermont tort of intentional interference with parental rights. Kenneth Miller's criminal conviction for aiding and abetting international parental kidnapping proves this element beyond a reasonable doubt.

Again, the Vermont tort of intentional interference with parental rights requires that Jenkins prove by a preponderance of the evidence that: (a) the person abducted or otherwise compelled or induced Isabella to leave Jenkins; (b) Jenkins was legally entitled to Isabella's custody; and (c) the person knew that Jenkins did not consent. *Jenkins*, 983 F. Supp. 2d at 451–52; *accord* Restatement (Second) of Torts § 700. By finding Kenneth Miller guilty of aiding and abetting international parental kidnapping, the jury necessarily found beyond a reasonable doubt

that: (1) Lisa Miller took Isabella from the United States to another country, and (2) Lisa Miller acted with the intent to obstruct the lawful exercise of parental rights of Jenkins. *See Kenneth L. Miller* Jury Charge at 14–15, Ex. 8. As the court instructed Kenneth Miller's jury, Jenkins had visitation rights before Isabella was supposed to be transferred to Jenkins's custody on January 1, 2010. *See id.* at 15; *see also Kenneth L. Miller* Gov't Ex. 5, Ex. 1; *Kenneth L. Miller* Gov't Ex. 14, Ex. 5. Together, these findings establish that Lisa Miller abducted or otherwise compelled or induced Isabella to leave Jenkins and that she knew Jenkins, who at the time had visitation rights, did not consent.

Therefore, Kenneth Miller is collaterally estopped from relitigating this issue, there can be no genuine dispute as to any material fact regarding the first element of Count 1, and Jenkins is entitled to judgment as a matter of law on the first element of Count 1 against Kenneth Miller.

### B.   Element 2: Kenneth Miller Knew that the Intentional Interference with Parental Rights Constituted a Breach of Duty

The second element of Jenkins's civil aiding-and-abetting theory of Kenneth Miller's liability under Count 1 requires that she prove by a preponderance of the evidence that Kenneth Miller knew that the intentional interference with parental rights constituted a breach of duty. Kenneth Miller's criminal conviction for aiding and abetting international parental kidnapping also proves this element beyond a reasonable doubt.

By finding Kenneth Miller guilty of aiding and abetting international parental kidnapping, the jury necessarily found beyond a reasonable doubt that Kenneth Miller knowingly associated himself with the crime of international parental kidnapping because he intended to obstruct Jenkins' lawful exercise of parental rights; he knew Jenkins had parental rights and that Lisa Miller intended to obstruct the lawful exercise of those rights by removing Isabella from the United States. *See Kenneth L. Miller* Jury Charge at 16–17, Ex. 8.

Therefore, Kenneth Miller is collaterally estopped from relitigating this issue, there can be no genuine dispute as to any material fact regarding the second element of Count 1, and Jenkins is entitled to judgment as a matter of law on the second element of Count 1 against Kenneth Miller.

*   *   *

For these reasons, Kenneth Miller is collaterally estopped from relitigating all issues presented by the first two elements of Count 1, there can be no genuine dispute as to any material fact regarding those elements of Count 1, and Jenkins is entitled to judgment as a matter of law on those elements of Count 1 against Kenneth Miller. *See* Fed. R. Civ. P. 56(a).

**CONCLUSION**

Plaintiff Janet Jenkins's motion for partial summary judgment on Count 1 against Defendants Philip Zodhiates, Kenneth Miller, and Timothy Miller should be granted.

December 13, 2019       Respectfully submitted.

         /s/ Frank H. Langrock
         Frank H. Langrock
         Langrock Sperry & Wool, LLP
         111 S. Pleasant Street
         P.O. Drawer 351
         Middlebury, Vermont 05753-0351
         Phone: (802) 388-6356
         Fax: (802) 388-6149
         Email: flangrock@langrock.com

         Sarah Star
         Sarah Star, PL
         P.O. Box 106
         Middlebury, Vermont 05753
         Phone: (802) 385-1023
         Email: srs@sarahstarlaw.com

         Diego A. Soto
         Southern Poverty Law Center
         400 Washington Avenue
         Montgomery, Alabama 36104

Phone: (334) 956-8200
Fax: (334) 956-8481
Email: diego.soto@splcenter.org

J. Tyler Clemons
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Phone: (504) 526-1530
Fax: (504) 486-8947
Email: tyler.clemons@splcenter.org

*Counsel for Plaintiffs*