## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

JANET JENKINS, et al.,

                Plaintiffs,

      v.

KENNETH L. MILLER, et al.,

                Defendants.

No. 2:12-cv-184-WKS

## PLAINTIFFS' CONSOLIDATED
## REPLY IN SUPPORT OF THEIR SECOND MOTION TO COMPEL DEFENDANTS LIBERTY COUNSEL, INC. AND RENA LINDEVALDSEN TO COMPLY WITH PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS AND RESPONSE IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR AN AWARD OF $10,650 AS AND FOR SANCTIONS AGAINST PLAINTIFF AND HER COUNSEL

Scott D. McCoy
Southern Poverty Law Center
P.O. Box 10788
Tallahassee, Florida 32302
Phone: (850) 521-3042
Fax: (850) 521-3001
Email: scott.mccoy@splcenter.org

J. Tyler Clemons
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Phone: (504) 526-1530
Fax: (504) 486-8947
Email: tyler.clemons@splcenter.org

Diego A. Soto
Maya G. Rajaratnam
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama 36104
Phone: (334) 956-8200
Fax: (334) 956-8481
Email: diego.soto@splcenter.org
Email: maya.rajaratnam@splcenter.org

Frank H. Langrock
Langrock Sperry & Wool, LLP
111 S. Pleasant Street
P.O. Drawer 351
Middlebury, Vermont 05753-0351
Phone: (802) 388-6356
Fax: (802) 388-6149
Email: flangrock@langrock.com

Sarah Star
Sarah Star, PL
P.O. Box 106
Middlebury, Vermont 05753
Phone: (802) 385-1023
Email: srs@sarahstarlaw.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 1

I.   Privilege Waiver Is Warranted By Defendants' Pattern of Delay And Obstruction,
     Which Their March 9 Production Compounds ................................................................. 2

A.  Defendants' Overall Pattern of Delay Is Inexcusable ..................................................... 2

B.  Defendants' March 9, 2020 Production Compounds Instead of Cures Their
     Pattern of Bad Faith and Discovery Abuse ................................................................... 5

1.  Defendants' Belated Production Does Not Excuse Their Discovery Abuses ......... 5

2.  Defendants' March 9, 2020 Production Further Evidences and Compounds
     Their Discovery Abuses ........................................................................................ 6

a.  Defendants' Production Is Overwhelmingly Filler ......................................... 7

b.  Defendants Have Not Produced All Responsive Documents .......................... 9

c.  Defendants' Privilege Assertions Are Inadequately Supported ..................... 11

d.  Defendants' Redactions Are Even Less Adequately Supported .................... 12

C.  Defendants' Misconduct Warrants Waiver of Defendants' Privilege Claims
     and Award of Plaintiffs' Costs and Fees ..................................................................... 13

II.  Defendants' Repeated Abuse of the Meet and Confer Requirements to Obstruct
     and Delay Discovery Shows the Futility of Yet Another Conference ............................ 17

III. Defendants' Cross-Motion for Sanctions Should Be Denied .......................................... 19

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Affanato v. Merrill Bros.*,
 547 F.2d 138 (1st Cir. 1977) .................................................................. 4

*Allstate Life Ins. Co. v. First Trust Nat'l Ass'n*,
 No. 92-civ-4865, 1993 WL 138844 (S.D.N.Y. Apr. 27, 1993) ........................... 15

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
 185 F. Supp. 3d 401 (S.D.N.Y. 2016)...................................................... 20

*Applied Sys. Inc. v. N. Ins. Co. of N.Y.*,
 No. 97-C-1565, 1997 WL 639235 (N.D. Ill. Oct. 7, 1997) .......................... 2, 15

*Bess v. Cate*,
 No. 2:07-cv-1989, 2008 WL 5100203 (E.D. Cal. Nov. 26, 2008) ...................... 15

*Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu*,
 No. 11-cv-4383, 2015 WL 4389893 (S.D.N.Y. July 10, 2015)......................... 20

*Campbell v. U.S. Dep't of Justice*,
 231 F. Supp. 2d 1 (D.D.C. 2002) ......................................................... 20

*Care Envtl. Corp. v. M2 Techs., Inc.*,
 No. CV-05-1600, 2006 WL 1517742 (E.D.N.Y. May 30, 2006) ........................ 17

*Chira v. Lockheed Aircraft Corp.*,
 634 F.2d 664 (2d Cir. 1980)................................................................. 3

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
 602 F.2d 1062 (2d Cir. 1979)................................................. 4, 5, 14, 15

*Dellums v. Powell*,
 566 F.2d 231 (D.C. Cir. 1977) ............................................................. 4

*Edmonson v. RCI Hosp. Holdings, Inc.*,
 No. 16-cv-2242, 2018 WL 4112816 (S.D.N.Y. Aug. 29, 2018)....................... 12

*Elhannon, LLC v. F.A. Bartlett Tree Expert Co.*,
 No. 2:14-cv-262, 2017 WL 1382024 (D. Vt. Apr. 18, 2017) (Sessions, J.) .......... 17

*Ferguson v. JONAH*,
 136 A.3d 447 (N.J. Super. 2014) ......................................................... 12

*FG Hemisphere Assoc. v. Republique du Congo*,
 No. 01-civ-8700, 2005 WL 545218 (S.D.N.Y. Mar. 8, 2005)......................... 16

*First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*,
 902 F. Supp. 1356 (D. Kan. 1995)........................................................ 14

*In re Application of Aenergy, S.A. Pursuant to 28 U.S.C. § 1782*,
 No. 19-MC-542, 2020 WL 1659834 (S.D.N.Y. Apr. 3, 2020)........................ 16

*John Labatt Ltd. v. Molson Breweries*,
 No. 93-cv-75004, 1995 WL 23603 (S.D.N.Y. Jan. 20, 1995) ......................... 15

*Kaufman v. Am. Express Travel Related Servs. Co.*,
  No. 07-C-1707, 2011 WL 13262362 (N.D. Ill. Jan. 10, 2011)...............................................15

*Lee v. Max Int'l, LLC*,
  638 F.3d 1318 (10th Cir. 2011) (Gorsuch, J.)....................................................................10

*Local 30, Int'l Union of Operating Eng'rs, AFL-CIO v. Wood Grp. Power Operations, LLC*,
  No. CV 13-2499, 2017 WL 9939042 (E.D.N.Y. Dec. 22, 2017) ..........................................19

*Matsushita Elec. Corp of Am. v. 212 Copiers Corp.*,
  No. 93 Civ. 3243, 1996 WL 87245 (S.D.N.Y. Feb. 29, 1996) ..............................................13

*McNamee v. Clemens*,
  No. 09-cv-1647, 2014 WL 12775660 (E.D.N.Y Jan. 30, 2014)..........................................14

*Moats v. City Hosp., Inc.*,
  No. 3:06-cv-120, 2007 WL 2220282 (N.D.W. Va. Aug. 2, 2007) ........................................13

*Nippon Fire & Marine Ins. Co. v. M/V EGASCO STAR*,
  No. 94 CIV. 6813, 1996 WL 74745 (S.D.N.Y. Feb. 21, 1996) ..............................................6

*Owens v. Resource Life Ins. Co.*,
  No. 06-CV-0346, 2007 WL 1206726 (N.D. Okla. Apr. 24, 2007)........................................13

*PKFinans Int'l Corp. v. IBJ Schroeder Leasing Corp.*,
  No. 93-civ-5375, 1996 WL 525862 (S.D.N.Y. Sept. 17, 1996) ...........................................16

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*,
  No. 96 CIV 7590, 1998 WL 67672 (S.D.N.Y. Feb. 18, 1998)..............................................17

*Reidy v. Runyan*,
  169 F.R.D. 486 (E.D.N.Y. 1997) ..............................................................................13, 17, 19

*Ritacca v. Abbot Labs.*,
  203 F.R.D. 332 (N.D. Ill. 2001).......................................................................12, 14, 15, 16

*S. New England Tel. Co. v. Global NAPS, Inc.*,
  624 F.3d 123 (2d Cir. 2010).................................................................................................5

*Star-Brite Distrib., Inc. v. Kop-Coat, Inc.*,
  664 F. Supp. 2d 1246 (S.D. Fla. 2009) ..............................................................................19

*Synventive Molding Sol., Inc. v. Husky Injection Molding Sys., Inc.*,
  262 F.R.D. 365 (D. Vt. 2009) (Conroy, J.) ...........................................................................8

*Underdog Trucking, LLC v. Verizon Servs. Corp.*,
  273 F.R.D. 372 (S.D.N.Y. 2011) ..................................................................................3, 4, 6

*United States v. Constr. Prods. Research*,
  73 F.3d 464 (2d Cir. 1996)..................................................................................................12

*Urban Elec. Supply & Equip. v. N.Y. Convention Ctr. Dev. Corp.*,
  105 F.R.D. 92 (E.D.N.Y. 1985) ...........................................................................................3

*Veleron Holding, B.V. v. BNP Paribas SA*,
  No. 12-CV-5966, 2014 WL 4184806 (S.D.N.Y. Aug. 22, 2014)..........................................14

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
    250 F.R.D. 251 (D. Md. 2008) ................................................................................. 8

*Window Headquarters, Inc. v. Mat Basic Four, Inc.*,
    No. 91 Civ. 1816(MBM), 1996 WL 63046 (S.D.N.Y. Feb. 9, 1996) ..................................... 19

**Rules**

Fed. R. Civ. P. 26(b)(5) .......................................................................................... 14

Fed. R. Civ. P. 34(b)(2)(A) ................................................................................ 2, 5

Fed. R. Civ. P. 37 ............................................................................................ 13, 14

Fed. R. Civ. P. 37(a)(1) ......................................................................................... 17

Fed. R. Civ. P. 37(b)(2) ................................................................................... 13, 14

L.R. 26(a)(3) ............................................................................................................ 3

**Treatises**

8A Charles Allan Wright et al., *Federal Practice & Procedure* § 2213 (2002) ............................ 8

## INTRODUCTION

Defendants Liberty Counsel, Inc. and Rena Lindevaldsen's ("Defendants") response and the documents they finally produced underscore Plaintiffs' need for relief. For nearly two years, and continuing to this day, Plaintiffs have painstakingly sought, waited for, and negotiated with Defendants to produce documents to which they are entitled under the federal discovery rules. Beneath Defendants' hyperbole, hand-waving, and quibbling, the essential fact of Plaintiffs' second motion to compel ("Mot."), ECF 472, remains unchallenged: Until March 9, 2020, fully 621 days after receiving Plaintiffs' First Requests for Production of Documents ("Requests") and fourteen days after Plaintiffs filed their second motion to compel, ECF 472, Defendants produced only five pages of documents that are not webpages, communications with Plaintiffs' own counsel, or copies of public documents. But Defendants' March 9 production—which is overwhelmingly filler, perpetuates Defendants' inadequate privilege assertions, and contains random unsupported redactions—compounds rather than cures Defendants' pattern of bad faith and abuse of the discovery process. Most tellingly, Defendants' March 9 production still does not contain all documents responsive to Plaintiffs' Requests.

Two years of delay, obstruction, and obfuscation is enough. The Court should grant Plaintiffs' second motion to compel and deny Defendants' cross-motion for sanctions.

## ARGUMENT

Plaintiffs have sought discovery from Defendants since June 27, 2018. *See* Pls.' First Mot. to Compel 1, ECF 361. From the beginning of the discovery process, Defendants have engaged in various dilatory tactics with a single goal: to run out the discovery clock while producing as little as possible to Plaintiffs. Defendants' refusal to fulfill even the most basic discovery functions necessitated Plaintiffs' first motion to compel, which the Court granted in substantial part. *See* Op. & Order 18, ECF 395. Now, nearly six months after that order,

1

Defendants' discovery abuses continue. Indeed, Defendants' response to this motion, which insists upon a meet-and-confer that Defendants know would have been futile, and their cross-motion for sanctions against Plaintiffs, are the latest examples of Defendants' tactics of delay and distraction. *See* Defs.' Resp. to Pls.' Second Mot. to Compel ("Resp.") 24–25, 30, ECF 484.

## I.    Privilege Waiver Is Warranted By Defendants' Pattern of Delay And Obstruction, Which Their March 9 Production Compounds

Defendants' ongoing misconduct warrants the sanctions of waiver of their privilege claims and an award of costs and fees to Plaintiffs, both of which courts routinely impose on parties who commit similar discovery abuses.

### A.    Defendants' Overall Pattern of Delay Is Inexcusable

As detailed in Plaintiffs' first and second motions to compel, Defendants have engaged in a nearly two-year-long pattern of delay, obstruction, and obfuscation in this case. That pattern began with Defendants' initial responses to Plaintiffs' Requests: Although Rule 34(b)(2)(A) of the Federal Rules of Civil Procedure unambiguously requires "[t]he party to whom the request [for production of documents] is directed must respond in writing within 30 days after being served," Defendants did not respond until four months after Plaintiffs served the Requests. *See* Pls.' First Mot. to Compel Defs. 1–2, ECF 361; *Applied Sys. Inc. v. N. Ins. Co. of N.Y.*, No. 97-C-1565, 1997 WL 639235, at *2 (N.D. Ill. Oct. 7, 1997) (noting that failure to response to discovery requests for two months was "no minor procedural violation" nor "indicative of a good faith attempt" to comply with discovery obligations). And that pattern continues up to and even past Plaintiffs' filing of this motion: Defendants initially told Plaintiffs they would endeavor to produce electronic documents on December 23, 2019, and subsequently promised them by February 14, 2020, and then by February 28, 2020, before finally producing them on March 9,

2020.[1] *See* Email from Horatio Mihet to Tyler Clemons (Feb. 28, 2020) 1, ECF 472-12; Clemons Decl. ¶ 6; *Underdog Trucking, LLC v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377–78 (S.D.N.Y. 2011) (granting fees and costs where producing party caused delay by repeatedly assuring requesting party that documents "would be produced 'shortly'").

Defendants have employed various tactics to cause delay. Defendants have refused to participate in discovery while motions were pending before this Court or while they sought a mandamus petition in the Second Circuit, despite Local Rule 26(a)(3)'s clear statement that such actions do not stay discovery. *See* Pls.' Mot. for Hr'g 1, ECF 298; Email from Daniel Schmid to Sarah Star 1, ECF 298-3. Defendants have consistently prioritized their work in other cases over satisfying their discovery obligations in this one, *see, e.g.*, Defs.' Mot. for Extension of Time 2 n.1, ECF 476; Defs.' Mot. for Extension of Time ¶ 3, ECF 371; Defs.' Mot. for Extension of Time ¶¶ 3–6, ECF 366; Email from Horatio Mihet to Tyler Clemons 1 (Nov. 10, 2019), ECF 472-2; Email from Horatio Mihet to Tyler Clemons (Mar. 22, 2019) at 2–3, Ex. 1, even though attorneys' caseloads cannot excuse their failure to abide by discovery deadlines, *see, e.g.*, *Urban Elec. Supply & Equip. v. N.Y. Convention Ctr. Dev. Corp.*, 105 F.R.D. 92, 98 (E.D.N.Y. 1985) (citing *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 667 (2d Cir. 1980)). Defendants have refused to make co-counsel available to discuss discovery issues. Email from Horatio Mihet to Tyler Clemons (Apr. 3, 2019), Ex. 1, at 1. As with their latest production, Defendants have often strung Plaintiffs along bit by bit, promising responses or documents within the next week

---

[1] Defendants' objection that they could not have produced electronic documents until January 16, 2020, when the negotiated search terms were finalized, *see* Resp. 9, ECF 484, is due to their failure to inform Plaintiffs until January 6, 2020, of the inability of their system to process some of the search terms that Plaintiffs proposed on December 3, 2019. *See* Email from Tyler Clemons to Horatio Mihet 1–2, ECF 472-5. Moreover, the negotiated search terms encompassed only four of the twenty Requests for which Defendants were ordered to produce documents. *See id.* (providing updated search terms for Requests 64, 65, 66, and 67).

or two weeks "if possible." *See, e.g.*, Email from Horatio Mihet to Tyler Clemons (Jan. 6, 2020) 2–3, ECF 472-12; *id.* at 2 (Feb. 14, 2020 email); *id.* at 1 (Feb. 21, 2020 email). Defendants have attempted to exploit minor ambiguities in the Court's orders to limit Plaintiffs' access to sources of information. *See, e.g.*, Pls.' Mot. to Amend Disc. Schedule/Order ("Deposition Mot.") 2–3, ECF 432. Perhaps most egregiously, Defendants flatly refused to conduct even the most cursory of searches for documents responsive to several of Plaintiffs' clearly relevant Requests until explicitly ordered to do so by the Court. *See* Op. & Order 4, ECF 395; *see also Underdog Trucking, LLC*, 273 F.R.D. at 377–78 (sanctioning party that "embarked on an in-depth document search only in response to a motion to compel").

Defendants' attempts to justify individual instances of these tactics cannot negate their overall purpose and effect: to run out the discovery clock while producing as little as possible to Plaintiffs. Taken together, Defendants' "series of episodes of nonfeasance … amount[s], in sum, to a near total dereliction of professional responsibility." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067 (2d Cir. 1979) (quoting *Affanato v. Merrill Bros.*, 547 F.2d 138, 141 (1st Cir. 1977)). The freedom granted to parties and lawyers by the federal discovery rules require that all sides operate in good faith without "dilation, posturing, and harassment." *Id.* at 1068. Defendants have persistently and deliberately abused that freedom. By requiring Plaintiffs to hound Defendants, and to enlist the Court's help in hounding them, each step of the way, Defendants' behavior is "directly contrary to the overall scheme of the federal discovery rules." *Id.* (quoting *Dellums v. Powell*, 566 F.2d 231, 235 (D.C. Cir. 1977)).

**B.      Defendants' March 9, 2020 Production Compounds Instead of Cures Their Pattern of Bad Faith and Discovery Abuse**

**1.      Defendants' Belated Production Does Not Excuse Their Discovery Abuses**

Defendants' claim that their March 9, 2020 production moots Plaintiffs' second motion to compel, *see* Resp. 16, ECF 484, completely misses the point of that motion. Aside from the obvious deficiencies in Defendants' March 9 production, *see infra* Section I.B.2, belated compliance with discovery obligations is insufficient to avoid sanctions for discovery abuse, even when the producing party can show that the delay did not prejudice the requesting party. *See S. New England Tel. Co. v. Global NAPS, Inc.*, 624 F.3d 123, 147–49 (2d Cir. 2010) (reasoning that "hopelessly belated compliance should not be accorded great weight" in determining outcome of Rule 37 motion (quoting *Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1068)). To hold otherwise "would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall." *Id.*

Defendants' focus on the four-and-a-half months it took them to make the March 9 production is also misplaced. Tellingly, Defendants once again do not mention the 30-day response deadline set by Rule 34(b)(2)(A), instead referencing—without citation or even case names—two unrelated cases in which parties took a long time to produce documents. *See* Resp. 15–16, ECF 484. Although the Court did not set an explicit compliance deadline in its order on Plaintiffs' first motion to compel, Plaintiffs' selection of an initial compliance deadline of 30 days after the Court's order was reasonable based on Rule 34(b)(2)(A) and Defendants' already severely delayed compliance.[2] *See, e.g.*, *Nippon Fire & Marine Ins. Co. v. M/V EGASCO STAR*,

---

[2] Defendants make much of the fact that Plaintiffs communicated this initial deadline via U.S. mail instead of email. *See* Resp. 22, ECF 484. Plaintiffs did so because this communication also contained Plaintiffs' responses to Defendants' discovery requests, and Defendants refused to

No. 94 CIV. 6813, 1996 WL 74745, at *1 (S.D.N.Y. Feb. 21, 1996) (setting 30-day deadline to comply with order on motion to compel).

More fundamentally, however, the relevant period is not the four-and-a-half months between the Court's order and Defendants' production but rather the *twenty* months between the service of Plaintiffs' Requests and that production. Even assuming Defendants worked "around the clock," Resp. 9, 14, ECF 484, from the moment they received the Court's October 29, 2019 order—a highly dubious proposition given Defendants' active involvement in other cases, *see, e.g.*, Defs.' Mot. for Extension of Time 2 n.1, ECF 476; Appellee's Mot. for Extension of Time to File Br. ¶ 3–4, *Vazzo v. City of Tampa*, No. 19-14387 (11th Cir. Dec. 31, 2019)—that time crunch was entirely of Defendants' own making, the result of their previous sixteen months of delay. Indeed, the very fact that Defendants had to spend "hundreds of hours of reviewing tens of thousands of pages" following the Court's order proves their complete lack of diligence for the proceeding sixteen months. *See Underdog Trucking, LLC*, 273 F.R.D. at 378 ("Indeed, Plaintiffs acknowledge spending 'close to 20 hours working with' counsel to locate the documents that comprised the December 23 production, thus illustrating the lack of diligence undertaken the prior eight months.").

### 2.     Defendants' March 9, 2020 Production Further Evidences and Compounds Their Discovery Abuses

Defendants' reliance on their March 9, 2020 production as proof of their discovery compliance is further undercut by its multiple obvious flaws. Indeed, Defendants' slipshod March 9 production compounds rather cures Defendants' discovery abuses.

---

consent to service by email until November 21, 2019. *See* Email from Horatio Mihet to Tyler Clemons (Nov. 21, 2019) 1, Ex. 2.

### a.      Defendants' Production Is Overwhelmingly Filler

More than 35,500 pages—84 percent—of the roughly 42,000 pages Defendants have produced to Plaintiffs in this litigation consist of publicly available court filings, duplicative documents, or non-Defendant publications. Clemons Decl. ¶ 10. For a mere snapshot of Defendants' production, they produced:

- Twelve copies of Plaintiffs' Complaint in this case;

- A 363-page report regarding Mexican–American heritage and contemporary issues;

- Two copies of a 205-page document outlining Virginia's curriculum standards for World History & Geography;

- A 325-page document on emergency school planning published by the State of Rhode Island;

- A 544-page copy of Human Rights Watch's 2006 report;

- Two copies of a 497-page brief filed in support of the petition for certiorari in *Hollingsworth v. Perry*, 570 U.S. 693 (2013);

- Five copies of a 140-page pre-trial exhibit list in *Perry v. Schwarzenegger*, 264 F.R.D. 576 (N.D. Cal. 2009), including four consecutive copies; and

- Photocopies of several full books, including but not limited to:

    - *The Complete Infidel's Guide to the First Amendment* (276 pages);

    - *The Complete Infidel's Guide to Iran* (364 pages);

    - *Intimate Wars: The Life and Times of the Women Who Took Abortion from the Back Alley to the Board Room* (76 pages);

    - Six copies of *Redeeming the Rainbow: A Christian Response to the Gay Agenda* (237 pages each);

    - *Sex and Culture* (703 pages);

    - *Sexual Sabotage: How One Mad Scientist Unleashed A Plague of Corruption & Contagion on America* (416 pages); and

- ▪ *The New England Primer* (442 pages).[3] Clemons Decl. ¶ 8.

Although these documents might contain at least one of the agreed-upon search terms, the vast majority of them clearly are not responsive to Plaintiffs' Requests.[4] The ultimate determination of whether a document should be produced is not whether it contains a particular search term, but whether it is responsive to a discovery request. *See, e.g.*, *Synventive Molding Sol., Inc. v. Husky Injection Molding Sys., Inc.*, 262 F.R.D. 365, 370 (D. Vt. 2009) (Conroy, J.) (quoting 8A Charles Allan Wright et al., *Federal Practice & Procedure* § 2213 (2002)) (internal quotation marks and alteration omitted)) ("The producing party has a burden to select and produce the items requested rather than simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought."); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 259–60 (D. Md. 2008) (noting the necessity of analyzing "the results of the search to assess its reliability, appropriateness for the task, and the quality of its implementation"). Most modern dictionaries contain the term "civil disobedience," for instance, and all credible world atlases include Nicaragua, but the discovery rules obviously did not require Defendants to scan a copy of every dictionary and world atlas in their offices to produce to Plaintiffs. *See* Pls.' Reqs. for Produc. of Docs. 10, ECF 361-2 (requesting "All documents and communications concerning Nicaragua"; Email from Tyler Clemons to Horatio Mihet (Dec. 3, 2019) 5, ECF 472-5 (proposing "civil disobedience" as a search term for Requests

---

[3] Eighty percent of the remaining filler pages—more than 22,000 pages, over half of the total production—consists of court filings and orders from this case, the custody disputes in Vermont and Virginia state courts, and various unrelated cases that Liberty Counsel has litigated in other federal courts.

[4] Plaintiffs originally proposed much more limited search terms that likely would have excluded most if not all of the irrelevant documents from Defendants' production. Plaintiffs were forced to provide much simpler, and therefore much broader, search terms because Defendants' search software lacks Boolean functionality. *See* Email from Tyler Clemons to Horatio Mihet (Dec. 3, 2019) 5, ECF 472-5.

66 and 67). That they did not do so shows that Defendants are aware that search terms are the beginning, not the end, of the discovery review process. Moreover, Defendants know that the production of "multiple identical copies of the same document" is unreasonable. *See* Resp. 16, ECF 484.

If Defendants indeed spent "hundreds of hours" reviewing the March 9 production, why did they produce *The New England Primer* and five copies of the 140-page exhibit list from a completely unrelated case? There are only two possible answers: Either Defendants did not adequately review the March 9 production, or they deliberately included thousands of pages of patently unresponsive documents. Either is yet one more discovery abuse by Defendants, yet another demonstration of their sanction-worthy, bad faith approach to discovery in this case.

**b.  Defendants Have Not Produced All Responsive Documents**

Although Defendants claim they have now produced "all responsive, non-privileged documents and communications in their custody, possession or control, and have catalogued all responsive privileged communications in their privilege logs," Resp. 5–6, ECF 484, Plaintiffs have reason to believe there continue to be responsive documents that Defendants have neither produced nor catalogued as privileged. For instance, Defendant Lindevaldsen told this Court at least three times under penalty of perjury that, after the kidnapping in late September 2009, she "continued to try to communicate with [Lisa Miller] by email and voicemail," but Lisa "never responded to any of these emails or voicemails." Aff. of Rena M. Lindevaldsen in Supp. of Def.'s Mot. to Dismiss ¶ 9, ECF 66-5; *accord* Aff. of Rena M. Lindevaldsen in Resp. to Pls.' Mot. to Join Additional Defs. ¶ 4, ECF 213-2; Aff. of Rena M. Lindevaldsen in Supp. of Defs. Mathew Staver, Rena Lindevaldsen, and Liberty Counsel's Mot. to Dismiss Pls.' Revised Second Am. Compl. ¶¶ 4–5, ECF 238-3. Yet the most recent email from Lindevaldsen to Lisa Miller produced by Defendants is dated September 7, 2009, two weeks before Lisa's

9

disappearance. Clemons Decl. ¶ 11. And Defendants' privilege logs catalogue only two emails—both on September 22, 2009—from Lindevaldsen to Lisa Miller after she disappeared. *See* Def. Liberty Counsel's Privilege Log (March 9) 10, 14, ECF 484-3 (Entries 112 and 155). Moreover, these two emails did not inquire about Lisa Miller's whereabouts but only attempted to "remind client of outstanding need for information and instruction regarding visitation" that the Rutland Family Court had ordered Lindevaldsen to provide to Janet Jenkins.[5] *Id.*

These facts permit only two possible explanations: Either Lindevaldsen never attempted to communicate with Lisa Miller via email to ascertain her post-September 21, 2009 whereabouts, in which case her statement "that she continued to try to communicate with [Lisa Miller] by email" was patently false, or there continue to be responsive communications between Lindevaldsen and Lisa Miller that Defendants have neither produced nor catalogued as privileged.

This single example is provided only to demonstrate the high probability that Defendants continue to withhold documents. Obviously, Plaintiffs cannot draw the Court's attention to documents about which they remain unaware due to Defendants' recalcitrance. *See* Op. & Order 11, 13, ECF 395 (noting that the information sought by Plaintiffs from Defendants is available only through discovery). But Plaintiffs should not be limited to the discovery that they can prove Defendants are withholding. *See, e.g.*, *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011) (Gorsuch, J.) ("Discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered.").

---

[5] Two post-disappearance privilege log entries purport to cover email chains between Lindevaldsen and other attorneys "discussing attempts to reach client," presumably Lisa Miller. *See* Liberty Counsel Privilege Log 13, ECF 484-3 (Entries 143 and 150). Lisa Miller herself is not listed as a recipient of these emails.

### c.     Defendants' Privilege Assertions Are Inadequately Supported

The privilege logs accompanying the March 9 production, ECF 484-3 and ECF 484-4,

suffer from precisely the same deficiencies as the privilege log Defendants produced on January

10, 2020. *See* Mot. 6, ECF 372. Indeed, although Defendants claim that the March 9 logs

demonstrate a "clear, good faith attempt" to address the issues with the January 10 log, Resp. 18,

ECR 484, Plaintiffs are unable to spot any significant differences between the January 10 log and

the March 9 logs. Just like the January 10 log, the March 9 logs provide names with no other

identifying information.[6] Similarly, the "subject" description Plaintiffs identified as vague in the

January 10 log—"Facsimile letter between counsel discussing strategy, research, and impression

for legal briefing in Miller/Jenkins Vermont litigation"—is repeated five times in Liberty

Counsel's March 9 log. *Compare* Mot. 7, ECF 372, *with* Def. Liberty Counsel's Privilege Log

(March 9) 1, ECF 484-3. And because the March 9 logs, just like the January 10 log, do not

contain any information about the number of pages each entry covers, Plaintiffs have no way of

knowing how many pages of documents Defendants are withholding under each claim of

privilege.

Once again, Defendants' insistence that Plaintiffs could have obtained supplemental

information from them (such as the identities behind unfamiliar names), Resp. 34–35, ECF 384,

misses the point. The Second Circuit's requirement that a privilege log "provid[e] sufficient

detail to permit a judgment as to whether the document is at least potentially protected from

disclosure" was clear when Defendants prepared the January 10 log, and was certainly known to

Defendants before their preparation of the March 9 logs. Mot. 6, ECF 372 (quoting *United States*

---

[6] Defendants know this additional identifying information is necessary; their own discovery
requests to Plaintiffs instructs Plaintiffs to include in any privilege log "where not apparent, the
relationships of the author(s), addressee(s), custodian(s), and any other recipient to each other."
Def. Liberty Counsel's First Reqs. for Produc. 3–4, Ex. 3.

*v. Constr. Prods. Research*, 73 F.3d 464, 473 (2d Cir. 1996)). Failing to abide by that

requirement and instead requiring Plaintiffs to inquire about obviously necessary information is

not just a negligent oversight but rather the latest example of Defendants' pattern of "foot-

dragging" and "cavalier attitude towards following court orders and the discovery rules." *Ritacca*

*v. Abbot Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001); *see also Constr. Prods. Research*, 73 F.3d

at 474 (noting that the "glaring absence of any supporting affidavits or other documentation"

with privilege log contributed to insufficiency).[7]

> #### d.     Defendants' Redactions Are Even Less Adequately Supported

The March 9 production also includes a number of documents with redactions that are not

included in Defendants' privilege log and unexplained beyond cursory assertions of, for

example, "Attorney-Client Privilege" or "Work-Product Privilege" on the documents

---

[7] To further distract from the insufficiency of Defendants' own privilege logs, they also point to three of Plaintiffs' purported acts or omissions. These arguments may be briefly dispatched.

First, Plaintiffs did not object to Defendants' privilege log regarding the Liberty University production because Plaintiffs objected to the assertion of privilege over *any* document in the possession of Liberty University, a third party. *See* Pls.' Mot. to Compel 9–10, ECF 361. It was therefore unnecessary for Plaintiffs to request more specific information to evaluate each individual privilege assertion on the log.

Second, the redaction log and privilege log from *Ferguson v. JONAH*, 136 A.3d 447 (N.J. Super. 2014), are from a wholly unrelated fraud case litigated by some of Plaintiffs' attorneys in New Jersey state court. Moreover, as Plaintiffs informed Defendants, the logs' format was the result of negotiations between counsel in that case. *See* Resp. 19–20, ECF 484. Defendants have a duty to abide by the clearly established privilege log standards of the Second Circuit and could have asked to negotiate different requirements before producing their logs.

Finally, Plaintiffs have not produced a privilege log to Defendants because Plaintiffs are not withholding any documents responsive to Defendants' discovery requests on the basis of privilege. *See* Email from Tyler Clemons to Horatio Mihet (Mar. 18) 1, Ex. 3. Plaintiffs have objected as unduly burdensome the production of a privilege log cataloguing the years of communications between Jenkins and her attorneys in the Vermont and Virginia custody disputes. *See* Pls.' First Suppl. Resp. to Defs.' First Reqs. for Produc. 4, ECF 484-11; *see also Edmonson v. RCI Hosp. Holdings, Inc.*, No. 16-cv-2242, 2018 WL 4112816, at *2 & n.2 (S.D.N.Y. Aug. 29, 2018). Defendants cannot use this concern as an excuse for their own discovery failures.

themselves. One email from Lisa Miller to Rena Lindevaldsen on June 19, 2009—just three

months before Lisa Miller kidnapped Isabella and fled to Nicaragua—contains a single redacted

sentence in the middle of a multi-paragraph email asking for spiritual advice with only

"REDACTED: ATTORNEY-CLIENT PRIVILEGE" offered as an explanation. Email from Lisa

Miller to Rena Lindevaldsen (June 19, 2009), Ex. 5. Moreover, some redactions are explained

with the notation "FIRST AMENDMENT PRIVILEGE," *see, e.g.*, Emails (Jan. 23, 2007), Ex. 6,

even though the Court explicitly rejected Defendants' First Amendment privilege claims in its

order on Plaintiffs' first motion to compel. *See* Op. & Order 16–17, ECF 395.

### C.   Defendants' Misconduct Warrants Waiver of Defendants' Privilege Claims and Award of Plaintiffs' Costs and Fees

Plaintiffs' proposed solution to Defendants' pattern of discovery abuse is straightforward:

The Court should deem that Defendants have waived all privilege assertions. Plaintiffs also

request costs, including attorney's fees, for the preparation of this motion and Plaintiffs' first

motion to compel. *See* Mot. 10, ECF 372 (citing Fed. R. Civ. P. 37(b)(2)(C)).[8]

---

[8] Because any attempt to meet and confer would have been futile, *see infra* Section II,
Defendants' arguments that the Court should not decide the merits of Plaintiffs' second motion
to compel and that Plaintiffs' request for costs and fees should be denied for failure to meet and
confer, *see* Resp. 30–32, ECF 484, are without merit. Where the meet and confer requirement is
excused because of futility, courts are free to entertain the merits of a motion to compel and to
grant costs and fees (and other sanctions) for bringing such a motion. *See, e.g.*, *Moats v. City
Hosp., Inc.*, No. 3:06-cv-120, 2007 WL 2220282, at *3 (N.D.W. Va. Aug. 2, 2007) (granting
reasonable expenses for bringing motion to compel without a meet and confer where compliance
with meet and confer rule would have been "a pointless formalit[y]"); *Owens v. Resource Life
Ins. Co.*, No. 06-CV-0346, 2007 WL 1206726, at *2 (N.D. Okla. Apr. 24, 2007) (affirming
magistrate judge's imposition of discovery sanctions where movant did not meet and confer
because of futility); *Reidy v. Runyan*, 169 F.R.D. 486, 490 (E.D.N.Y. 1997) ("[P]remotion
conference requirement does not always constitute a condition precedent to consideration of the
merits of a discovery motion."); *Matsushita Elec. Corp of Am. v. 212 Copiers Corp.*, No. 93 Civ.
3243, 1996 WL 87245, at *1 (S.D.N.Y. Feb. 29, 1996) (reaching the merits of motion to compel
after determining meet-and-confer would have been futile). None of the cases Defendants cite
hold the contrary; rather, they support Plaintiffs' position that failure to meet and confer does not
mandate denial of the motion "where efforts at compromise would have been clearly futile." *See,*

Privilege waiver is among the equitable sanctions granted to the Court's discretion by Rule 37 of the Federal Rules of Civil Procedure. *See Ritacca*, 203 F.R.D. at 335 (quoting Fed. R. Civ. P. 26(b)(5) advisory committee's note (1993)); *see also McNamee v. Clemens*, No. 09-cv-1647, 2014 WL 12775660, at *15–16 & n.37 (E.D.N.Y Jan. 30, 2014). Although waiver is a harsh sanction, it is not the harshest that district courts may employ to punish discovery abuse. *See* Fed. R. Civ. P. 37(b)(2) (listing "striking pleadings in whole or part" and "rendering a default judgment against the disobedient party" as permissible sanctions); *Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1066. The appropriate harshness of a sanction is determined by whether discovery failures are, on the one hand, "due to a mere oversight of counsel amounting to no more than simple negligence," *Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1068, "minor procedural violations," or "good faith attempts at compliance," *Ritacca*, 203 F.R.D. at 335; or, on the other hand, evidence of "foot-dragging or a cavalier attitude towards following court orders and the discovery rules," *id.*, or "unjustified delay, inexcusable conduct, or bad faith," *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995).

Defendants' two-year pattern of discovery abuse clearly falls near the harshest side of this spectrum. Defendants have repeatedly engaged in the kinds of discovery abuses that courts routinely sanction. *See supra* Section I.B. More specifically, courts have deemed privilege waiver an appropriate sanction for similar misconduct. As Plaintiffs discussed in their second motion to compel, the court in *Ritacca* imposed privilege waiver as sanction on a party that delayed production for nine months, unreasonably delayed its privilege assertions, failed to produce or catalogue documents specifically identified by the requesting party, and made no

---

*e.g.*, *Veleron Holding, B.V. v. BNP Paribas SA*, No. 12-CV-5966, 2014 WL 4184806, *2 (S.D.N.Y. Aug. 22, 2014) (citing *Prescient Partners*, 1998 WL 67672, at *3.).

more than a "slipshod attempt" at a privilege log. Mot. 9–10, ECF 472 (quoting 203 F.R.D. at 305–06).

Other courts have imposed privilege waiver as a sanction in similar cases.[9] Specifically, courts have imposed waiver as a sanction on parties that, like Defendants, have delayed their responses to initial discovery requests, *id.*; *Applied Sys. Inc.*, 1997 WL 639235, at *2 (party failed to respond to discovery requests for two months); on parties that, like Defendants did by refusing to participate in discovery in the absence of a stay, have blatantly ignored a local rule, *Allstate Life Ins. Co. v. First Trust Nat'l Ass'n*, No. 92-civ-4865, 1993 WL 138844, at *2–3 (S.D.N.Y. Apr. 27, 1993); and on parties that, like Defendants, unreasonably delayed providing a privilege log, provided an inadequate privilege log, or withheld documents not included on the privilege log, *Kaufman v. Am. Express Travel Related Servs. Co.*, No. 07-C-1707, 2011 WL 13262362, at *3 (N.D. Ill. Jan. 10, 2011) (party refused to provide privilege log for three months after giving responses); *Ritacca*, 203 F.R.D. at 305; *John Labatt Ltd. v. Molson Breweries*, No. 93-cv-75004, 1995 WL 23603, at *1 (S.D.N.Y. Jan. 20, 1995) (party withheld documents and did not include them on original privilege log). If waiver was an appropriate sanction for parties engaging in one or a handful of these abuses, it is certainly appropriate for Defendants, who have strung them together into two years of unjustifiable delay. *See Bess v. Cate*, No. 2:07-cv-1989, 2008 WL 5100203, at *5 (E.D. Cal. Nov. 26, 2008) (imposing waiver on party that did

---

[9] Defendants' misconduct also warrants forfeiture of the attorney–client privilege assertions of their former client, Lisa Miller. *See Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1068 ("A litigant chooses counsel at his peril … and here, as in countless other contexts, counsel's disregard for his professional responsibilities can lead to extinction of his client's claim.").

not serve responses until ten weeks after discovery requests were propounded, failed to produce a privilege log at that time, and made "blanket and dilatory objections").[10]

Indeed, privilege waiver is a particularly apt sanction for this case. Defendants are themselves lawyers who are accused of conspiring with their client to violate Plaintiffs' parental and civil rights. There is therefore a serious risk that Defendants will misuse the attorney–client privilege and work-product doctrine to conceal inculpatory communications with their co-conspirator client, who remains a fugitive. Indeed, this case raises numerous privilege issues that have yet to be litigated due to Defendants' ongoing failure to provide adequate privilege logs. *See, e.g.*, Pls.' First Mot. to Compel 9–10, ECF 361 (discussing the likely applicability of the crime–fraud exception to some of Defendants' privilege assertions). The resolution of each of these issues will inevitably provide Defendants with yet more opportunities for delay and obfuscation. Sanctioning Defendants for their pattern of discovery abuse obviates the need to resolve these issues and ensures that Defendants cannot drag this litigation out longer than they already have.

---

[10] Defendants' assertion that they should be allowed to cure any defects in the January 10, 2020, privilege log, *see* Resp. 36–37, ECF 484, yet again misconstrues the point of Plaintiffs' motion. Plaintiffs seek waiver of the privilege as a sanction for Defendants' two-year-long pattern of discovery abuse, of which the repeated failure to provide adequate privilege logs is but one example. *See* Mot. 8–9, ECF 472. The standard for imposing waiver of the privilege as a sanction differs from that for determining that the privilege has been waived solely due to the failure to provide adequate information to justify assertion of the privilege. *In re Application of Aenergy, S.A. Pursuant to 28 U.S.C. § 1782*, No. 19-MC-542, 2020 WL 1659834, at *5 (S.D.N.Y. Apr. 3, 2020). Granting Defendants an opportunity to cure after finding that they had engaged in "foot-dragging" and a "cavalier attitude toward following court orders and the discovery rules" would give them yet another opportunity to delay. *Ritacca*, 203 F.R.D. at 335. "Limiting the remedy to the belated preparation of a privilege log effectively tells practitioners they can flout the Court's Rules and incur no sanction other than an Order directing compliance with the rules." *FG Hemisphere Assoc. v. Republique du Congo*, No. 01-civ-8700, 2005 WL 545218, at *6 n.1 (S.D.N.Y. Mar. 8, 2005) (quoting *PKFinans Int'l Corp. v. IBJ Schroeder Leasing Corp.*, No. 93-civ-5375, 1996 WL 525862, at *4 (S.D.N.Y. Sept. 17, 1996)).

**II.     Defendants' Repeated Abuse of the Meet and Confer Requirements to Obstruct and Delay Discovery Shows the Futility of Yet Another Conference**

Against the backdrop of Defendants' two-year pattern of discovery abuse and delay, their

insistence that Plaintiffs should have met and conferred with them before filing the second

motion to compel is absurd, just one more attempt to string Plaintiffs along and distract the Court

from Defendants' misconduct. The fundamental point of Plaintiffs' motion is that Defendants

have demonstrated, through their persistent abuse of the discovery process, that they cannot be

trusted to engage in that process in good faith. *See* Mot. 9, ECF 472. For their part, Defendants

believe that the purpose of this litigation is literally to destroy them. *See* Defs.' Resp. to Pls.'

Mot. to Compel 2, ECF 374. In this context, requiring Plaintiffs to confer with Defendants prior

to filing the second motion to compel would have been futile.

Courts routinely waive the meet-and-confer requirement of Rule 37(a)(1) of the Federal

Rules of Civil Procedure when "an attempt to compromise would have been clearly futile."

*Elhannon, LLC v. F.A. Bartlett Tree Expert Co.*, No. 2:14-cv-262, 2017 WL 1382024, at *9 (D.

Vt. Apr. 18, 2017) (Sessions, J.) (quoting *Care Envtl. Corp. v. M2 Techs., Inc.*, No. CV-05-1600,

2006 WL 1517742, at *3 (E.D.N.Y. May 30, 2006)). Courts consider the history of negotiations

between the parties, *id.* (citing *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 CIV

7590, 1998 WL 67672, at *3 (S.D.N.Y. Feb. 18, 1998)), the level of animosity between the

parties, *id.*, and the parties' history of compliance with previous court orders, *Prescient Partners,

L.P.*, 1998 WL 67672, at *3 (citing *Reidy*, 169 F.R.D. at 490).

Over the past two years, Plaintiffs have engaged in multiple conferences with Defendants

about a number of discovery issues. Each conference has taken weeks to schedule. *See, e.g.*,

Letter from Tyler Clemons to Horatio Mihet 1, ECF 361-5 (conference to discuss January 10,

2019 production was begun on February 11, 2019, and not finished until April 12, 2019); Email

17

from Horatio Mihet to Tyler Clemons 1, ECF 472-2 (email sent on November 10, 2019, but conference not set until November 25, 2019). None has resolved discovery issues sufficient to avoid the Court's intervention. *See, e.g.*, Pls.' Mot. to Compel Defs. Liberty Counsel & Rena Lindevaldsen, ECF 361 (asking Court to resolve issues raised during multiple conferences); Deposition Mot. 2–3, ECF 432 (asking Court to resolve dispute about depositions discussed during the November 25, 2019 conference).

Defendants' refusal to meet and confer during the pendency of Plaintiffs' motion to compel unless Plaintiffs withdrew their motion demonstrates that Defendants seek only to use the meet-and-confer requirement for further delay. *See* Email from Tyler Clemons to Horatio Mihet (Mar. 13, 2020) 4, ECF 484-5. Specifically, Plaintiffs agreed to withdraw their motion if negotiations resulted in a suitable resolution of the issues before Defendants' deadline to respond. *Id.* This offer balanced Plaintiffs' ongoing willingness to work with Defendants against Plaintiffs' unwillingness to grant Defendants yet another open-ended opportunity to delay and obstruct discovery. Rather than accept Plaintiffs' willingness to negotiate, however, Defendants flatly refused to meet and confer unless and until Plaintiffs withdrew their motion. *See* Email from Horatio Mihet to Tyler Clemons (Mar. 13, 2020) 1, ECF 484-5.

Defendants' assertion that negotiations would have obviated the need for the Court's involvement is further undercut by the stridency of their insistence that their privilege log is indeed sufficient. *See* Resp. 33–35, ECF 484. "Indeed," Defendants insist, "it is difficult for Defendants to imagine what more they could say about the withheld documents, without disclosing their contents." *Id.* at 34. Given the history of negotiations between Plaintiffs and Defendants, it strains credulity to believe that Defendants would have abandoned this insistence on a phone call with Plaintiffs. And it is the definition of futility to require Plaintiffs to spend

weeks attempting to set up that phone call for Defendants merely to say out loud to Plaintiffs what Defendants made clear over email and in their brief in response to this motion. *See, e.g.*, *Reidy*, 169 F.R.D. at 491 (holding that "forc[ing] the plaintiff to attempt to locate his adversary, who was out of town for two weeks, only to have defense counsel contest the plaintiff's position, and then cause the parties to wind up back in court litigating the same issue … would have added an unnecessary layer of time and expense only to arrive at the same destination"). The only purpose such a meeting would serve is delay, which, of course, is precisely what Defendants want.

## III.    Defendants' Cross-Motion for Sanctions Should Be Denied

Finally, Defendants argue that it is Plaintiffs whom the Court should sanction. *See* Resp. 32–33, ECF 484. This argument is meritless.

Defendants' first basis for this assertion, Plaintiffs' supposed failure to confer with them about the January 10 privilege log, is negated by Plaintiffs' reasonable and good faith belief that any such conference would have been futile and would only have contributed to Defendant's strategies of gamesmanship and delay. *See supra* Section II. Courts have decided not to issue sanctions for failure to comply with the requirement to confer when a meet-and-confer would have been futile. *See Star-Brite Distrib., Inc. v. Kop-Coat, Inc.*, 664 F. Supp. 2d 1246, 1258 (S.D. Fla. 2009).[11]

---

[11] The cases cited by Defendants are inapposite. First, none of them involved situations where a meet-and-confer would have been futile. Second, all of them involved misconduct well beyond a mere failure to meet and confer prior to filing a discovery motion. In *Local 30, Int'l Union of Operating Eng'rs, AFL-CIO v. Wood Grp. Power Operations, LLC*, No. CV 13-2499, 2017 WL 9939042, *3–4 (E.D.N.Y. Dec. 22, 2017), the court noted that the sanctioned party's behavior "borders on the contumacious" and previously "had failed to comply with the [Court's] decision and its earlier orders." In *Window Headquarters, Inc. v. Mat Basic Four, Inc.*, No. 91 Civ. 1816(MBM), 1996 WL 63046, *1 (S.D.N.Y. Feb. 9, 1996), in a two-paragraph opinion, a $200 sanction was imposed in part because the party's motion for default judgment was "meritless" and "without basis." In *Campbell v. U.S. Dep't of Justice*, 231 F. Supp. 2d 1, 13–16 (D.D.C.

The second basis—for which Defendants notably cite no legal authority—is that Plaintiffs' motion is "premised on demonstrable misrepresentation and half-truths designed to mislead the Court." Resp. 22–24, ECF 484. Plaintiffs deny making any misrepresentations or stating any half-truths to the Court. For example, Defendants label as a "half-truth" Plaintiffs' omission of the fact that the communication in which Plaintiffs proposed an initial deadline to comply with the Court's order on Plaintiffs' first motion to compel was sent by U.S mail instead of email. But Defendants' narrative omits the fact that they did not consent to email service until three weeks after this communication was sent. *See supra* note 2.

Regardless, the Court should not impose sanctions on Plaintiffs because the evidence does not clearly and convincingly show that Plaintiffs "knowingly submitted a materially false or misleading pleading, or knowingly failed to correct false statements, as part of a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly." *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016) (quoting *Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu*, No. 11-cv-4383, 2015 WL 4389893, at *17 (S.D.N.Y. July 10, 2015)). Even viewing the accusations of "half-truths" and "misrepresentations" in the light most favorable to Defendants, those accusations clearly do not rise to the standard of "a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly."

More fundamentally, Defendants' baseless sanctions motion is yet one more example of their abusive discovery practices. Defendants want to drag Plaintiffs into petty squabbles over

---

2002), fees and costs were awarded not because the movant's failure to meet and confer, which the court excused to reach the merits of the motion, but because the motion was substantively decided against the movant. None of the courts in the nine cases Defendants cite imposed a monetary sanction on, or ordered the payment of costs and fees by, a party solely for having filed a motion without first having met and conferred. *See* Resp. 30–31, ECF 484.

who-said-precisely-what-and-when in the hopes of frustrating the Court and deflecting attention from their overall pattern of abuse and delay. Above all, Defendants want to distract the Court from the key facts that they cannot deny: Until March 9, 2020, fully 621 days after receiving the Plaintiffs' Requests and fourteen days after Plaintiffs filed their second motion to compel, Defendants produced only five pages of documents that are not webpages, communications with Plaintiffs' own counsel, or copies of documents in the public record. Far from bringing Defendants into compliance with their discovery obligations, the March 9 production is overwhelmingly filler, perpetuates Defendants' inadequate privilege assertions, contains random inadequately unsupported redactions, and still does not account for all documents responsive to Plaintiffs' Requests. It is Defendants' repeated misconduct that is worthy of the Court's sanctions, not Plaintiffs' attempts to end it.

## CONCLUSION

For these reasons, the Court should compel Defendants (1) to produce the entirety of their paper and electronic litigation files regarding Lisa Miller, irrespective of their privilege claims, within 30 days of the Court's order on this motion; (2) to produce documents, irrespective of form or privilege claims, from all other locations that reasonably might contain documents responsive to Plaintiffs' Requests as compelled by the Court's order, ECF 395, within 30 days of the Court's order on this motion; (3) to file sworn affidavits that enumerate the locations, both electronic and digital, into which Defendants have conducted reasonable inquiries for responsive documents, and that certify that there are no other locations in which such documents reasonably might exist, within 30 days of the Court's order on this motion; and (4) to pay Plaintiffs' costs and fees in preparing both this motion and Plaintiffs' first motion to compel, ECF 361.

Respectfully submitted.

April 14, 2020

/s/ Fritz H. Langrock
Frank H. Langrock
Langrock Sperry & Wool, LLP
111 S. Pleasant Street
P.O. Drawer 351
Middlebury, Vermont 05753-0351
Phone: (802) 388-6356
Fax: (802) 388-6149
Email: flangrock@langrock.com

Sarah Star
Sarah Star, PL
P.O. Box 106
Middlebury, Vermont 05753
Phone: (802) 385-1023
Email: srs@sarahstarlaw.com

Scott D. McCoy
Southern Poverty Law Center
P.O. Box 10788
Tallahassee, Florida 32302
Phone: (850) 521-3042
Fax: (850) 521-3001
Email: scott.mccoy@splcenter.org

J. Tyler Clemons
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Phone: (504) 526-1530
Fax: (504) 486-8947
Email: tyler.clemons@splcenter.org

Diego A. Soto
Maya G. Rajaratnam
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama 36104
Phone: (334) 956-8200
Fax: (334) 956-8481
Email: diego.soto@splcenter.org
Email: maya.rajaratnam@splcenter.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the foregoing document was served on the following

counsel of record and unrepresented parties through the Court's CM/ECF system:

Richard Boyer
Integrity Law Firm, PLLC
*Counsel for Defendant Linda M. Wall*

Anthony R. Duprey
Neuse, Duprey & Putnam, PC
*Counsel for Defendants Liberty Counsel, Inc. and Rena M. Lindevaldsen*

Roger K. Gannam
Liberty Counsel
*Counsel for Defendants Liberty Counsel, Inc. and Rena M. Lindevaldsen*

Adam S. Hochschild
Hochschild Law Firm, LLC
*Counsel for Defendant Linda M. Wall*

Brooks G. McArthur
Jarvis, McArthur & Williams, LLC
*Counsel for Defendant Kenneth L. Miller*

Horatio G. Mihet
Liberty Counsel
*Counsel for Defendants Liberty Counsel, Inc. and Rena M. Lindevaldsen*

Daniel Joseph Schmid
Liberty Counsel
*Counsel for Defendants Liberty Counsel, Inc. and Rena M. Lindevaldsen*

Norman C. Smith
Norman C. Smith, PC
*Counsel for Defendant Linda M. Wall*

Michael J. Tierney
Wadleigh, Starr & Peters, PLLC
*Counsel for Defendant Timothy D. Miller*

Defendant Philip Zodhiates

and on the following unrepresented parties by United States mail:

      Defendant Victoria Hyden
      1212 Saint Cloud Avenue
      Lynchburg, Virginia 24502

      Defendant Response Unlimited, Inc.
      c/o William Zodhiates
      274 Shalom Road
      Waynesboro, Virginia 22980

April 14, 2020                     /s/ J. Tyler Clemons
                                   J. Tyler Clemons
                                 *Counsel for Plaintiffs*