UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JANET JENKINS, ET AL.,            :
                                  :
        Plaintiffs,               :
                                  :
        v.                        :   Case No. 2:12-cv-184
                                  :
KENNETH L. MILLER ET AL.,         :
                                  :
        Defendants.               :

ORDER RE: PLAINTIFFS' REVISED SECOND MOTION TO COMPEL DEFENDANTS LIBERTY COUNSEL, INC. AND RENA LINDEVALDSEN TO COMPLY WITH PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION AND MOTION TO COMPEL DEFENDANTS LIBERTY COUNSEL, INC. AND RENA LINDEVALDSEN TO PRODUCE AT&T RECORDS AND RENEWED CROSS-MOTION FOR SANCTIONS

(ECF 591, 582, 608)

Plaintiff Janet Jenkins ("Jenkins") has brought suit against several individuals and organizations, alleging that they kidnapped and conspired to kidnap Isabella Miller-Jenkins ("Isabella"). Jenkins asserts claims of commission of, and conspiracy to commit, an intentional tort of kidnapping and conspiracy to violate civil rights under 42 U.S.C. § 1985(3). Before the Court now are two motions to compel and a cross-motion for sanctions. On September 14, 2020 the Court ruled on Plaintiffs' second motion to compel. ECF No. 563. The Court ordered Defendants to submit an affidavit describing their efforts to comply with discovery requests and listing their use of ESI terms, and asked Plaintiffs to submit a revised motion to

compel after the submission of this affidavit, identifying the areas still missing as well as parts of the privilege log they considered to be inadequate. Defendants filed the affidavit, ECF No. 580, and Plaintiffs proceeded to file these two motions to compel, ECF Nos. 582, 591. The parties each asked for sanctions to be imposed. ECF Nos. 591, 608. The Court held two hearings discussing the discovery issues between the parties and allowed them to submit supplemental briefing. The Court has considered all of the parties' written submissions as well as the parties' remarks during the hearings on December 21, 2020 and March 8, 2021. For the reasons set forth below, the Court **grants** in part and **denies** in part Jenkins' second motion to compel (ECF No. 591), and **grants** in part and **denies** in part Jenkins' motion to compel Liberty counsel, Inc. and Rena Lindevaldsen to produce AT&T records (ECF No. 582). The Court also **denies** the cross-motion for sanctions.

I. **Legal Standard**

Federal Rule of Civil Procedure 26(b)(1) states that:

*Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be

admissible in evidence to be discoverable.

*Id.; see also SEC v. Rajaratnam*, 622 F.3d 159, 181 (2d Cir. 2010). Federal district courts have broad discretion in deciding motions to compel. *See Grant Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999). "[A]s in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). "Discovery rules are to be accorded a broad and liberal treatment . . . to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark." *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (internal quotation marks omitted). Yet,

> [A] district court [may] limit [t]he frequency or extent of use of the discovery methods otherwise permitted under [the federal] rules if it determines that (1) the discovery sought is unreasonably cumulative or duplicative, or more readily obtainable from another source; (2) the party seeking discovery already has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.

*In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir, 2003) (citing Fed. R. Civ. P. 26(b)(2)). "The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden [or] expense . . .

3

. bears the burden of proving the discovery is in fact . . . unduly burdensome and/or expensive." *Citizens Union of New York v. Attorney General of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).

**II.   Analysis**

   **A. Renewed Second Motion to Compel**

      i.   Further Document Searches

At this time, Defendants have gone through two separate searches with respect to Jenkins' first requests for production. Initially, Defendants searched for Janet, Lisa, and Isabella's full names, and Jenkins objected to this search. At its December hearing, the Court instructed Defendants to undergo another search of one of the search strings suggested by Jenkins (Lisa AND Janet) AND NOT ("Lisa Miller" or "Janet Jenkins" or "Isabella Miller" or "Isabella Miller-Jenkins"), and to submit an affidavit describing the process of the search.

On January 7, 2021, Defendants' attorney Horatio G. Mihet submitted an affidavit. ECF No. 630. In the affidavit, Mihet said that before the hearing he performed one of the search strings suggested by Plaintiffs: (Lisa AND Janet) AND NOT ("Lisa Miller" or "Janet Jenkins" or "Isabella Miller" or "Isabella Miller-Jenkins"). He said that there were over 5,000 hits, and he spent seven and a half hours going through them and every relevant document had already been produced or privilege-logged.

4

He then performed a new search: (Lisa AND Janet AND Isabella) AND NOT ("Lisa Miller" or "Janet Jenkins" or "Isabella Miller" or "Isabella Miller-Jenkins"). This search produced 1,610 hits, and 1,459 were false positives. Of the 151 left, 84 were communications that post-dated the filing of this lawsuit.[1] The remaining 67 had all been produced or privilege-logged. Going through these required 37 hours of staff and attorney time. Mihet further wrote that "Liberty Counsel's document production was comprehensive and complete, irrespective of the ESI search terms used. This is why using additional search terms at this juncture does not reveal any un-produced or un-logged documents. . . . This is why Defendants are confident . . . that Defendants have produced all relevant, non-privileged documents in their custody, possession or control." *Id.* at 5. Jenkins responds that she does "not have access to Defendants' email accounts to test the adequacy of their proposals, and Defendants cannot get off scot-free just because Plaintiffs' initial proposals seem unworkable." Jenkins asks for more searches of different combinations with nicknames and key terms (such as Izzy, or their aliases (Lydia / Sarah), and Vermont, visitation, and Virginia).

---

[1] The Court notes that Jenkins has pointed out that Defendants could easily limit their searches within Outlook to the relevant dates.

5

The Court will not order Defendants to undergo further searches with varying terms. Spending more time on these searches does not appear to be proportional to the needs of the case, especially where Defendants have represented that they are confident they have produced all of the records within their possession. "Generally, a party's good faith averment that the items sought simply do not exist . . . should resolve the issue of failure of production since one cannot be required to produce the impossible." *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (citations and internal quotation marks omitted).

However, the Court orders Defendants Liberty Counsel, Inc. and Rena Lindevaldsen to run two additional rounds of searches. (1) Defendants must run the date searches listed on pages 7-9 of ECF No. 632; (2) the Court orders Defendants to search for Lisa's email addresses within the body of their emails, ECF No. 632 at 5. With regard to these two additional searches, the Court finds that Jenkins appears to have made a compelling showing that a Rule 26 proportionality analysis should allow for discovery. Additionally, the Court orders Defendants to provide Jenkins with an affidavit containing a list of all of the email accounts they searched, as well as the exact calendar accounts searched for RFPs 36 and 48. Without this information, Jenkins

6

will be unable to understand where potential gaps in her knowledge lie.

                ii.    Privilege Logs

The Court has reviewed the privilege logs, and agrees with Jenkins that several descriptions must be edited to add more specificity. The Court advises Defendants that the Court has already decided that communications between these parties are relevant to the claim, ECF No. 395 at 6-7, and that if non-privileged communications are mixed in with the privileged communications, then the documents must be redacted and produced. Defendants cannot withhold an entire document if only one part of it is privileged. As the Court wrote in its Order on Plaintiffs' motion to compel on October 29, 2019:

> Plaintiffs seek this information for the important purpose of supporting allegations that Defendants communicated with Lisa Miller regarding the conspiracy to kidnap Isabella, and to demonstrate the nature and evolution of their relationship. ECF 380 at 3. This is a key factual inquiry in this case, which cannot be supported without the use of non-public information procured through the discovery process.

ECF No. 395 at 9. With this warning in mind, the Court has reviewed the privilege log and finds that certain entries must be edited to provide more specific descriptions.[2]

---

[2] The Court advises Defendants that even though it has singled out certain entries in this Order, *all* entries must comply with the Order and Defendants should make sure that they have not used clever wording in other entries to keep out relevant, unprivileged documents.

7

| No. | Document Type | Current Subject Description | Court Order |
|---|---|---|---|
| 82 | Correspondence | Email correspondence requesting advice and providing information and instructions to counsel regarding visitation issues in custody litigation | Vague as to subject matter of the advice. For example, if the "advice" would have supported allegations that Defendants communicated regarding the conspiracy to kidnap Isabella, this is insufficient. |
| 83 | Correspondence | Email correspondence requesting advice and providing information and instructions to counsel regarding visitation issues in custody litigation | Same. |
| 103 | Correspondence | Email correspondence chain advising client of potential outcomes and requesting information and instruction from client. | This entry is vague, especially as to what potential outcomes are being discussed (i.e., is there a link to the alleged kidnapping?). There must be enough information to allow Jenkins to raise an objection based upon the crime-fraud exception to the attorney-client privilege, if such an exception would be applicable. |
| 104 | Correspondence | Email correspondence chain further advising client of potential outcomes | Same. |

|     |                | and requesting client intention and instructions. |       |
|-----|----------------|---------------------------------------------------|-------|
| 105 | Correspondence | Email correspondence chain further advising client of potential outcomes and requesting client intention and instructions. | Same. |
| 106 | Correspondence | Email correspondence chain further advising client of potential outcomes and requesting client intention and instructions. | Same. |
| 108 | Correspondence | Email correspondence chain confirming client intentions and instructions, and advising client of potential outcomes and legal consequences of same. | Same. |
| 109 | Correspondence | Email correspondence chain confirming client intentions and instructions, advising client of potential outcomes and legal consequences of same, and receiving further instructions and questions from client | Same. |
| 110 | Correspondence | Email correspondence chain confirming information and instructions from client regarding visitation and confirming advice to client regarding potential outcomes | Same. |

| | | and legal consequences of same | |
|---|---|---|---|
| 126 | Correspondence | Email correspondence providing counsel with instructions for representation in custody litigation and requesting information and advice from counsel. | Vague as to subject matter of information and advice. For example, if the "advice" would tend to demonstrate that Lisa Miller is crossing a line between asking advice on custody representation and asking advice on kidnapping, this is insufficient. |

*See* ECF No. 618-3.

### B. Motion to Compel Production of AT&T Records

Jenkins has also moved to compel Liberty Counsel, Inc. and Rena Lindevaldsen to produce telephone records that AT&T gave to them. The records disclose the date, time, and duration of calls and text messages between certain phone numbers one year before and after the kidnapping at issue, but do not disclose the substance of the calls or texts. There are 7,508 pages of call and text-message logs for two Liberty Counsel phone numbers and two Lindevaldsen phone numbers, and Defendants have possession of the logs but object to making specific redactions because of their volume. Defendants worry that the records could be used to "reveal the identity of clients, donors, constituents and others, which are privileged from disclosures, as well as the

constitutionally protected activities of [Defendants] which have nothing to do with this case." Initially Jenkins agreed to provide this list, but then decided she wanted the full records. The parties also dispute the potential privacy and First Amendment roadblocks in the way of producing the AT&T records. Defendants say they would be willing to produce either: (1) the records for any telephone numbers connected to the case that Jenkins provides in a list, or (2) the entire records, with the first six digits of all calls and texts redacted. ECF No. 600 at 18. Jenkins argues that both of these proposals would require "Plaintiffs' attorneys to repeatedly reveal to Defendants their thought processes and theories about the case every time they need to ask about additional numbers or when justifying any number's relevance." At the hearing on March 8, 2021, counsel for Jenkins explained to the Court that they absolutely would not misuse the records, and would view them subject to a protective order. Counsel for Jenkins listed several potential uses for the cellphone records, including comparing them against other cellphone records from known parties to identify new intermediaries and locate possible landline numbers.

    The Court disagrees with Defendants that counsel for Jenkins wishes to obtain these records for the sole purpose of "harassing" Defendants. However, the Court disagrees with Jenkins that the vast amount of records requested is

11

proportional to the needs of the case. *See Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank,* No. 15-civ-0293 (LTS)(JCF), 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (discussing importance of proportionality of discovery after 2015 amendment to Fed. R. Civ. P. 26(b)(1)); *see also Osucha v. Alden State Bank*, NO. 17CV1026V, 2019 WL 6783289, at *2 (W.D.N.Y. Dec. 12, 2019) (same). The Court discussed Jenkins' need for the records at length during the March 8, 2021 hearing, and determined that though Jenkins has shown why records associated with certain numbers are relevant, the entirety of the records requested is more akin to a fishing expedition. *See Williams v. Fire Sprinkler Assocs. Inc.*, No. 15-CV-3147, 2017 WL 1155771, at *2 (E.D.N.Y. Mar. 27, 2017) ("The party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." (quoting *Barbara v. MarineMax, Inc.*, No. 12-CV-368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013))). The *entire* cellphone records of numbers interacted with within the time frame of two years, for four people, is a discovery request large enough that the Court finds it to be burdensome and an abuse of the discovery process. The Court orders that Jenkins be allowed access to the relevant, proportional cellphone records by the alternate method of submitting a list of names or numbers based upon a good faith determination that such records are linked to the case to

12

Defendants, who must then produce all phone records for those numbers/names within the two years. At the hearing on March 8, 2021, Defendants agreed to this compromise. Jenkins has since moved to ask the Court to clarify that she be allowed to submit both lists of names and cellphone numbers to Defendants, so that she can receive records for names she cannot associate a number with and vice-versa. ECF No. 658. Defendants have asked the Court that Plaintiff only be allowed to ask for names and associated phone numbers that have been identified to have a reasonable connection. ECF No. 659. The Court orders that Jenkins be allowed to submit a list of names or numbers based upon a good faith determination that such records are linked to the case to Defendants, who must then produce all phone records for those numbers/names within the two years.

### C. Renewed Cross-Motion for Sanctions

In her revised motion to compel, Jenkins also argued that Defendants' "sluggish, bad-faith conduct warrants sanctions." ECF No. 591. Jenkins asked for sanctions including that the Court hold that Defendants have waived privilege claims over withheld documents, that the Court give adverse-inference instructions, and that the Court preclude Defendants from making certain arguments. Defendants then renewed their own cross-motion for sanctions against Plaintiffs for "continually filing unnecessary and unmerited discovery motions, based on deceptive

narratives and fabrications." ECF No. 608. Defendants argued that their discovery responses were not "sluggish" but were in fact faster than Plaintiffs', that their searches were complete and comprehensive, and that there was no spoliation of evidence. They argue that they should not be sanctioned, but that Plaintiffs should be sanctioned for filing their revised motion to compel, which Defendants say was senseless, needless and meritless.

The discovery issues raised by this case have been complex in nature, and the parties have requested extensive guidance from this Court in their resolution. At this time, the Court does not see fit to impose sanctions on either party. The Court does not find that Defendants' responses or the time spent in making those responses rises to a sanctionable level of bad-faith or purposeful sluggishness. Nor does the Court find that Plaintiffs should be sanctioned for filing their revised motion to compel, even though they did not confer before filing, because the Court specifically instructed Plaintiffs to submit such a motion. ECF No. 563.

### III. Conclusion

For the reasons set forth below, the Court **grants** in part and **denies** in part Jenkins' revised second motion to compel (ECF No. 591), and Jenkins' motion to compel Liberty Counsel, Inc.

and Rena Lindevaldsen to produce AT&T records (ECF No. 582) and the Court **denies** the cross-motion for sanctions (ECF No. 608).

DATED at Burlington, in the District of Vermont, this 24th day of March, 2021.

<u>/s/ William K. Sessions III</u>
William K. Sessions III
U.S. District Court Judge