UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JANET JENKINS, ET AL.,                    :
                                          :
          Plaintiffs,                     :
                                          :
v.                                        :    Case No. 2:12-cv-184
                                          :
KENNETH L. MILLER, ET AL.,                :
                                          :
          Defendants.                     :

## OPINION AND ORDER

Before the Court can rule on the parties' recently-filed motions for summary judgment, it must address two pending discovery motions: Plaintiff Janet Jenkins' motion to compel Defendants Liberty Counsel and Rena Lindevaldsen to produce certain documents, ECF No. 789, and former Defendant Lisa Miller's motion for a protective order, ECF No. 795. For the following reasons, both motions are granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

This case's lengthy factual and procedural history is detailed elsewhere. The Court assumes the parties' familiarity with those facts.

In brief, Jenkins filed this lawsuit against Lisa Miller and other associated individuals in 2012, alleging custodial interference and conspiracy to deprive Jenkins of equal protection of the laws. ECF No. 789 at 2. On March 21, 2023,

Miller and Jenkins signed a confidential settlement and release agreement, in which Miller waived her attorney-client privilege "in relation to the representation of her by Liberty Counsel or Rena M. Lindevaldsen . . . regarding: (1) communications in or after 2009; (2) communications regarding whether Miller should, must, or would comply with then-existing or future court orders over the custody or visitation of Isabella Miller; and (3) Miller's plan to depart the United States with Isabella, her actual departure and her remaining outside the jurisdiction of the United States." ECF No. 718-1 at 17. The Court then amended the discovery schedule for the case, ECF No. 740, and discovery resumed.

Pursuant to prior court orders and the recent settlement, Jenkins sought production of several documents outlined in a November 1, 2023 email to Defendants' counsel Horatio Mihet. ECF No. 789-3. These included (1) journals written by Miller prior to her departure from the United States but kept by Rena Lindevaldsen, *id.* at 3; and (2) Defendants' communications that had been previously withheld on the basis of privilege. *Id.* at 5-6. Jenkins specifically cited Miller's recent waiver of attorney-client privilege as justification for this request. *Id.*

On December 30, 2023, Defendants produced some additional documents and provided updated privilege logs. Over the course of the next six months, Jenkins deposed several Defendants. ECF

No. 789 at 4. She claims that in these depositions, Defendants represented that they knew of Miller's absence "on or around October 1-3, 2009" and attempted to contact Miller thereafter. *Id.* Jenkins claims that she then reviewed Defendants' privilege logs and realized that several of the withheld documents were from roughly this time period. She believes that these withheld documents are "highly likely to contain critical factual material regarding Defendants' knowledge of Ms. Miller's intent to comply with court orders and/or to flee the court's jurisdiction; Defendants' attempts to contact Ms. Miller; and their knowledge of Ms. Miller's whereabouts." *Id.* at 5. The instant motion concerns production of those documents.

It also concerns production of Miller's journals from 2004-2008. Jenkins knew that the journals were "entrusted to Ms. Lindevaldsen" because Lindevaldsen's book, called *Only One Mommy*, claims to be based on Miller's journals which were left with Lindevaldsen. ECF No. 789-3 at 3. She initially requested production of those journals in a motion to compel filed in July of 2019, ECF No. 361, which the Court granted in October of 2019. ECF No. 395. For reasons unknown to the Court, Defendants never produced those journals.

Accordingly, Jenkins again requested production of the journals in her November 1, 2023 request for production. In response, Liberty Counsel Defendants stated that

3

> At the time of her previous document productions, Rena Lindevaldsen performed a diligent search and was unable to locate any diaries of Lisa Miller. While the case was stayed, Ms. Lindevaldsen moved from her prior residence, and in the process of packing her household she discovered a set of diaries that Lisa Miller had given her prior to Lisa Miller's disappearance. During the stay, we provided these documents to Lisa Miller's counsel, Anthony Biller. Please direct further inquiries and requests on this subject to him.

ECF No. 789-4 at 7.

Jenkins' counsel later deposed Defendant Lindevaldsen. On March 6, 2024, Lindevaldsen testified that she made copies of Miller's journals. ECF No. 789-8 at 37. She explained that "[t]he originals were delivered to Lisa Miller's counsel," but that she did not "trust FedEx, UPS, or the mail system. So even though it was being delivered – and they also had been in my possession and so I thought we needed to keep a copy of them." *Id.* Pursuant to that deposition testimony, Jenkins again requested copies of Miller's journals in an April 1, 2024 email, citing her prior requests for production. ECF No. 789-2 at 2.

Jenkins has now filed a motion to compel production of the journals and Liberty Counsel communications. ECF No. 789. Liberty Counsel Defendants have responded. Miller has also filed a response and motioned for a protective order. ECF No. 795. Those motions are ripe for the Court.

## DISCUSSION

A.   **Legal Standard**

4

The Federal Rules of Civil Procedure allow discovery of "any nonprivileged matter that is relevant to the party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "A district court has wide latitude to determine the scope of discovery." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008). A court may limit discovery for a number of reasons, including if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C).

**B.   Meet-and-Confer Rules**

Liberty Counsel and Lindevaldsen (together "Defendants," unless distinguished) contend that the Court should deny Jenkins' motion to compel due to violation of the Court's meet-and-confer rule. Local Rule 7(a)(7) stipulates that any party filing a non-dispositive motion must certify that it has made "a good faith attempt to obtain the opposing party's agreement to the requested relief." Federal Rule of Civil Procedure 37(a)(1) imposes a similar obligation.

Jenkins satisfied her meet-and-confer obligations. On April 1, Jenkins' counsel (Andrew O'Connor) sent an email offering to meet and confer with Defendants regarding the discovery requests. ECF No. 789-2 at 2. Mihet's April 9 email responded that Defendants would provide a response "by April 15." ECF No. 800-1 at 9. Mihet did not offer to meet-and-confer, nor did he

5

express a belief that further dialogue was necessary (or would be helpful) for resolution of the outstanding discovery disputes. After the April 15 discovery deadline elapsed, O'Connor offered to meet and confer sometime between April 16 and 23, ECF No. 800-1 at 7 – a request that Mihet again rejected. *Id.* at 5. The Court finds that O'Connor's efforts satisfy both the local and federal rules' requirements that parties make "good faith" attempts to resolve non-dispositive issues without Court intervention.[1]

The Court will proceed to the merits of Jenkins' motion.

**C.   The Miller Journals**

Defendants argue that the Court should permit Miller to challenge production of those documents herself. ECF No. 800 at 6. Jenkins does not dispute that Miller has standing to object to production of the journals. *See generally* ECF No. 804. The following discussion evaluates Miller's arguments and concludes that the journals should be produced.

1. Privilege

Miller asserts that much of the information contained in her journals is privileged. Her settlement with Jenkins included

---

[1] The Court further finds that Jenkins' prior discussions with Miller and Miller's counsel regarding the Miller journals do not bear on the question of whether she complied with the meet and confer rules here. ECF No. 800 at 5. Jenkins now seeks discovery of information from different parties. She is entitled to make that request.

a limited waiver of attorney-client privilege for her communications with Liberty Counsel and Lindevaldsen. *See* ECF No. 795 at 2; ECF No. 718-1 at 17. That waiver included "(1) communications in or after 2009; (2) communications regarding whether Miller should, must, or would comply with then-existing or future court orders over the custody or visitation of Isabella Miller ('Isabella'); and (3) Miller's plan to depart the United States with Isabella, her actual departure and her remaining outside the jurisdiction of the United States." ECF No. 718-1 at 17. Miller maintains that the "legal communications reflected in these journals fall outside the scope of this waiver." ECF No. 795 at 3.

First, Miller did not waive all privilege objections to production of her journals when she did not directly assert privilege in response to Jenkins' initial document subpoena. ECF No. 804 at 7. Jenkins relies on *Large v. Our Lady of Mercy Med. Ctr.*, No. 94 CIV. 5986(JGK)THK, 1998 WL 65995 (S.D.N.Y. Feb. 17, 1998) for her waiver argument. In that case, the producing party previously made a bevy of objections (not including privilege) to production of certain audiotapes and was compelled to produce them in their entirety. The *Large* court then concluded that failure to raise the privilege objection in the earlier litigation over the produced documents waived later assertion of the objection. *Id.* at *4.

This case is different for three reasons. First, there was no earlier litigation over production of the journals involving various other objections, so Miller cannot have waived her privilege argument through failure to raise it before the Court. Second, *Large* involved a subsequent privilege objection to documents that the Court already ordered produced; here, Miller did not produce the journals at all in response to the initial document request. *See* ECF No. 804-2 at 7 (Miller agreeing to produce certain documents but withholding the journals in their entirety). And finally, here, Miller made privilege objections to the documents that she *did* produce. ECF No. 804-3 at 2. This indicates her intent to assert privilege objections to document requests generally. Miller has not waived her ability to make a privilege objection.

Miller's privilege objections are valid to the extent that the conversations recorded in the journals do not fall within the second and third waivers of privilege from the settlement agreement. ECF No. 718-1 at 17. The first waiver does not apply because the journals were written prior to 2009. ECF No. 794 at 3 (Miller declaration stating "[m]y last journal entry was October 5, 2008"). As noted above, Miller waived attorney-client privilege over "communications regarding whether Miller should, must, or would comply with then-existing or future court orders over the custody or visitation of Isabella Miller." ECF No. 718-

1 at 17. Her declaration acknowledges that the journals "record conversations" that she had with her attorneys "regarding [her] custody legal dispute" with Jenkins. If those recorded conversations touch on whether Miller "should, must, or would comply" with custodial court orders, they are not privileged.

Miller also waived privilege for communications with her attorneys over her "plan to depart the United States with Isabella, her actual departure and her remaining outside the jurisdiction of the United States." ECF No. 718-1 at 17. She now states that the journals do not contain information "regarding [her] decision to leave the country, plans to leave or about any of the other Defendants in the lawsuit and the alleged conspiracy regarding my leaving the country." *Id.* at 2-3. The Court has no way to evaluate this claim. To the extent that the journals record conversations about her departure from the United States, those entries are unprivileged and should be produced.

The Court agrees with Jenkins that Miller must provide a privilege log. A privilege log will assist Jenkins (and perhaps, ultimately, the Court) in determining whether the conversations recorded in the journals fall within the scope of the waiver.[2]

---

[2] This applies to Jenkins' crime-fraud exception argument as well. *See* ECF No. 804 at 8. The crime-fraud exception only applies to "those attorney-client communications that are related to client communications in furtherance of contemplated

2. Equitable Estoppel

Miller next argues that Jenkins is equitably estoped from seeking the journals. ECF No. 795 at 8-9. This boils down to an assertion that the settlement agreement which released Miller from the case also resolved all of Jenkins' discovery claims to documents in Miller's possession. As the Court noted in its prior order interpreting the settlement agreement, "[t]he cardinal principle in the construction of any contract is to give effect to the true intention of the parties." ECF No. 731 at 5 (quoting *In re Cronan*, 151 Vt. 576, 579 (1989)). That order also characterized the agreement as "a contract between two parties: Jenkins and Miller." *Id.*

Miller asks the Court to extend the agreement beyond its plain terms to release claims against other individuals who are party to the lawsuit. That was not the "true intention of the parties" and the Court will not do so. Regardless of whether these journals were the subject of a discovery dispute at the time of the agreement, as Miller argues (ECF No. 795 at 9), the

---

or ongoing criminal or fraudulent conduct." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997). The question of whether Miller's communications with her attorneys were "in furtherance of" criminal or fraudulent conduct is essentially coextensive with the question of whether the communications dealt with Miller's future compliance with court orders (waiver category 2) or her plans to leave the country (waiver category 3). The Court cannot evaluate the crime-fraud exception argument without a privilege log or some sort of description of what is detailed in the journals.

settlement stipulates that Miller will comply with certain
discovery requests including a deposition and a discovery
subpoena. ECF No. 718-1 at 4. The fact that Miller (apparently)
complied with those obligations has no bearing on Jenkins'
ability to seek discovery from other parties. Jenkins may have
agreed to forego Miller's production of the journals as
consideration for the settlement, but did not agree to forego
discovery of all materials relating to Miller regardless of
possession.

    3. Relevance and Proportionality

    Miller alleges that she has legal privacy interests that
are implicated by production of the journals. The Court agrees
with Jenkins that these privacy concerns are "more germane to
the question of whether requested discovery is burdensome of
oppressive and whether it has been sought for a proper purpose"
than they are an independent basis for shielding the journals
from discovery altogether. ECF No. 804 at 3 (quoting *Reid v.
Ingerman Smith LLP*, 2012 WL 6720752, at *2 (E.D.N.Y. Dec. 27,
2012)). Indeed, the Federal Rules of Civil Procedure provide
that a party "from whom discovery is sought may move for a
protective order . . . to protect [that party] from annoyance,
embarrassment, oppression, or undue burden or expense." Fed. R.
Civ. P. 26(c)(1). This reflects the premise that embarrassment –
or privacy invasion – is not a reason to bar discovery

11

altogether, but rather a factor that the Court should consider when determining whether and how to issue a protective order.

Accordingly, the Court will evaluate whether Jenkins' requests are "proportional" to the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," with specific reference to Miller's privacy concerns. Fed R. Civ. P. 26(c)(1); *see also Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012) ("[N]onmonetary costs (such as the invasion of privacy rights, risks to business and legal confidences, and risks to privileges) should be considered [in any calculus of whether to allow discovery.").

On one side of the ledger is the relevance and value of the Miller journals. The Court concludes that the journals plausibly contain relevant and significant information. Jenkins submits that the journals will likely reveal evidence of Miller's feelings towards homosexuality – the alleged discriminatory animus in this case – and may contain evidence of Miller's relationship with Liberty Counsel Defendants. Even if they do not speak to Miller's relationships with Defendants, the journals may still reflect how her attitude towards same-sex

marriage and homosexuality changed during the time that she kept those journals, which is relevant to the motivation underlying the alleged conspiracy. The Court additionally agrees with Jenkins that the journals may be "probative of what Ms. Lindevaldsen knew about Ms. Miller's opinions and motivations and when she knew that, which are relevant to Jenkins' claims against Ms. Lindevaldsen." ECF No. 804 at 4. Miller's reply brief does not meaningfully contest that the journals contain relevant information.[3]

The Court also finds that Lindevaldsen faces minimal burden in producing the Miller journals. There is no dispute that she possesses copies of the journals and could easily provide those to Jenkins. ECF No. 789-8 at 37 (Lindevaldsen stating in deposition that she made copies of the journals prior to returning them to Miller and counsel).

The only argument against production of the journals is protection of Miller's privacy. Miller cites a litany of constitutional, statutory, and common law privacy protections

---

[3] The brief argues that the journals "do not contain information related to Ms. Miller's decision or plans to leave the country," but does not contest the other arguments in Jenkins' brief. ECF No. 833 at 5. It otherwise asks rhetorically "[h]ow important could the information [in the journals] have been to the issues in dispute if Ms. Jenkins was willing to waive any purported rights to the journals when she executed the [settlement release]?" *Id.* For reasons outlined below, the Court disagrees that the settlement release applies to the journals.

13

that she argues militate in favor of denying the motion to compel. ECF No. 795 at 6-8 (citing *Griswold v. Connecticut*, 381 U.S. 479 (1965) (constitutional right to privacy in a marriage relationship); *Smith v. Pefanis*, No. 1:08-CV-1042-JOF-RGV, 2008 WL 11333335, at *3 (N.D. Ga. Oct. 30, 2008) (discovery of phone records limited by privacy concerns); *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009) (California tort law recognizes privacy interests); Fed. R. Evid. 412(a) (regulating evidentiary introduction of evidence regarding sexual behavior)). None are on point for several reasons, but primarily because none – with the exception of the phone records cases – deal with discovery disputes. And even those cases recognize that private information is largely discoverable, but restrict production on other grounds. In *Smith*, the Court concluded that the party seeking phone records had "not shown any reason that they should be granted unrestricted access to plaintiff's entire personal cell phone records." 2008 WL 11333335 at *3. And in *Sovereign Partners Ltd. P'ship v. Rest. Teams Int'l, Inc.*, No. 99 CIV. 0564 RJW JCF, 1999 WL 993678, at *4 (S.D.N.Y. Nov. 2, 1999), the court ordered that the allegedly private phone records be turned over for *in camera* review prior to disclosure. In other words, both cases dealt with overbroad requests, and neither stands for the principle that privacy interests are a total defense to production.

14

It is challenging to formulate a discovery plan that allows disclosure of the relevant portions of the journals while simultaneously protecting Miller's privacy. The journals likely contain private information that is irrelevant to the case. *See, e.g.*, ECF No. 794 at 2 (Miller declaration stating that the journals contain "intimate details of romantic relations, financial struggles, personal reflections, and reflections on [her] day to day life"). On the other hand, for the reasons outlined above, they also likely contain private details relevant to the alleged conspiracy, including Miller's "spiritual beliefs" and even her "legal struggles with Ms. Jenkins." *Id.*

The Court concludes that Miller has a substantial privacy interest in the contents of the journals, which deal with sensitive and potentially embarrassing matters that are worthy of protection. However, because of the potential relevance of the journals – and the fact that this contemporaneous documentation of Miller's feelings and relevant communications with her attorneys is essentially unavailable through other discovery – Lindevaldsen must produce Miller's journals to Jenkins (subject to the privilege limitations outlined above). In recognition of Miller's privacy interest, the Court hereby designates those journals as confidential pursuant to the

stipulated protective order signed by the Court on February 16, 2024. ECF No. 768.

**D.    Liberty Counsel Communications**

Jenkins also moves to compel disclosure of various emails involving Defendants. These include "withheld communications predating Ms. Miller's disappearance," ECF No. 789 at 8, and "withheld communications postdating Ms. Miller's disappearance," *id.* at 10.

Defendants counter that these emails are protected under the work product doctrine. ECF No. 800 at 6-7. "The work-product doctrine . . . is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies." *U.S. v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998). Federal Rule of Civil Procedure 26(b)(3) provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if they are (i) otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

"The work product doctrine distinguishes between fact work product and opinion work product." *Jensen ex rel. Jensen v. Cashin*, No. 2:06-CV-41, 2008 WL 1439899, at *2 (D. Vt. Apr. 10, 2008); *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d

16

180, 183 (2d Cir. 2007). Fact work product is "factual material, including the result of a factual investigation, whereas opinion work product reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative." *Id.* (quoting *In re Grand Jury Subpoena*, 510 F.3d at 183; Fed. R. Civ. P. 26(b)(3)). "To be entitled to protection for opinion work product, the party asserting the privilege must show a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation." *In re Grand Jury Subpoena*, 510 F.3d at 183-84.

Whether the so-called "Miller emails" contain fact or opinion work product is important because "opinion work product is accorded a heightened standard of protection." *Id.* Opinion work product may be discovered "only in rare circumstances where the party seeking discovery can show extraordinary justification." *FDIC v. Wachovia Ins. Servs.*, 241 F.R.D. 104, 106-07 (D. Conn. 2007). Fact work product, on the other hand, may be discovered "upon a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981).

Jenkins divides the requested communications into three categories: three "facially unprotected" emails, ECF No. 805 at 4, 23 "post-kidnapping" emails, *id.* at 6, and 14 "pre-kidnapping

emails, *id.* at 7. The Court will evaluate the three allegedly unprotected emails first, because it cannot assess the other emails which are not before it.

First, Jenkins submits that three emails – documents 142, 143, and 150 – are totally unprotected. *Id.* at 4. Document 142 is a February 17, 2010 email between various Liberty Counsel Defendants designated in the privilege log as "providing update, discussion, attorney thoughts and impressions, and other information concerning hearing in custody litigation." ECF No. 789-6 at 20. Jenkins believes that she obtained a copy of this email[4] through third-party discovery (and accordingly argues that it is non-privileged), but submits that the email itself is plainly fact work product. ECF No. 805 at 5. The Court agrees that most of the email is fact work product. It essentially summarizes a hearing at the Bedford County Juvenile and Domestic Relations Court, outlining various legal issues, questioning by lawyers, and testimony by witnesses. The email specifically

---

[4] The Court agrees that the email is likely the email designated as document 142 on the privilege log. The recipients are identical, the date is the same, and the subject matter of the email matches the privilege log's description of the document as containing "update, discussion, attorney thoughts and impressions, and other information concerning hearing in custody litigation." ECF No. 789-6 at 20 (privilege log describing the content of withheld document 142); *see also* ECF No. 805-2 (email claimed by Jenkins to be Defendants' document 142). Accordingly, the Court uses this email as a proxy to help evaluate the credibility of Defendants' privilege logging.

describes the testimony of one witness regarding "when she last saw Lisa," "her last communication," and "where Lisa was or anyone who might know." ECF No. 805-2 at 3. This summary is "the result of a factual investigation" – that is, the investigation of the hearing itself. *Jensen*, 2008 WL 1439899, at *2.

However, some parts of the email might constitute opinion work product. These include statements like "I sense that Rebecca Glenburg was surprised that Rena was not there with Mat" and Mary McAlister's commentary upon one witness' response that she did not know Miller's whereabouts: "DUH. Stupid question." ECF No. 805-2 at 2-3. These are "the mental impressions, conclusions, opinions, or legal theories of an attorney." *Jensen*, 2008 WL 1439899, at *2. Whether these insights "reveal counsel's thought processes in relation to pending or anticipated litigation" requires context such as *why* the author of the email thought that these were relevant observations. *In re Grand Jury Subpoena*, 510 F.3d at 183-84. If Jenkins had not already discovered this email, these statements might be protected as opinion work product.

Document 143 is a February 23, 2010 email between various Liberty Counsel Defendants discussing "strategy for [an] upcoming hearing, and discussing unsuccessful attempts to contact [Miller]." ECF No. 789-6 at 21. Jenkins argues that it is fact work product because any attempt to contact Miller

19

"constitute[s] the results of a factual investigation." ECF No. 805 at 4 (cleaned up) (citing *Jensen*, 2008 WL 1439899, at *2). The Court conditionally disagrees: an email that discusses unsuccessful attempts to contact Miller may also discuss what those unsuccessful attempts mean for litigation strategy, or attorney speculation regarding why they were unable to reach Miller. Those discussions would constitute opinion work product. However, the simple fact of failure to contact Miller is fact work product that may be discoverable upon a showing of substantial need and undue hardship.

The preceding discussion illustrates the difficulty of distinguishing between fact and opinion work product (especially without viewing the documents). For instance, Jenkins is correct that much of document 142 should have been disclosed as factual work product, but specific elements of the email might be protected under the heightened standard for opinion work product. The Court is unwilling to conclude that *all* of the emails for which Defendants claim privilege are discoverable solely on the basis of one partially mis-categorized email. It therefore will not compel carte blanche production of the requested documents for fear of broad disclosure of Defendants' opinions formed in anticipation of litigation.

The Court grants Jenkins' motion for in camera review. It concludes that Defendants have substantial need for discovery on

the question of whether Defendants knew or advised of Miller's
intent to comply with court orders and subsequent flight from
the country because both questions are highly relevant to
Defendants' involvement in the alleged conspiracy. And Jenkins
faces substantial hardship without discovery of these emails
because they could be one of the only primary sources of direct
communications between the Defendants about the alleged
conspiracy. But because (as noted above) it is difficult to
ascertain whether the emails contain fact or opinion work
product without reviewing those emails,[5] the Court concludes that
in camera review is necessary and appropriate.

   One final issue is worth addressing. Jenkins posits that
document 150 is an email chain from November and early December
2009 between various Liberty Counsel Defendants and Michelle
Kenny, Isabella Miller's guardian ad litem in the then-pending
child custody dispute, "discussing attempts to reach [Miller]."
ECF No. 789-6 at 22. Jenkins states that the email thread cannot
be privileged because "[b]y sharing these communications with
Ms. Kenny, Defendants waived work product protection." ECF No.
789 at 12. Defendants disagree, arguing that "work product

---

[5] For the reasons related to document 142, outlined above, the
Court finds that there is a "genuine dispute" as to the accuracy
of the parties' characterization of the privileged documents at
issue. *See* ECF No. 800 at 14 (*citing Bowne, Inc. v. AmBase
Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y. 1993)).

protection is not waived merely because the material is disclosed to a third party," *Adlman*, 134 F.3d at 1200 n.4, and submitting that "[p]rotection is waived only when work product is disclosed to a third party in a manner that is inconsistent with the purpose of the protection." ECF No. 800 at 8 (citing *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993)).

The Court agrees with Jenkins that sharing the emails with Isabella Miller's guardian ad litem is "inconsistent with the purpose of the protection" and that the emails are therefore unprotected. The emails were sent between November and December of 2009. At that time, Defendants – counsel for Miller – knew that "something had gone wrong" and that they could not contact Miller. ECF No. 789-7 at 56 (Lindevaldsen deposition). This situates Defendants opposite the advocate for the child, who was presumably also known to be out of contact. Further, at that time, custody litigation was ongoing and Defendants' interests were not directly aligned with the interests of the guardian ad litem. *Verrocchio v. Verrocchio*, 16 Va. App. 314, 319 (1993) (noting that in Virginia, the State's power to protect children "includes the long established practice of appointing a guardian ad litem to protect the best interests of a child upon the chancellor's determination that such appointment is necessary").

In sum, the Court agrees that Defendants' emails withheld on the basis of work product privilege should be submitted to

the Court for in camera review. Document 150 should be produced directly to Jenkins.

## Conclusion

For the reasons set forth above, Jenkins' motion to compel (ECF No. 789) is **granted** in part and **denied** in part. Miller's motion for a protective order (ECF No. 795) is **denied** except as it relates to her claim of privilege over conversations memorialized in the journals. The Miller emails should be submitted to the Court for in camera review.

DATED at Burlington, in the District of Vermont, this 26th day of June, 2024.

<u>/s/ William K. Sessions III</u>
Hon. William K. Sessions III
U.S. District Court Judge