UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Janet Jenkins,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    Case No. 2:12-cv-184
                                  )
Kenneth L. Miller, *et al.*,      )
                                  )
          Defendants.             )

## OPINION AND ORDER

Plaintiff Janet Jenkins brings this action claiming Defendants worked together to kidnap her daughter and violate her federal constitutional rights.  Pending before the Court is Jenkins' motion for summary judgment on Count One, which alleges intentional tortious kidnapping, against Defendants Philip Zodhiates, Kenneth Miller, and Timothy Miller.  Jenkins also moves for partial summary judgment on Count One against Defendants Liberty Counsel, Rena Lindevaldsen, Response Unlimited, Victoria Hyden, and Linda Wall.  For the reasons forth below, the motion for summary judgment with respect to Philip Zodhiates, Kenneth Miller, and Timothy Miller is granted, and the motion for partial summary judgment is denied.

## Factual Background

The following facts are undisputed unless otherwise noted. Isabella Miller-Jenkins was born in 2002.  At that time, her biological mother, Lisa Miller, was united with Jenkins in a

Vermont civil union.  When Isabella was 17 months old, Lisa
Miller moved with her to Virginia and petitioned the Vermont
Family Court to dissolve the union.  In 2004, a Vermont court
recognized Jenkins as Isabella's legal parent and granted her
the right to parent-child contact.  That right was subsequently
affirmed by the Vermont Supreme Court, while courts in Virginia
concluded that Vermont had jurisdiction over the matter.

Although Jenkins was granted court-ordered visitation, Lisa
repeatedly denied her visits with Isabella.  Lisa was held in
contempt of court as a result.  In May 2009, Jenkins filed a
motion to transfer primary custody of Isabella.  In late August
2009, the Vermont family court informed Lisa that unless she
allowed visitation, it would grant Jenkins' transfer motion.  In
early September 2009, the Vermont family court required
visitation to occur between September 25 and September 27, 2009.

On September 21, 2009, Defendant Philip Zodhiates drove
Lisa and Isabella to Buffalo, New York.  They then took a taxi
from Buffalo across the border into Canada.  They were
transported from the Canadian border to the Toronto airport by a
person who knew Defendant Kenneth Miller.  On September 22,
2009, Lisa and Isabella flew from Toronto to Mexico City, and
then to San Salvador, El Salvador.  On September 23, 2009, they
flew from San Salvador to Managua, Nicaragua.

2

On November 20, 2009, the Vermont family court granted Jenkins' motion and transferred custody of Isabella as of January 1, 2010. The physical transfer did not happen because Isabella and Lisa were living in hiding in Nicaragua. They lived among a Mennonite community there until 2011, when Defendant Timothy Miller was arrested. After that arrest, Lisa and Isabella went into further hiding first in Nicaragua, and then in Costa Rica. They remained in Costa Rica, again living among a Mennonite community, until Isabella turned eighteen.

Their initial plan was to turn themselves in when Isabella turned eighteen since she would no longer be subject to the family court's jurisdiction. They changed their plans, however, with the onset of the COVID-19 pandemic. Lisa returned to the United States in 2021. She subsequently pleaded guilty to international parental kidnapping in violation of 18 U.S.C. § 1204.

While Lisa was still living in Virginia with Isabella, an unnamed individual at her church provided her with a phone number to reach Philip Zodhiates. Zodhiates had become aware of the legal battle between Lisa and Jenkins, and that there was a possibility that Jenkins would be given custody if Lisa did not allow visitation. When Lisa called Zodhiates, he suggested that she be introduced to Kenneth Miller and explained that Kenneth, together with the Mennonite community, could help her hide.

When Lisa and Kenneth met, Kenneth agreed to help and encouraged her to go into hiding.

Kenneth subsequently helped arrange for Lisa and Isabella to travel to Canada, obtain plane tickets, and ultimately connect with a Mennonite community in Nicaragua. He was aware at the time that he was aiding parental kidnapping. He provided assistance to Lisa because he disagreed with the Vermont family court's determination that Jenkins was Isabella's parent, and was opposed to Jenkins obtaining custody.

Kenneth communicated with Zodhiates about transporting Lisa and Isabella to the Canadian border, and Zodhiates provided such transportation. During the drive to the border, Lisa and Isabella changed into Mennonite-style clothing. Jenkins claims that Zodhiates was aware that after he dropped Lisa and Isabella off, they would be taking a taxi into Canada and eventually flying out. Jenkins also claims that Zodhiates knew Lisa was leaving the country in an effort to hide Isabella.

Kenneth and Timothy Miller were both members of the Mennonite Christian Brotherhood, Kenneth in Virginia and Timothy in Managua. When Kenneth contacted Timothy by phone on September 21, 2009, they had not known each other previously. Kenneth told Timothy about Lisa's court case and that she wanted to come to Nicaragua. The two men discussed the purchase of plane tickets and agreed that Timothy would purchase tickets for

4

a flight from Canada that did not stop in the United States.
Timothy purchased one-way tickets, understanding that Lisa and
Isabella would be staying in Nicaragua if the Vermont family
court transferred custody to Jenkins.

Lisa encountered a problem with her one-way ticket in El
Salvador, as the airline did not want to allow her to fly to
Nicaragua without a return ticket.  Lisa called Zodhiates, who
in turn called Timothy Miller to inform him of the problem.
Timothy then arranged for Lisa and Isabella to be issued a
return ticket.  Kenneth Miller subsequently reimbursed Timothy
for the plane tickets.

When Lisa and Isabella arrived in Managua, Timothy met them
and took them to stay with a Mennonite family.  He subsequently
found them an apartment in Managua.  While they were in
Nicaragua, Timothy had frequent contact with them, in part
because his children and Isabella home-schooled together.  He
called them by pseudonyms, Sarah and Lydia, reportedly chosen to
make them harder to find.

Kenneth Miller had direct communication with Lisa while she
was in Nicaragua, beginning a few weeks after her arrival there.
In October and November 2009, Kenneth sent messages from Lisa to
Zodhiates for him to pass on to other defendants, some of which
contained lists of items Lisa wanted from her Virginia home.
Kenneth himself packed up suitcases of belongings to be sent to

Lisa.  Zodhiates arranged for the suitcases to be delivered by
an acquaintance who was traveling to Nicaragua.  Zodhiates
informed Timothy Miller of that person's travel itinerary, and
Timothy notified Lisa so that she could retrieve the suitcases
at the airport.

While Lisa was living in Managua, Timothy learned that the
Vermont court had transferred custody to Jenkins.  He discussed
the ruling with Lisa.  He also showed Lisa how to conceal her IP
address when using the internet, and deleted emails to make it
harder to track her.  In May 2010, Zodhiates overpaid Kenneth
Miller's family business by $500 when Lisa needed money, and
Timothy and Kenneth allegedly arranged for $500 in cash to be
transported to Nicaragua.  Timothy Miller disputes providing
Lisa with any money from Zodhiates.

In 2012, Kenneth was convicted by a jury of aiding and
abetting Lisa in the removal of Isabella from the United States
"with the intent to obstruct the lawful exercise of parental
rights."  ECF No. 812-9 at 21:8-22:7; ECF Nos. 439-7, 439-10.
In 2015, Timothy pleaded guilty to conspiracy, including
"knowingly, willfully and unlawfully combin[ing], conspir[ing]
and agree[ing] together [with Zodhiates and Lisa] and with
Kenneth Miller and others . . . to remove a child, [Isabella],
from the United States and to retain that child . . . with
intent to obstruct the lawful exercise of parental rights."  ECF

6

No. 812-6 at 30:9-31:4; 33:11-24; 37:15-38:21; ECF Nos. 439-14, 439-16, 439-18.  In 2017, Zodhiates was convicted on two criminal counts: (1) conspiracy to commit international parental kidnapping, including "knowingly, willfully and unlawfully combin[ing], conspir[ing] and agree[ing] together [with Timothy and Lisa] and with Kenneth Miller and others . . . to remove a child, [Isabella], from the United States and to retain that child . . . with intent to obstruct the lawful exercise of parental rights;" and (2) international parental kidnapping, including "knowingly remov[ing], and aid[ing] and abet[ting] the removal of a child . . . from the United States with intent to obstruct the lawful exercise of parental rights."  ECF No. 812-8 at 21:15-24:24; ECF Nos. 439-14, 439-22.

While Jenkins originally brought claims on behalf of herself and Isabella, Isabella is now over the age of 18, is no longer a party in the case, and Jenkins is the sole Plaintiff. Jenkins has dismissed her claims against Lisa Miller.  The pending motion for full and/or partial summary judgment pertains to the remaining Defendants.

## Discussion

### I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might "affect the outcome of the [law]suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment, the movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable

inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## II. Kenneth Miller, Timothy Miller, and Philip Zodhiates

Kenneth Miller, Timothy Miller, and Philip Zodhiates were each convicted for their respective roles in Lisa Miller's unlawful travels and hiding with Isabella. In this civil case, Kenneth Miller has filed no opposition to Jenkins' motion for summary judgment. Timothy Miller claims, among other things, that his criminal conviction does not render him civilly liable. Philip Zodhiates argues that his actions were justified because he believed Jenkins was abusing Isabella. None of these three Defendants contest the assertion that Lisa Miller engaged in tortious conduct. The Court addresses the claims brought against each party in turn.

### A. Kenneth Miller

Jenkins' motion for summary judgment against Kenneth Miller is unopposed. "Where the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of

fact remains for trial." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (internal quotation marks and citation omitted). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.* (internal quotation marks and citation omitted).

The undisputed facts support Jenkins' claim that Kenneth Miller is subject to civil liability on Count One. That Count, entitled "intentional tort of kidnapping," alleges that Lisa kidnapped Isabella in order to interfere with Jenkins' lawful custody rights between the dates of September 25, 2009 and September 27, 2009. ECF No. 223 at 12. It further alleges that Lisa held Isabella in Nicaragua in order to interfere with Jenkins' lawful custody after January 1, 2010, and to thwart her equal protection rights under Vermont law. *Id.* Finally, Count One alleges that Lisa conspired with, and was aided and abetted by, the Defendants. *Id.*

This Court previously addressed the validity of Count One under Vermont law, concluding that although the Vermont Supreme Court has not yet determined whether it recognizes the intentional tort of kidnapping, it would likely agree that a claim of custodial interference consistent with Section 700 of

the Restatement (Second) of Torts is viable.  ECF No. 115 at 40-
41 ("it has long been the law in Vermont . . . that a parent my
maintain an action for wrongful interference with 'the custody,
control, and services of [a] minor child'") (quoting *Bioni v.
Haselton*, 134 A. 606, 607 (Vt. 1926); *Schuppin v. Unification
Church*, 435 F. Supp. 603, 608 (D. Vt. 1977)).  Count One also
alleges a conspiracy.  The Court previously determined that
civil conspiracy requires an agreement, and that the act done in
furtherance of that agreement by each defendant must be
"unlawful in itself."  *Id.*; *see Akerley v. N. Country Stone,
Inc.*, 620 F. Supp. 2d 591, 600 (D. Vt. 2009).

The Court has also addressed the requirements for a claim
of aiding and abetting, concluding that under Vermont law
"aiding and abetting another in the commission of a tort
requires a plaintiff to show '(1) the existence of a primary
violation; (2) knowledge of this violation on the part of the
aider and abettor; and (3) substantial assistance by the aider
and abettor in the achievement of the primary violation.'"  ECF
No. 277 at 36 (quoting *Montgomery v. Devoid*, 915 A.2d 270, 278
(Vt. 2006)).  The *Montgomery* decision explained that

> [a] person is subject to liability for harm resulting
> to a third person from the tortious conduct of another
> if the person: (1) commits a tortious act as part of a
> common design with the other; (2) gives substantial
> assistance to the other knowing that the other's
> conduct is a breach of duty; or (3) gives substantial
> assistance to the other to accomplish a tortious

11

result while also acting in a manner that is a breach
of duty to the third person.

915 A.2d at 281 (citing Restatement (Second) of Torts § 876

(1979)).

Kenneth Miller is liable under both the conspiracy theory
and the aiding-and-abetting theory.  To begin with, his criminal
conviction established that he aided and abetted Lisa in
obstructing Jenkins' parental rights.  The evidence at summary
judgment also shows that Kenneth was a key conspirator, as he
was the one who decided on Nicaragua as the ultimate destination
for Lisa and Isabella; coordinated with Zodhiates to transport
them to Buffalo; arranged for them to get to the Toronto
airport; coordinated with Timothy Miller for the purchase of
flights; and arranged for Timothy Miller to greet them in
Nicaragua and embed them in a Mennonite community there.
Kenneth remained in contact with Lisa while she was in
Nicaragua, and was directly involved in the collection of
certain belongings to be sent to her there.  He helped Lisa
Miller interfere with Jenkins' custodial rights and, at a
minimum, was integral in the unlawful international kidnapping,
thus satisfying the unlawful act element for a civil conspiracy.

In sum, the undisputed record makes clear that Kenneth
Miller coordinated with, and provided substantial assistance to,
Lisa Miller such that he may be held liable.  The Court

therefore finds that Jenkins is entitled to judgment as a matter of law against Kenneth Miller on Count One.

**B.    Timothy Miller**

Jenkins also moves for summary judgment against Timothy Miller.  Timothy Miller largely accepts Jenkins' statement of undisputed facts.  His bases his opposition primarily upon the legal conclusions to be drawn from those facts.  ECF No. 849 at 2 n.1 ("[T]he dispute is about the legal conclusions to be drawn from those facts and whether the Court or a jury is to draw those conclusions.").

Timothy first became engaged in the plan to kidnap and hide Isabella when he was contacted by Kenneth Miller on September 21, 2009.  At that time, Kenneth explained the nature of the custody battle.  As explained above, Timothy played a significant role in helping Lisa and Isabella travel to Nicaragua and getting them settled there.  He also took certain actions, such as erasing emails, to help Lisa and Isabella remain hidden.

In opposition to the summary judgment motion, Timothy submits that Lisa and Isabella would have left the United States even without his involvement.  He also contends that his only role in the conspiracy was purchasing the airplane tickets with his mother-in-law's credit card, a charge for which she was reimbursed.  As noted above, he disputes helping forward cash to

Lisa.  Finally, Timothy contends that Lisa and Isabella spent most of their time between 2010 and 2020 in Costa Rica, and that he had no contact with them and provided them no assistance during that time.

Timothy's first legal argument is that Jenkins fails to identify any illegal act distinct from the illegal purpose of the conspiracy.  For support, he cites *Boutwell v. Marr*, 42 A. 607, 609 (Vt. 1899), in which the Vermont Supreme Court held that "there can be no recovery unless illegal means were employed" in furtherance of an agreement "to effect an illegal purpose."  *Boutwell* further held that there is no liability for civil conspiracy where the "act done in furtherance of the agreement, and resulting damage, [is] not itself a violation of right."  42 A. at 609.

Here, the "acts done" consisted of interfering with Jenkins' rights as a parent through an unlawful kidnapping. Custodial interference itself is a violation of the law.  *See* 13 V.S.A. § 2451(b) ("A person who commits custodial interference shall be imprisoned not more than five years or fined not more than $5,000.00, or both.").  International kidnapping is a criminal offense under federal law.  18 U.S.C. § 1204(a). Timothy's otherwise-lawful actions in furtherance of both, such as purchasing plane tickets, do not relieve him of liability for his role.  Unlawful means were used in furtherance of a

14

conspiracy to commit a tort, and Timothy's involvement in those
actions renders him liable as a matter of law.

Timothy next argues that there is a question of fact as to
whether the unlawful acts can be imputed to him.  He submits
that Jenkins is alleging two conspiracies, the kidnapping in
2009 and keeping Isabella in hiding after Jenkins was granted
custody in 2010.  Timothy argues that the first conspiracy claim
is without merit since Lisa had custody of Isabella in 2009, and
thus could not have been "employing illegal means" at that time.
ECF No. 849 at 7.  That argument ignores Jenkins' parental
rights, including visitation rights, prior to 2010.  It also
fails to consider the Vermont court's warning that further
defiance of its orders would result in Jenkins being awarded
full custody.  Lisa fled with Isabella in 2009 to deny Jenkins
her parental rights, both present and future, and employed
illegal means to do so.

Timothy also argues that he cannot be liable for the second
conspiracy since the offense to which he pleaded guilty ended in
2009.  While Timothy characterizes his role after 2009 as
"minimal" (ECF No. 849 at 7), he has agreed to undisputed facts
showing his awareness that Lisa and Isabella could remain in
hiding well after 2009.  Those fact include his purchase of one-
way plane tickets, his understanding that Lisa and Isabella were
leaving the United States due to a possible custody transfer,

and discussions with Lisa about the 2010 court order
transferring custody to Jenkins.

Timothy's last argument is that a jury could not find his
conduct was a "but for" cause of Jenkins' injury, and that his
actions did not rise to the level of substantial assistance.
With respect to "but for" causation, a conspiracy claim in a
civil case focuses on proximate cause and substantial
assistance.[1]  *See Montgomery*, 915 A.2d at 278 (explaining that in
the context of a civil conspiracy claim, "[c]losely intertwined
with the concept of 'substantial assistance' is the principle of
proximate cause.").  Even assuming a "but for" causation
requirement, however, no reasonable jury could find that
Timothy's direct involvement, including purchasing plane tickets
and facilitating Lisa's and Isabella's integration into the
Mennonite community in Nicaragua, was not vital to the success
of the kidnapping.

---

[1]  "But for" causation "requires a showing that the harm would
not have occurred 'but for' the defendant's conduct such that
the tortious conduct was a necessary condition for the
occurrence of the plaintiff's harm." *Ziniti v. New England
Cent. R.R., Inc.*, 207 A.3d 463, 469 (Vt. 2019) (internal
quotation marks and citation omitted).  Proximate cause
"requires a showing that the defendant's negligence was legally
sufficient to result in liability in that the injurious
consequences flowed from the defendant's conduct and were not
interrupted by some intervening cause." *Id.* (internal quotation
marks and citation omitted).

The Court reaches the same conclusion on the question of substantial assistance. The Vermont Supreme Court has held that

> [t]o determine whether a defendant's conduct rises to the level of substantial assistance or encouragement, the Restatement calls for consideration of five factors: (1) the nature of the wrongful act; (2) the kind and amount of the assistance; (3) the relationship between the defendant and the actor; (4) the presence or absence of the defendant at the occurrence of the wrongful act; and (5) the defendant's state of mind.

*Concord Gen. Mut. Ins. Co. v. Gritman*, 146 A.3d 882, 888 (Vt. 2016) (citing Restatement (Second) of Torts § 876 cmt. d). Here, the nature of the wrongful act was helping Lisa internationally kidnap her daughter to avoid the impact of Vermont court rulings. Timothy's assistance was critical, as he coordinated with Kenneth Miller to arrange for, and eventually shepherd, Lisa and Isabella's travel to Nicaragua and subsequent life in hiding there. His relationships with Lisa and Kenneth Miller began with the kidnapping itself, allegedly continued until Lisa and Isabella left Nicaragua, and were clearly centered on execution of a conspiracy. Timothy was present for and integral in "the wrongful act," and knew that he was helping Lisa avoid the Vermont family court's orders. Given these facts, which Timothy does not dispute, no reasonable jury could find that he did not provide substantial assistance. The Court therefore finds that Jenkins in entitled to summary judgment against Timothy Miller on Count One.

## C.    Philip Zodhiates

Like Timothy Miller, Philip Zodhiates mostly accepts Jenkins' statement of undisputed facts.  He characterizes his actions, however, as justified by his belief that Janet Jenkins had abused, and would continue to abuse, Isabella.  He therefore asserts a justification defense and argues that questions of fact underlying that defense must be decided by a jury.[2]

Vermont courts have not determined whether justification is a valid defense to a claim of tortious kidnapping or custodial interference.  Jenkins notes that with respect to the crime of custodial interference, Vermont allows a justification defense if "the person charged with the offense was acting in good faith to protect the child from real and imminent danger."  13 V.S.A. § 2451(c).  The defense is "not available if the person charged with the offense has left the State with the child."  *Id.* Application of the defense also requires, as evidence of good faith, that the party file a "nonfrivolous petition documenting that danger and seeking to modify the custodial decree in a Vermont court of competent jurisdiction."  *Id.*  Jenkins notes that Lisa Miller's actions ran afoul of the requirement that she

---

[2]    Jenkins contends that no Defendant raised an affirmative defense of justification in answers to her complaint.  ECF No. 812-26 at 29 n.8.  After the parties briefed her motion for summary judgment, however, the Court granted Zodhiates' unopposed motion to amend his answer to assert such a defense. ECF Nos. 887, 890 at 17.

remain in the state, and that no Defendant tried to modify the custodial decree.

In the context of a civil action, the Court previously observed that Section 700 of the Restatement (Second) of Torts tracks Vermont common law.  ECF No. 115 at 41.  Comment e to Section 700 recognizes a "[p]rivilege to rescue from physical violence":

> One is not liable for rescuing a child from physical violence inflicted by its parent in excess of his parental privilege.  To entitle the actor to immunity, however, it must appear reasonably probable that the child is about to suffer immediate harm or that it will be subjected to immediate harm if it returns to its home.  It is also necessary to the actor's protection that he act for the purpose of saving the child from the threatening danger or of assisting him to escape from it . . . .  A private citizen is not privileged, however, to abduct or entice a child from its parent to save the child from what the actor reasonably believes to constitute improper surroundings or immoral influences, nor to afford it advantages superior to those available in its home.

Restatement (Second) of Torts § 700, comment e.  Some states have adopted this defense.  *See, e.g., Murphy I.S.K. Con. of New England, Inc.*, 571 N.E.2d 340, 351 n.18 (Mass. 1991); *Stone v. Wall*, 734 So. 2d 1038, 1042 (Fla. 1999).  To date, Vermont has not.

Jenkins submits that "[i]f any justification defense to Count 1 exists under Vermont law, it requires reasonable belief that the child is in real danger of immediate physical harm if returned to the parent."  ECF No. 812-26 at 31.  Jenkins also

contends that there is no record evidence to support such a
belief.  She cites Zodhiates' deposition testimony, in which he
accuses her of inappropriate behavior but falls short of
alleging inappropriate touching.  ECF No. 812-8 at 389:18-390:5.
Jenkins also notes that allegations of abuse were litigated in
the Vermont family court, which concluded "there was no evidence
of abuse."  ECF No. 812-4 at 11; *see also Miller-Jenkins v.
Miller-Jenkins*, 12 A.3d 768, 776 (Vt. 2010) (affirming family
court's finding that "allegations of abuse [were] wholly
unfounded" and that Lisa had "no reasonable suspicion of
abuse").

Zodhiates challenges Jenkins' assertion that the question
of inappropriate touching is undisputed.  ECF No. 862-1 at 3, ¶
12.  For support, he references Lisa's suspicions, as well as
reports and affidavits submitted by third party professionals,
including a social worker who was familiar with Lisa and
Isabella.  *Id.*  During his deposition, however, Zodhiates did
not recall if he saw any of those reports or affidavits prior to
helping Lisa leave the country.  ECF No. 812-8 at 392:2-394:6.[3]
He made clear, however, that he was motivated to help Lisa

---

[3]   Zodhiates also cites other evidence, such as testimony by
Linda Wall.  ECF No. 862-1 at 3.  His opposition to the summary
judgment motion does not establish that he was aware of that
evidence when he provided assistance to Lisa Miller.

because of his belief that Isabella was being abused. *Id.* at 385:15-20.

Assuming justification is an available defense, the Court must determine whether there are sufficient facts, viewed in a light most favorable to Zodhiates, to lead a reasonable jury to believe that his actions were justified. Zodhiates argues that his belief was reasonable because Lisa's allegations of abuse were convincing. In his deposition, he explained what Lisa allegedly told him, including a claim that Jenkins and Isabella bathed together. ECF No. 812-8 at 386:3-22.[4] When asked more specifically about the alleged mistreatment, Zodhiates testified that Lisa

> gave stories and instances where – I think one example
> where [Isabella] was on visitation and she got lost or
> something and was basically abandoned by Janet;
> another instance where Isabella baked her cookies and
> brought her cookies on visitation, and they were sent
> back with her back home, all crushed and broken up.
> Just cruel things like that.

---

[4]    In 2019, the Court entered a Protective Order requiring, among other things, that information about Isabella be kept confidential and that the parties identify such information consistent with the Order. ECF No. 410 at 1. At summary judgment, parts of the record have accordingly been redacted or filed under seal, including certain testimony by Lisa Miller. *See, e.g.*, ECF No. 823-6 at 269-286. Philip Zodhiates' deposition is not sealed, is not redacted, and is referenced without objection by any party. The Court has reviewed his testimony and attaches a relevant portion of it to this Opinion and Order as Exhibit A under seal.

21

*Id.* at 388:16-23.  Zodhiates testified that he considered these latter events as evidence of emotional abuse, while Jenkins and Isabella bathing together was an example of sexual abuse.  *Id.* at 389:4-8.  He did not recall whether Lisa told him that Jenkins had touched Isabella inappropriately during those baths. *Id.* at 389:18-20.  With respect to Isabella's other alleged behavior, Zodhiates testified that he "believe[d] she learned that from Janet Jenkins."  *Id.* at 390:6-10.

As discussed, under Vermont law, Zodhiates would be unable to avail himself of a justification defense to criminal custodial interference, in part because Lisa and Isabella left the country and because no modification request was filed.  *See* 13 V.S.A. § 2451(c).  If Vermont chose to follow the Restatement's guidance with respect to a justification defense in a civil action, Zodhiates would need to show a reasonable probability of immediate harm.  Restatement (Second) of Torts § 700, comment e.  The Court, viewing the facts in the light most favorable to Zodhiates, finds that his evidence and testimony did not rise to the level required under the Restatement for application of a privilege.

Zodhiates' testimony makes clear that any allegation of actual sexual abuse, based purely on what he was told by Lisa, was speculative.  While the Court does not discount Lisa's credibility, Isabella's reported behavior did not support a

reasonable belief that she was in the sort of immediate danger that would justify her kidnapping. Lisa observed behavior that she found troubling and attributed it to time spent with Jenkins. A "counselor" apparently reached a similar conclusion. Looking closely at the allegations, however, there is no direct evidence to support a reasonable fear of immediate harm. While Zodhiates characterized Jenkins and Isabella bathing together as a form of sexual abuse, the Court finds that a reasonable jury would not. Instances of temporary "abandonment" or unkind treatment do not rise to the level of immediate harm.

Moreover, the question of alleged abuse was litigated in the state courts and "found . . . to be wholly unfounded." *Miller-Jenkins*, 12 A.3d at 776. Zodhiates' conclusion to the contrary, based on what he was told, does not render his actions defensible. It was also unreasonable for Zodhiates to believe that his personal intervention was necessary given his knowledge that there was court involvement, and corresponding court oversight, with respect to the relationships between Isabella and each of her parents.

The justification defense requires a reasonable probability of immediate harm. It does not apply where an actor believes a child is being subjected to improper surroundings or immoral influences. Zodhiates may have been troubled by Isabella spending time with Jenkins, and by what he was told about

23

Jenkins' parenting, but the facts presented to him about alleged abuse were entirely speculative and did not give rise to a reasonable belief that Isabella was in danger of immediate harm.

The Court finds that, assuming a justification defense is available under Vermont law, it does not apply here. Zodhiates conspired to help Lisa kidnap Isabella and provided assistance to Lisa thereafter. Jenkins is therefore entitled to summary judgment on Count One against Zodhiates.

## III. Remaining Defendants

Jenkins moves for partial summary judgment against the remaining Defendants. She makes clear in her memorandum that she is not moving for summary judgment on the question of whether Defendants Liberty Counsel, Rena Lindevaldsen, Response Unlimited, Victoria Hyden, or Linda Wall were members of the conspiracy with Lisa, Kenneth, Timothy, and Zodhiates. ECF No. 812-26 at 12 n.3. Nor does her motion include evidence to show that those Defendants aided and abetted the commission of the alleged tort. The Court therefore declines to grant summary judgment with respect to those Defendants as to any portion of Count One.[5]

---

[5]    Jenkins asks that "[i]f the Court concludes that Plaintiff is entitled to summary judgment on some, but not all, elements of Count 1" that it enter "partial summary judgment on those elements of Count 1 on which she entitled to summary judgment." ECF No. 812-26 at 9. Jenkins cites no authority for such an

## Conclusion

For the reasons set forth above, Jenkins' motion for summary judgment and partial summary judgment (ECF No. 812) is granted in part and denied in part.  Summary Judgment is granted on Count One with respect to Kenneth Miller, Timothy Miller, and Philip Zodhiates.  The motion is denied with respect to the remaining Defendants.

DATED at Burlington, in the District of Vermont, this 31st day of March 2025.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge

---

element-by-element approach, and the Court declines to apply that approach at this time.